UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DMSION

CASE No.:

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a Florida not-
for-profit corporation,

      Plaintiff,

V.



ELIZABETH HAZAN, an individual;,

      Defendant.

_____/

### DEFENDANT ELIZABETH HAZAN, LLC'S NOTICE OF REMOVAL

Defendant, Elizabeth Hazan, ("Hazan"), as a *pro se,* pursuant to Title 28, United

States Code§§§§§ 1331, 1332, 1441,1446, and 1452 hereby removes this proceeding

currently pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami

Dade County, Florida, case number 2023-026767-CA-01 ("the State Court Litigation").

As grounds  for the removal of this proceeding, Hazan respectfully state as follows:

## STATEMENT OF GROUNDS FOR REMOVAL

### Removal Under 28 U.S. Code§ 1452

1.  There is currently pending litigation involving the same property and the bankruptcy case before Judge Mark, Hazan believes that removal of this action to United States District Court is appropriate. If the Court is inclined to agree, Hazan will file a motion to transfer venue bankruptcy court.

### Removal Under 28 U.S. Code§ 1443(1)

2.  **§1443. Civil rights cases**

    Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

    (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

3.  This case involves a deprivation of constitutional rights as required for removal under 28 U.S.C. §1443.

4.  Unfortunately, the presiding judge of the state court action has espoused off hand comments that tend to show a bias towards Hazan.

5.  Hazan is the sole owner of the subject property, is a member of the Fisher Island Community Association, Inc. has been sued by the Plaintiff out of pure harassment and animosity due to the strained relationship between Plaintiff defendant Hazan.

## THERE IS COMPLETE DIVERSITY OF CITIZENSIDP

6.      Plaintiff Fisher Island Community Association, Inc. ("FICA") is a Florida

Company, with its principal place of business in Fisher Island Florida.

7.      Elizabeth Hazan is a Canadian citizen. See 22 U.S.C. § 1332(c)(l).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

8.      Plaintiff's complaint exceeds $75,000.  As such, the controversy exceeds $75,000.

## THIS PROCEEDING IS RELATED TO A CASE ARISING UNDER TITLE 11

9.      This proceeding is related to a bankruptcy before Judge Mark.

10.     This Court has jurisdiction over the original proceeding pursuant to 28

U.S.C. § 1334(b).

### 11.     ALL PROCEDURAL REQUIREMENTS ARE SATISFIED

12.     In accordance with 28 U.S.C. § 1446(a) true and correct copies of the

Complaint, is attached as **Exhibits A**.

13.     The State Court Litigation is proceeding in the Circuit Court of the

Eleventh Judicial Circuit in and for Miami-Dade County. Because that Court is located

within the District and Division in which this Court sits, venue is proper pursuant to 28

U.S.C. §1441(a) and 28 U.S.C. §1391(b)(2)

14.     In accordance with 28 U.S.C. § 1446(d), written notice regarding the filing of

this Notice of Removal, and a copy thereof, is being provided to Plaintiff, and the Clerk of

Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County.

**WHEREFORE,** Hazan respectfully give notice that this proceeding is removed from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade to the United States District Court for the Southern District of Florida, Miami Division.

Dated: January 5, 2026.

Respectfully submitted,

By: *Isl* Liza Hazan

Liza Hazan
Email: lizahazan77@gmail.com
*Pro se* Defendant

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I filed the foregoing with the Clerk of the Court and a true and correct copy of foregoing was served via U.S. mail or email or ECF system to the parties on the attached service list as indicated on this 5th day of January 5, 2025.

Respectfully submitted,

<u>SERVICE LIST</u>

By: *Isl* Liza Hazan

Liza Hazan
Email: lizahazan77@gmail.com
*Pro se* Defendant

<u>Via ECF</u>

nataly@peytonbolin.com

# EXHIBIT A

Filing # 186694579 E-Filed 11/22/2023 02:11:01 PM

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

FISHER         ISLAND         COMMUNITY
ASSOCIATION, INC., a Florida not-for-profit
corporation,

      Plaintiff,

vs.                                                                    **CASE NO. 2023-026767-CA-01**

ELIZABETH HAZAN a/k/a LIZA HAZAN,

      Defendant.

_____/

*THE STATE OF FLORIDA:*
*TO EACH SHERIFF OF THE STATE:*

      **YOU ARE COMMANDED** to serve this summons and a copy of the complaint or petition in this action on the Respondent(s):

**ELIZABETH HAZAN a/k/a LIZA HAZAN**
**6913 VALENCIA DRIVE**
**MIAMI, FL 33109**

<u>IMPORTANT:</u>

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court.

A phone call will not protect you. Your written response, including the case number given above the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office listed in the phone book.

If you choose to file a written response yourself, at the same time you file your written response to the court, you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below:

      PeytonBolin, PL, 3343 West Commercial Boulevard, Suite 100, Fort Lauderdale, Florida 33309
      Telephone: (954) 316-1339, Facsimile: (954) 727-5776

DATED on _____, 2023.

          *JUAN FERNANDEZ-BARQUIN,*
          Clerk of the Court and Comptroller

          By:_____
              As Deputy Clerk

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tienes 20 días, contados a partir de recibir este notificación, para responder por escrito la demanda adjunta, y presentar su respuesta ante esta corte.  Una llamada telefónica no lo protegerá.  Si usted desea que la corte considera su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes involucradas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podrias ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin aviso de la corte.  Existen otros requisisitos legales.  Si usted desea, consulta a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefónica.

Si deseas responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante la corte, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandate o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciares ont ete entreprises contre vous.  Vous avez 20 jours consecutifs a partir de la date l'assignation de cette citation pour deposer votre reponse ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insufisant pour vous proteger.  Vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entede votre causes.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediates d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un buveau d'assistance juridique (figurant a l'annaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie de votre reponse ecrite au "Plantiff/Plantiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

**Filing # 186506209 E-Filed 11/20/2023 01:22:13 PM**

☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.
☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.

| DIVISION<br>☒ CIVIL<br>☐ DISTRICTS<br>☐ FAMILY<br>☐ OTHER | **CIVIL COVER SHEET** | CASE NUMBER: _____<br><br>JUDGE _____ |
|---|---|---|
| **PLAINTIFF**<br><br>**FISHER ISLAND COMMUNITY ASSOCIATION, INC., a Florida not-for-profit corporation** | **VS. DEFENDANT**<br><br>ELIZABETH HAZAN a/k/a LIZA HAZAN | **CLOCK IN** |

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**AMOUNT OF CLAIM**

**Please indicate the estimated amount of the claim, rounded to the nearest dollar. $_____**

**TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

☐ Condominium
☒ Contracts and Indebtedness
☐ Eminent domain
☐ Auto Negligence
☐ Negligence - Other
    ☐ Business Governance
    ☐ Business Torts
    ☐ Environmental/Toxin Tort
    ☐ Third Party Indemnification
    ☐ Construction Defect
    ☐ Mass Tort
    ☐ Negligent Security
    ☐ Nursing Home Negligence
    ☐ Premises Liability - Commercial
    ☐ Premises Liability - Residential
☐ Products Liability
☐ Real Property/Mortgage Foreclosure
    ☐ Commercial Foreclosure
    ☐ Homestead Residential Foreclosure
    ☐ Non-Homestead Residential Foreclosure
    ☐ Other Real Property Actions
☐ Professional Malpractice
    ☐ Malpractice - Business
    ☐ Malpractice - Medical
    ☐ Malpractice - Other professional

☐ Other
    ☐ Antitrust/Trade Regulation
    ☐ Business Transactions
    ☐ Circuit Civil - Not Applicable
    ☐ Constitutional Challenge - Statute or Ordinance
    ☐ Constitutional Challenge - Proposed amendment
    ☐ Corporate Trust
    ☐ Discrimination - Employment or Other
    ☐ Insurance claims
    ☐ Intellectual property
    ☐ Libel/Slander
    ☐ Shareholder derivative action
    ☐ Securities Litigation
    ☐ Trade Secrets
    ☐ Trust Litigation
☐ County Civil
    ☐ Small Claims up to $8,000
    ☐ Civil
    ☐ Replevins
    ☐ Evictions
    ☐ Other civil (non-monetary)

CLK/CT 96 Rev. 01/20                                                    Clerk's web address: www.miami-dadeclerk.com

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. ☐ Yes ☑ No

**REMEDIES SOUGHT** (check all that apply):

☐ Monetary;

☒ Non-monetary declaratory or injunctive relief;

☐ Punitive

**NUMBER OF CAUSES OF ACTION:** [  1  ]

(specify)  DECLARATORY RELIEF

**IS THIS CASE A CLASS ACTION LAWSUIT?**

☐ Yes

☒ No

**HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**

☒ No

☐ Yes   If "Yes", list all related cases by name, case number, and court.

**IS JURY TRIAL DEMANDED IN COMPLAINT?**

☐ Yes

☒ No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature _____   Florida Bar # _124715_
                   Attorney or party                                    (Bar #, if attorney)

_Nataly Gutierrez, Esq._                          _11/20/2023_
(type or print name)                                  Date

CLK/CT 96 Rev. 01/20

Clerk's web address: www.miami-dadeclerk.com

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET

Plaintiff must file this cover sheet with the first document filed in the action or proceeding (except small claims cases, probate, or family cases). Domestic and juvenile cases should be accompanied by a completed Florida Family Law Rules of Procedure Form 12.928, Cover Sheet for Family Court Cases. Failure to file a civil cover sheet in any civil case other than those excepted above may result in sanctions.

I.    **Case Style.** Enter the name of the court, the appropriate case number assigned at the time of filing of the original complaint or petition, the name of the judge assigned (if applicable), and the name (last, first, middle initial) of plaintiff(s) and defendant(s).

II.   **Amount of Claim.** Enter the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes and is not considered dispositive of the claim.

III.  **Type of Case.** Place an "X" on the appropriate line. If the cause fits more than one type of case, select the most definitive. If the most definitive label is a subcategory (indented under a broader category label), place an "X" on the category and subcategory lines. Definitions of the cases are provided below in the order they appear on the form.

**Circuit Civil**

(A) Condominium - all civil lawsuits pursuant to Chapter 718, Florida Statutes, in which a condominium association is a party.

(B) Contracts and indebtedness - all contract actions relating to promissory notes and other debts, including those arising from sale of goods, but excluding contract disputes involving condominium associations.

(C) Eminent domain - all matters relating to the taking of private property for public use, including inverse condemnation by state agencies, political subdivisions, or public service corporations.

(D) Auto negligence - all matter arising out of a party's allegedly negligent operation of a motor vehicle.

(E) Negligence-other - all actions sounding in negligence, including statutory claims for relief on account of death or injury, that are not included in other main categories.

(F) Business governance - all matters relating to the management, administration, or control of a company.

(G) Business torts - all matters relating to liability for economic loss allegedly caused by interference with economic or business relationships.

(H) Environmental/Toxic tort - all matters relating to claims that violations of environmental regulatory provisions or exposure to a chemical caused injury or disease.

(I) Third party indemnification - all matters relating to liability transferred to a third party in a financial relationship.

(J) Construction defect - all civil lawsuits in which damage or injury was allegedly caused by defects in the construction of a structure.

(K) Mass tort - all matters relating to a civil action involving numerous plaintiffs against one or more defendants.

(L) Negligent security - all matters involving injury to a person or property allegedly resulting from insufficient security.

(M) Nursing home negligence - all matters involving injury to a nursing home resident resulting from negligence of nursing home staff or facilities.

(N) Premises liability-commercial - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a commercial property.

(O) Premises liability-residential - all matters involving injury to a person or property allegedly resulting from a defect on the premises of a residential property.

(P) Products liability - all matters involving injury to a person or property allegedly resulting from the manufacture or sale of a defective product or from a failure to warn.

(Q) Real property/Mortgage foreclosure - all matters relating to the possession, title, or boundaries of real property. All matters involving foreclosures or sales of real property, including foreclosures associated with condominium associations or condominium units. (The amount of claim specified in Section II. of the form determines the filing fee pursuant to section 28.241, Florida Statutes.)

(R) Commercial foreclosure - all matters relating to the termination of a business owner's interest in commercial property by a lender to gain title or force a sale to satisfy the unpaid dept secured by the property.

(S) Homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has been granted a homestead exemption.

(T) Non-homestead residential foreclosure - all matters relating to the termination of a residential property owner's interest by a lender to gain title or force a sale to satisfy the unpaid debt secured by the property where the property has not been granted a homestead exemption.

(U) Other real property actions - all matters relating to land, land improvements, or property rights not involving commercial or residential foreclosure.

(V) Professional malpractice - all professional malpractice lawsuits.

(W) Malpractice-business - all matters relating to a business's or business person's failure to exercise the degree of care and skill that someone in the same line of work would use under similar circumstances.

(X) Malpractice-medical - all matters relating to a doctor's failure to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances.

(Y) Malpractice-other professional - all matters relating to negligence of those other than medical or business professionals.

(Z) Other - all civil matters not included in other categories.

(AA) Antitrust/Trade regulation - all matters relating to unfair methods of competition or unfair or deceptive business acts or practices.

(AB) Business transactions - all matters relating to actions that affect financial or economic interests.

(AC) Constitutional challenge-statute or ordinance - a challenge to a statute or ordinance, citing a violation of the Florida Constitution.

(AD) Constitutional challenge-proposed amendment - a challenge to a legislatively initiated proposed constitutional amendment, but excluding challenges to a citizen-initiated proposed constitutional amendment because the Florida Supreme Court has directed jurisdiction of such challenges.

(AE) Corporate trust - all matters relating to the business activities of financial services companies or banks acting in a fiduciary capacity for investors.

(AF) Discrimination-employment or other - all matters relating to discrimination, including employment, sex, race, age, handicap, harassment, retaliation, or wages.

(AG) Insurance claims - all matters relating to claims filed with an insurance company.

(AH) Intellectual property - all matters relating to intangible rights protecting commercially valuable products of the human intellect.

(AI) Libel/Slander - all matters relating to written, visual, oral, or aural defamation of character.

(AJ) Shareholder derivative action - all matters relating to actions by a corporation's shareholders to protect and benefit all shareholders against corporate management for improper management.

(AK) Securities litigation - all matters relating to the financial interest or instruments of a company or corporation.

(AL) Trade secrets - all matters relating to a formula, process, device, or other business information that is kept confidential to maintain an advantage over competitors.

(AM) Trust litigation - all civil matters involving guardianships, estates, or trusts and not appropriately filed in probate proceedings.

**County Civil**

(AN) Civil – all matters involving claims ranging from $8,001 through $30,000 in damages, exclusive of interest, costs, and attorney fees.

(AO) Replevins—all lawsuits pursuant to Chapter 78, Florida Statutes, involving claims up to $30,000.

(AP) Evictions—all matters involving the recovery of possession of leased land or rental property by process of law.

(AQ) Other civil (non-monetary)—includes all other non-monetary county civil matters that were not described in other county civil categories.

---

**IV. Remedies Sought.** Place an "X" in the appropriate box. If more than one remedy is sought in the complaint or petition, check all that apply.

**V. Number of Causes of Action.** If the complaint or petition alleges more than one cause of action, note the number and the name of the cause action.

**VI. Class Action.** Place an "X" in the appropriate box.

**VII. Related Cases.** Places an "X" in the appropriate box.

**VIII. Is the Jury Trial Demanded In Complaint?** Check the appropriate box to indicate whether a jury trial is being demanded in the complaint.

**ATTORNEY OR PARTY SIGNATURE.** Sign the civil cover sheet. Print legibly the name of the person signing the civil cover sheet. Attorneys must include a Florida Bar number. Insert the date the civil cover sheet is signed. Signature is a certification that the filer has provided accurate information on the civil cover sheet, **and has read and complied with the requirements of Florida Rule of Judicial Administration 2.425.**

CLK/CT 96 Rev. 01/20

Clerk's web address: www.miami-dadeclerk.com

**Filing # 186506209 E-Filed 11/20/2023 01:22:13 PM**

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.     CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

<u>Fisher Island Community Association, Inc.</u>
Plaintiff

Case # _____
Judge _____

vs.
<u>ELIZABETH HAZAN</u>
Defendant

### II.     AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

### III.     TYPE OF CASE     (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

## CIRCUIT CIVIL

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
  ☐ Business governance
  ☐ Business torts
  ☐ Environmental/Toxic tort
  ☐ Third party indemnification
  ☐ Construction defect
  ☐ Mass tort
  ☐ Negligent security
  ☐ Nursing home negligence
  ☐ Premises liability—commercial
  ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
  ☐ Commercial foreclosure
  ☐ Homestead residential foreclosure
  ☐ Non-homestead residential foreclosure
  ☐ Other real property actions

☐ Professional malpractice
  ☐ Malpractice—business
  ☐ Malpractice—medical
  ☐ Malpractice—other professional
☐ Other
  ☐ Antitrust/Trade regulation
  ☐ Business transactions
  ☐ Constitutional challenge—statute or ordinance
  ☐ Constitutional challenge—proposed amendment
  ☐ Corporate trusts
  ☐ Discrimination—employment or other
  ☐ Insurance claims
  ☐ Intellectual property
  ☐ Libel/Slander
  ☐ Shareholder derivative action
  ☐ Securities litigation
  ☐ Trade secrets
  ☐ Trust litigation

## COUNTY CIVIL

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order. Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☐ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   1

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Nataly Gutierrez           Fla. Bar # 124715
      Attorney or party                  (Bar # if attorney)

Nataly Gutierrez                11/20/2023
  (type or print name)            Date

- 3 -

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 4 of 12

*CASE NO. 16-10389-BKC-AJC*

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
> (i) section 522(q)(1) may be applicable to the debtor; and
> (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
> and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B). *See, 11 U.S.C. § 1141(d)(5)*; *see also, In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor. In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> ... I can speak as to the procedural propriety of the Court awarding a discharge now. I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 5 of 12

*CASE NO. 16-10389-BKC-AJC*

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid

in the Plan, have been paid in full.  As a result, the value of property [payments] distributed under

the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended

Plan") on account of each unsecured claim is not less than the amount that would have been paid

on such claim if the bankruptcy estate would have been liquidated under chapter 7.  Therefore, the

Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i).   The Court takes judicial

notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018

to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the

Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made

pursuant to the Fourth Amended Plan and Confirmation Order.  Moreover, the Court finds 11

U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not

practicable under 11 U.S.C. § 1127.

**II.      The Fourth Amended Plan, the Confirmation Order and this Court's
           prior Orders provide additional bases to grant relief**

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior

rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to

completion of payments under the Plan.  The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured.  So
even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay
pursuant to the plan, they still have that security and that lien.  And a
priority claim with the IRS – and I'm not sure where that stands, but Your
Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority
to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 6 of 12

*CASE NO. 16-10389-BKC-AJC*

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors.

For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in

pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to **unsecured creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to **unsecured creditors**.

*See, Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The

Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended

Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the

Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in

relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **unsecured creditors** have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See, Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The

Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended

Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating

that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 7 of 12

*CASE NO. 16-10389-BKC-AJC*

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor upon the completion of plan payments to unsecured creditors under the Plan. Specifically, paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to *Unsecured Creditors*, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all payments contemplated under the Plan to *Unsecured Creditors*.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to *Unsecured Creditors* have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 8 of 12

*CASE NO. 16-10389-BKC-AJC*

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized

Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After

Confirmation [ECF No. 692] (the "Agreed Order").  The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized
> Debtor shall promptly file a Final Report and Motion for Final
> Decree Closing Case on the Court-approved local form in effect at
> that time, which shall certify, that all payments required under the
> Plan to the *unsecured creditors* have been made.  The Court may
> then grant the Reorganized Debtor a discharge, pursuant to 11
> U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added].  The Court finds that the

Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with

Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class

12 unsecured creditors.

**III.    NLG's Objection and Opposition**

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG,

whose claim the Court disallowed, asserted that a discharge should not be granted at this time

because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full.  The

Court took the matter under advisement to consider the objection; and upon further consideration

and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor

pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected

to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding,

in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

Case 1:26-cv-20060-LFL   Document 1   Entered on FLSD Docket 01/06/2026   Page 20 of 212
View Document – Miami-Dade County OCS

1/5/26, 1:08

CASE NO. 16-10389-BKC-AJC

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

CASE NO. 16-10389-BKC-AJC

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns. Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge. However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals. It is the policy of the Court to not close a case until all appeals are finally resolved and over. Therefore, it is

**ORDERED AND ADJUDGED:**

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 11 of 12

*CASE NO. 16-10389-BKC-AJC*

2.  The Final Report is **APPROVED**.

3.  NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED and OVERRULED**.

4.  The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.  The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.  The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge. The New York courts have exclusive

CASE NO. 16-10389-BKC-AJC

jurisdiction over the settlement between those parties.

7.   This case shall remain open pending the final disposition of all motions herein and

the outstanding appeals, after which the Court will direct the Clerk of Court to enter

a Final Decree closing this case.

### 

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and
to file a certificate of service with the Court.*

Filing # 91484512 E-Filed 06/21/2019 01:14:34 PM        **EXHIBIT G**

### IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
### IN AND FOR MIAMI DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

      Plaintiff,                                         CASE NO.:   08-4519 CA 42

vs.

ELIZABETH HAZAN, ET AL.,

      Defendants.

_____/

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
### FOR LACK OF JURISDICTION

    Plaintiff, Fisher Island Community Association, Inc. (hereinafter "Association"), by and

through the undersigned counsel hereby files its Response to Defendant's Motion to Dismiss for

Lack of Jurisdiction filed on February 27, 2019 and in support thereof states as follows:

### PROCEDURAL BACKGROUND

1.    Due to Defendant filing multiple bankruptcies and countless changes of attorneys, this matter

    is over eleven (11) years old and arises from an action to foreclose upon a lien for delinquent

    assessments.

2.    On or about March 18, 2008, Association served its complaint upon Defendant.

3.    On or about May 11, 2010, Defendant entered into the Stipulation Agreement with Association

    whereby Defendant was required to make payments to the Association for delinquent amounts

    owed to the Association based on Defendant's failure to pay her required assessments. *See*

    *attached Exhibit "A."*

**Page 1 of 13**

4. On or about May 11, 2010, this Court entered its Order on Stipulation Agreement, approving the Stipulation Agreement and retaining jurisdiction over the matter in accordance with the Stipulation Agreement. *See attached Exhibit "B."*

5. Defendant breached the Stipulation Agreement.

6. On May 5, 2011, this Court entered its Order of Dismissal, dismissing the case without prejudice. *See attached Exhibit "C."*

7. On or about June 30, 2011, Defendant entered into the Amended Stipulation Agreement with Association. *See attached Exhibit "D."*

8. Defendant breached the Amended Stipulation Agreement.

9. On or about December 20, 2011, Defendant entered into the Second Amended Stipulation Agreement with Association. *See attached Exhibit "E."*

10. Defendant breached the Second Amended Stipulation.

11. On December 6, 2012, Association filed its Motion for Final Judgment in accordance with the Stipulation Agreement and its subsequent amendments.

12. On August 20th, 2013, Defendant filed her Motion for Continuance or to Reschedule Hearing. and began propounding discovery on the Association.

13. On August 20th, 2013, Defendant filed a Request for Production to Association.

14. On August 20th, 2013, Defendant filed a Notice of Service of First Set of Interrogatories to Association.

15. On August 20th, 2013, Defendant filed a Notice of Taking Deposition Duces Tecum of Association.

16. On May 22, 2015, Association filed its Amended Motion for Final Judgment.

17. On July 11, 2016, Defendant filed a suggestion of bankruptcy, which stayed the proceedings. *See attached Exhibit "F."*

18. On October 20, 2016, Association filed its Motion for Relief from Stay in the United States Bankruptcy Court for the Southern District of Florida, under case number 16-10389 AJC. *See attached Exhibit "G."*

19. On November 23, 2016, the United States Bankruptcy Court for the Southern District of Florida, under case number 16-10389 AJC, granted Association a relief from stay to allow Association to obtain final judgment in the circuit court for the Eleventh Judicial Circuit under case number 08-4519 CA 15. *See attached Exhibit "H."*

20. On October 10, 2017, Association filed its Motion for Final Judgment After Breach of Stipulation with Assessments of Attorney's Fees and Costs.

21. On October 11th, 2017, Defendant again filed a Notice of Service of First Set of Interrogatories to Association.

22. On October 11th, 2017, Defendant filed another Notice of Taking Deposition Duces Tecum of Association.

23. On October 11th, 2017, Defendant filed another Request for Production to Association.

24. On October 13th, 2017, Defendant filed a Notice of Taking Deposition Duces Tecum of Carol Allison, Account Manager for Association.

25. On October 13th, 2017, Defendant filed a Notice of Taking Deposition Duces Tecum of Gary Snider, President and CEO of Association.

26. On October 24, 2017, Association filed its Emergency Motion for Protective Order and Objection to Defendant's Notices of Taking Deposition of Corporate Representative of

Plaintiff, Notice of Taking Deposition of Gary Snider, and Notice of Taking Deposition of Carol Allison.

27. On November 17, 2017, Defendant filed a Notice of Cancellation of Depositions Duces Tecum.

28. Meanwhile, on February 26, 2018, Defendant entered into a Stipulation for Settlement with Association in the bankruptcy court, under Case Number 16-10389 AJC, agreeing that Association would be allowed to seek the pre and post-bankruptcy assessment amounts through the Circuit Court for Miami Dade County without restriction. *See attached Exhibit "I."*

29. On April 20, 2018, the United States Bankruptcy Court for the Southern District of Florida, under case number 16-10389 AJC, approved the Stipulation for Settlement and dismissed the matter as it relates to Association. *See attached Exhibit "J."*

30. On June 15, 2018, Association filed its Amended Motion for Final Judgment After Breach of Stipulation with Assessment of Attorneys' Fees and Costs.

31. On June 25th, 2018, Defendant filed yet another Notice of Taking Deposition Duces Tecum of Gary Snider, President and CEO for the Association, Oscar Diaz, Financial Controller for Association, and Carol Allison.

32. On July 24, 2018, Association filed its Motion for Protective Order and Objection to Defendant's Notices of Taking Deposition of Financial Controller Oscar Diaz, President CEO Gary Snider, and Carol Allison.

33. On September 13, 2018, Defendant filed a Notice of Cancellation of Deposition for Oscar Diaz, Financial Controller for Association.

34. On September 25, 2018, the Court granted Plaintiff's Motion for Protective Order and Objection to Defendant's Notices of Taking Deposition of Financial Controller Oscar Diaz, President CEO Gary Snider, and Carol Allison.

Page 4 of 13

35. On October 01, 2018, Defendant filed a Motion to Vacate Order of September 25, 2018 and Motion for Rehearing on Association's Motion for Protective Order.

36. On February 20, 2019, Association filed its Response to Defendant's Motion to Vacate Order for September 25, 2018 and Motion for Rehearing on Association's Motion for Protective Order.

37. On February 27, 2019, Defendant filed Defendant's Supplement to Defendant, Elizabeth Hazan's Motion to Vacate Order of September 25, 2018 and Motion for Rehearing on Association's Motion for Protective Order.

38. On February 27, 2019, for the first time and despite all of Defendant's filings, discovery requests and depositions sought, Defendant filed Defendant's Motion to Dismiss for Lack of Jurisdiction based on this Court not retaining jurisdiction in the Order of Dismissal. *See attached Exhibit "K."*

## MEMORANDUM OF LAW

Defendant's Motion to Dismiss for Lack of Jurisdiction is simply another delay tactic. This case has been pending for approximately eleven (11) years due to Defendant's abuse of the legal system which includes frivolous filings, multiple bankruptcies, and multiple changes of attorneys. In Defendant's latest effort to delay these proceedings, Defendant asks this Court to ignore nine (9) years of continued litigation, stipulations, and orders and dismiss this Matter for Lack of Jurisdiction based on this Court not retaining jurisdiction in the Order of Dismissal. *See attached Exhibit "C."*

### A. Defendant's Assertion that the May 10th, 2010 Settlement Agreement is Nullified by the Order of Dismissal is misplaced.

The issue that the Defendant raises is based on the jurisdiction of the trial court to enforce a settlement agreement that has been specifically approved by this Court and for which

jurisdiction has been expressly retained by this Court to enforce the terms of the Stipulation

Agreement. Defendant would have this Court belief that the court has no jurisdiction to do so.

However, Defendant's argument has been expressly rejected by the Florida Supreme Court in

*Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797 (Fla. 2003) in which the Florida Supreme

Court considered the following certified question:

> Does a court have jurisdiction to enforce a settlement agreement where the court
> has either incorporated the settlement agreement into a final judgment *or* approved
> the settlement agreement by order and retained jurisdiction to enforce its terms?
> *Id.* at 799 (*emphasis added*).

The *Paulucci* Court answered the question in the affirmative holding that a court has jurisdiction

to enforce a settlement agreement where the court has *either* incorporated the agreement into a

final judgment *or* approved the agreement by order and retained jurisdiction to enforce it terms.

In the instant case, the parties submitted their negotiated Stipulation Agreement to the court

for approval and retention of jurisdiction. *See attached Exhibit "A."* Accordingly, this Court

entered its Order on Stipulation Agreement on May 11, 2010. *See attached Exhibit "B."* In its

Order, this Court approved the Stipulation Agreement and retained jurisdiction over the matter. *Id.*

Thus, because the Court approved the agreement by Order and retained jurisdiction to enforce its

terms, this Court has continuing jurisdiction to enforce the settlement agreement. *Paulucci v. Gen.*

*Dynamics Corp.*, 842 So. 2d 797, 799 (Fla. 2003). Defendant contends that although this Court in

its Order of Stipulation approved the Stipulation Agreement and retained jurisdiction, that this

Order is somehow nullified by the dismissal of the matter through the Order of Dismissal which

did not specifically retain jurisdiction. This contention is misguided. First, it is clear that the

*Paulucci* Court addressed this issue and held that the court retains jurisdiction *either* by

incorporating a settlement agreement into a final order *or* by approving a settlement agreement

and retaining jurisdiction to enforce it terms. *Id.* The latter occurred here. Second, it is well

Page 6 of 13

established law that "a trial judge has the inherent power to do those things necessary to enforce its orders." *Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 800–01 (Fla. 2003) (citing *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. V. United States Fire Ins. Co.*, 639 So.2d 606, 608–09 (Fla.1994).

Here, this Court approved the Stipulation Agreement and retained jurisdiction to enforce its terms by way of a judicial order. When a trial court approves a settlement agreement by order and retains jurisdiction to enforce its terms, the trial court has the jurisdiction to enforce the terms of the settlement agreement. *See Paulucci v. Gen. Dynamics Corp.*, 842 So.2d 797, 803 (Fla. 2003); *Sarhan v. H & H Inv'rs, Inc.*, 88 So.3d 219, 220 (Fla. 3d DCA 2011). Further, the Florida Supreme Court, upheld the ruling in *Buckley Towers Condo., Inc. v. Buchwald*, which emphasized that even without an express reservation of jurisdiction, jurisdiction inherently remains in the trial court to make such orders as may be necessary to enforce its judgments and orders. *Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 800–01 (Fla. 2003) (citing *Buckley Towers Condo., Inc. v. Buchwald*, 321 So. 2d 628, 629 (Fla. 3d DCA 1975). Thus, this Court has the power to summarily enforce the Stipulation Agreement entered into by the parties while the litigation was pending before it because the Stipulation Agreement was approved by order of the court. This Court can enforce the agreement as part of its inherent jurisdiction to enforce its own orders, which includes orders based on settlements. *Id.*

**B. Defendant's Assertion that the Amendments to the May 10th, 2010 Stipulation Agreement Are Not Enforceable is also misplaced.**

The Stipulation Agreement in the present case contemplated further enforcement litigation. *See attached Exhibit "A."* It settled all matters between the parties and provided for the trial court to approve the Stipulation Agreement and retain jurisdiction to enforce the Stipulation Agreement. The Stipulation Agreement even provided for limited confidentiality in case the

Page 7 of 13

Agreement needed to be enforced. Further, the parties specified the damages available should Defendant fail to timely satisfy her obligations under the Stipulation Agreement. Pursuant to paragraph 7 of the Stipulation Agreement, the parties agreed in part that in the event of a breach by Defendant:

> "[T]he Association shall immediately schedule a hearing in order to proceed to Final Judgement as to its complaint, and for interest, late fees, if applicable, attorney's fees and costs (which will include additional attorney's fees and costs incurred due to [Defendant's] breach of the Stipulation Agreement."

When Defendant breached the Stipulation Agreement, the parties negotiated an amendment to the agreement, referred to as the Amendment to Stipulation Agreement. The only change to the agreement was that certain payments would be subsequently due. *See attached Exhibit "D."* Further, the parties agreed that "[a]ll of the other terms, covenants, conditions and provisions of the Stipulation Agreement specifically including payment due dates…**shall remain in full force and effect and [were] hereby adopted and reaffirmed by the parties."** *Id.* (emphasis added). The parties did not modify the specific damages available under the original Stipulation Agreement.

Following the amendment to the Stipulation Agreement, the parties again agreed to modify the payment schedule for the remaining balance due to Association, referred to as the Second Amendment to Stipulation Agreement. *See attached Exhibit "E."* Further, the parties again restated the same damages provided for in the Stipulation Agreement in the event of a breach by Defendant. *Id.* At no point did the parties modify the specific damages available under the original Stipulation Agreement. Further, the parties agreed that "[a]ll of the other terms, covenants, conditions and provisions of the Stipulation Agreement specifically including payment due dates…shall remain in full force and effect and are hereby adopted and reaffirmed by the parties." *Id.* Accordingly, the parties voluntarily agreed to the modification of the Stipulation Agreement.

Page 8 of 13

It is clear that the parties' contractual intent was only to modify the payment due dates and not the Association's enforcement rights. With each amendment, the obligations of the parties remained the same and the available damages remained the same. At no point did the parties with words or conduct nullify the Stipulation Agreement. In fact, each amendment expressly states that the Stipulation Agreement was to remain in "full force and effect and its terms and conditions are incorporated herein." Moreover, following each amendment, Defendant continued extensive litigation in the matter and the issue of breach of Stipulation Agreement, and submit herself to this Court's Jurisdiction, a fact that further validates the Stipulation Agreement and the subsequent amendments. From 2011-2019, Defendant filed repeated requests for discovery, set multiple depositions, and filed countless motions with the court. At no point within the last eleven (11) years did Defendant claim that the amendments to the Stipulation Agreement were not enforceable. Instead, Defendant's action, through her continued litigation of the matter, prove that she agreed and understood she was bound by the amendments.

Regarding the cases of *Olen Properties Corp. v. Wren* and *Boca Petroco, Inc. v. Petroleum Realty I, LLC.*, cited in Defendant's Motion in support of the proposition that Association is seeking damages in excess of the original judgment, both these cases involved plaintiffs that sought damages *not* contemplated in the settlement agreement. That is clearly not the case here. As stated above, the Stipulation Agreement and the subsequent amendments each sought the same category of damages (interest, late fees, delinquent assessments, attorney's fees and costs). Here, it seems that Defendant is confusing a change in the *amount* of damages (due to amounts incurred as a result of the breach by Defendant) with *category* of damages.

Accordingly, parties to a settlement have the right to amend provisions within that agreement to address a need that became apparent after the settlement was entered into or to

Page 9 of 13

address a breach that can be resolved without court interference. *See e.g. St. Joe Corporation v. McIver*, 875 So.2d 375 (Fla.2004). Those amendments relate back the date of the original agreement if the terms of the original agreement are confirmed and ratified. An amendment does not replace the original Stipulation Agreement, only the part that is changed by the amendment (here, the due dates of payments after breach). Thus, the Stipulation Agreement is not nullified, rather, it is in effect, and for the reasons stated above, this Court can enforce the agreement as part of its inherent jurisdiction to enforce its own orders, which includes orders based on settlements.

## C. Defendant's Assertion that Defendant's Debt was Discharged in the Bankruptcy Proceeding is wholly frivolous and a fraud on the Court

In her motion, Defendant contends that this Court either has no jurisdiction over this matter because the debt was discharged in bankruptcy or that defenses based on the bankruptcy "wipe out most of Plaintiff's claim." *See page 9 of Defendant's Motion*. Defendant's argument is simply false, fraudulent and a fraud on the Court. Once again, Defendant fails to inform the Court of an additional settlement agreement between Defendant and Association, executed in Defendant's bankruptcy case. The settlement stipulation entered into by the parties in the bankruptcy proceeding (Case No. 18-01008-AJC) acknowledges that any pre-petition obligations are limited to in rem amounts and determinable only by the Circuit Court for Miami Dade County. *See attached Exhibit "I" and "J."* Accordingly, the *Circuit Court for Miami Dade County* has **jurisdiction** to enter a final judgment and proceed to sale without the need for further order of the bankruptcy court. *Id.* Any argument Defendant tries to make regarding the bankruptcy case precluding anything, is directly controverted by Paragraph 6 of the Bankruptcy settlement, which provides that all issues between the parties be handled directly and outside the Chapter 11 plan. *Id.*

Page 10 of 13

View Document – Miami-Dade County OCS

1/5/26, 1:08

Furthermore, this agreement signed by both parties specifically removes the bankruptcy plan from having any effect from the current foreclosure case. The bankruptcy case was dismissed, and the stipulation was approved. *Id.* As such, the only connection between the bankruptcy case and the foreclosure case at this point is a prohibition to proceed against Defendant *in personam* for the pre-petition amounts. Contrary to Defendant's Motion to Dismiss for Lack of Jurisdiction, Defendant has already agreed that this Court has jurisdiction over this matter. Therefore, any issues that Defendant raises claiming issues of bankruptcy or bankruptcy defenses, is on its face frivolous, made only in bad faith, and contrary to the agreement agreed to by Defendant herself. Defendant has already agreed that the confirmed bankruptcy plan has no impact on Association's rights.

**D. In addition to the reasons stated above, this Court has jurisdiction to enforce the Agreement based on its equitable powers.**

"Historically, courts of equity came into being in order to provide a forum for the granting of relief in accordance with the broad principles of right and justice in cases where the restrictive technicalities of the law prevented the giving of relief." *Royal Palm Corp. Ctr. Ass'n, Ltd. v. PNC Bank*, NA, 89 So. 3d 923 (Fla. 4th DCA 2012). If this Court finds that jurisdiction was lost back in 2011 through the restrictive technicality of the Order of Dismissal, this Court, in equity, can grant the requested relief to the Association. To find otherwise, would be to reward Defendant for years of concealing this information, despite years of continued and extensive litigation. The Defendant should not be rewarded for deferring nine (9) years of litigation and then ultimately decide, at the opportune time, to all of a sudden raise an issue. Courts should not condone a party's "gotcha" tactics. "A court of equity is a court of conscience; it should not be shackled by rigid rules of procedure and thereby preclude justice being administered according to good conscience." *Demorizi v. Demorizi*, 851 So. 2d 243 (Fla. 3d DCA 2003).

Page 11 of 13

## CONCLUSION

Defendant would have this Court belief that the court has no jurisdiction to enforce the Stipulation Agreement or its orders. However, this Court has the power to summarily enforce the Stipulation Agreement entered into by the parties while the litigation was pending before it because the Stipulation Agreement was approved by order of the court. This Court can enforce the agreement as part of its inherent jurisdiction to enforce its own orders, which includes orders based on settlements. This Court's jurisdiction is not nullified or lost through the subsequent amendments to the Stipulation Agreement. Parties to a settlement have the right to amend provisions within that agreement to address a need that became apparent after the settlement was entered into or to address a breach that can be resolved without court interference. Those amendments relate back the date of the original agreement if the terms of the original agreement are confirmed and ratified. Further, Defendant mislead the court about the parties executed bankruptcy settlement (that allows the Association to proceed to final judgment and stipulates that only this court can determine the amounts), is just another frivolous attempt by Defendant to delay this case even further.

**WHEREFORE,** Association respectfully requests that this Court: (1) deny Defendant's Motion to Dismiss for Lack of Jurisdiction, and (2) grant any other relief that this Court may deem just and proper.

Page 12 of 13

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing Motion was furnished by e-mail to Stuart J Zoberg, Esq., at szoerg@shirlawgroup.com and office@shirlawgroup.com, on this 21th day of June 2019.

/s/ *Nataly Gutierrez*
Nataly Gutierrez, Esq.
nataly@peytonbolin.com
Foreclosure@peytonbolin.com
FBN: 124715
Attorney for Plaintiff

PeytonBolin, PL
3343 West Commercial Boulevard, Suite 100
Fort Lauderdale, FL 33319
Telephone: (954) 316-1339
Facsimile: (954) 727-5776

**Page 13 of 13**

6 5 10

60700SS

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 08-4519 CA 15

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

Plaintiff,

vs.

ELIZABETH HAZAN, et. al,

Defendants.

## STIPULATION AGREEMENT

Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation, (hereinafter the "ASSOCIATION"), by and through its undersigned counsel, and Defendant ELIZABETH HAZAN, (hereinafter the "OWNER") hereby stipulate and agree as follows:

### RECITALS

A.      The ASSOCIATION is a Florida not-for-profit corporation, which has been established as the master association for the operation of the community known as Fisher Island, in accordance with the Amended and Restated Master Covenants For Fisher Island ("Covenants"), and all exhibits attached thereto (collectively, the "Governing Documents"), recorded on April 23, 2009, in Official Records Book 26838, at Page 4366, et seq., of the Public Records of Miami-Dade County, Florida, as same may be amended from time to time.

B.      OWNER is the fee simple title holder and owner of the following real property:

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 903, CORAL GABLES, FLORIDA 33134 • PHONE (305) 442-3334 • FAX (305) 443-3292



EXHIBIT
A

Lot No. 7, Block No. 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, as recorded in Plat Book 157, at Page 54 of the Public Records of Miami-Dade County, Florida.

A/K/A 6913 VALENCIA DRIVE FISHER ISLAND FLORIDA 33109 ("Property")

C.    Pursuant to Article VI of the Covenants, entitled "Covenant for Maintenance Assessments," OWNER is obligated to pay assessments to the Association. Specifically, Section 1 of Article VI, entitled "Creation of Lien and Personal Obligation for Assessments," provides, in pertinent, part as follow:

> ...[E]ach Owner of any Lot by acceptance of a deed therefore or other conveyance thereof, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree, to pay to the Community Association general assessments for the maintenance, operation, management and insurance of the Common Areas and the Community Association as provided herein, including such reasonable reserves as the Community Association may deem necessary, and capital improvement, special and personal assessments as also provided herein, all such assessments to be fixed, established and collected from time to time as hereinafter provided. All assessments, together with late charges, interest and costs of collection thereof as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with late charges, interest and costs of collection thereof as hereinafter provided, shall also be the personal obligation of all Owner(s) of such property from time to time.  All general, capital improvement and special assessments shall be imposed equally against all Lots within The Properties and those that may in the future be subject to liens of the Community Association.

D.    Despite numerous demands from the ASSOCIATION, OWNER has disputed the assessments due on the Property.  OWNER and ASSOCIATION now agree to settle for the alleged unpaid assessments, interest, late fees, and attorneys' fees and costs for the Property.

SHEPPARD, RAVERA, LEVINE, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 605, CORAL GABLES, FLORIDA 33134 • PHONE (305) 442-5634 • FAX (305) 443-3292

STIPULATION AGREEMENT
CASE NO. 08-4910 CA 15

E.    ASSOCIATION filed this action to enforce its Claim of Lien for Unpaid Assessments and for a Money Judgment and OWNER filed a counterclaim for *Usury* and *Intentional Interference with Business Relationship*

F.    In light of the foregoing, and in an effort to resolve the dispute between the ASSOCIATION and OWNER regarding the unpaid assessments and the counterclaim, the ASSOCIATION and OWNER have agreed to the terms set forth below and payment schedule attached hereto ("Payment Schedule").

NOW THEREFORE, in consideration of the mutual promises exchanged herein and other valuable consideration, the receipt and sufficiency of the same being hereby acknowledged, it is hereby agreed that:

1.    Recitals.   The above recitals are true and correct and are incorporated herein.

2.    The parties agree as of May 1, 2010, the principal balance due is in the amount of $64,852.70[1], plus the amount of $6,832.05[2].

Commencing May 1, 2010, OWNER shall make all 36 payments of $2610.00, inclusive of all four quarters of ASSOCIATION assessments due in 2010, identified in the schedule attached hereto as Exhibit "A" on the dates specified therein.   However, at any time within the 36 month payment plan, in the event of a sale of the property or a foreclosure by any lender on the property or ASSOCIATION'S breach of this Stipulation or OWNER'S breach or at OWNER'S election, OWNER may prepay, without penalty, the principal balance due in the amount of $64,852.70, less any payments already made towards the principal, plus the amount of $6,832.05, plus any additional assessments assessed but not yet paid together

---

[1] This amount represents the current amount due to ASSOCIATION, inclusive of assessments, late fees and finance charges, as of May 1, 2010.

[2] This amount represents the current amount due to ASSOCIATION for attorney's fees and costs as of May 1, 2010.

SIERRON, RIVERO, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
291 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 • PHONE (305) 443-3334 • FAX (305) 443-3292



STIPULATION AGREEMENT
CASE NO. 09-4919 CA 15

with any finance charges or late fees incurred on the unpaid assessed assessments at the time of default by OWNER, as well as any reasonable attorney's fees and costs incurred by the ASSOCIATION as a result of OWNER'S breach, if applicable, and this action shall be dismissed and the lien shall be satisfied of record by the ASSOCIATION.   In the event of OWNER'S breach and failure to pay ASSOCIATION, the ASSOCIATION shall only be entitled to judgment for this amount.

THE PAYMENTS SET FORTH IN THIS PARAGRAPH ARE TO BE MADE WHEN DUE. TIME IS OF THE ESSENCE.

NOTICES:   All notices, requests, or instructions hereunder shall be in writing and delivered personally, sent by facsimile transmission, overnight or certified mail, postage pre-paid as follows:

        a.)  If to the OWNER notice to the Property address with a copy to:

            c/o Michael W. Simon, Esquire
            Simon, Sigalos & Spyredes, P.A.
            3839 NW Boca Raton Blvd., Suite 100
            Boca Raton, Florida 33431
            Phone number: (561) 447-0017
            Facsimile number (561) 447-0018

        b.)  If to the Association

            NICHOLAS D. SIEGFRIED, Esq.
            201 Alhambra Cir. #1102
            Coral Gables, FL 33134
            Phone number: 305-442-0877
            Facsimile number: 305-448-8727

    3.    It is further understood that Exhibit "A" only includes the current outstanding regular and special assessments through December 31, 2010.

    4.    Future Assessments.  By accepting the terms of this Stipulation, including the Payment Schedule attached hereto, OWNER acknowledges that she remains liable for all future regular assessment payments for the Property commencing January 1, 2011 as well

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 605, CORAL GABLES, FLORIDA 33134 • PHONE (305) 442-3334 • FAX (305) 443-3292



STIPULATION AGREEMENT
CASE NO. 08-4850 CA 15

as any special assessments coming due on the Property after execution of this Stipulation
on the timeframe specified by the ASSOCIATION pursuant to its governing documents.
OWNER acknowledges that the ASSOCIATION has not waived OWNER'S obligation to
timely pay any future assessments not accounted for in this Stipulation.

5.      OWNER shall make the payments referred to in paragraphs 2, 3 and 4 payable
to FISHER ISLAND COMMUNITY ASSOCIATION, INC. Attn: Carol Allison at 1 Fisher
Island Drive, Fisher Island Florida 33109.

6.      Upon payment in full by OWNER to the ASSOCIATION, the ASSOCIATION
shall cause to be entered a Dismissal in this action and a Satisfaction of Lien.

7.      IF OWNER SHOULD FAIL TO COMPLY WITH THE PAYMENT SCHEDULE
SET FORTH IN PARAGRAPH 2 OF THIS STIPULATION AGREEMENT OR SHOULD FAIL
TO TIMELY PAY ALL FUTURE ASSESSMENTS AS SET FORTH IN PARAGRAPH 4 OF
THIS STIPULATION,  the ASSOCIATION shall deliver OWNER  a lien (10) day notice to
cure. In the event that OWNER fails to pay the amounts within the 10 day notice to cure, the
ASSOCIATION shall immediately schedule a hearing in order to proceed to Final Judgment
as to its Complaint, and for interest, late fees, if applicable, attorney's fees and costs (which
will include additional attorney's fees and costs incurred due to OWNER breach of the
Stipulation Agreement), by application to the Court with notice and hearing, upon a sworn
Affidavit stating the balance due to the Association. At the time of Final Judgment, the
ASSOCIATION shall be entitled to the principal balance due in the amount of $64,852.70,
less any payments already made towards the principal, plus the amount of $6,832.05, plus
any additional assessments assessed but not yet paid together with any finance charges or
late fees incurred on the unpaid assessed assessments at the time of default by OWNER,
as well as any reasonable attorney's fees and costs incurred by the ASSOCIATION as a

STIPULATION AGREEMENT
CASE NO. 09-4919 CA 15

result of OWNER'S breach, if applicable.   OWNER reserves her rights to defend the election of remedies pursued by ASSOCIATION at the time of the ASSOCIATION'S application with the court on its Complaint. OWNER further agrees that should a default occur, any payments made will be applied first to assessments, then to any interest accrued, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment.  Should OWNER'S mortgage lender foreclose on the property during the term of this Stipulation, then, upon payment by the Lender, the ASSOCIATION shall credit OWNER with a minimum of the Lender's statutory obligation, if applicable, to pay assessments to offset any balance due to ASSOCIATION by OWNER.  In the event of foreclosure by OWNER'S mortgage lender, OWNER shall be deemed in breach of this Stipulation and ASSOCIATION may proceed with its rights as set forth in this Paragraph.

8.   In consideration of the ASSOCIATION entering into this Stipulation Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, OWNER, on her behalf and on behalf of all those that take through her, hereby completely releases and forever discharges the ASSOCIATION and its past, present and future, officers, directors, partners, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns from any and all past, present or future alleged claims, demands, obligations, actions, causes of action, rights, damages, punitive damages, attorneys' fees, costs, expenses and compensation of any nature whatsoever, known or unknown, from the beginning of time to the date of this Stipulation Agreement, including, but not limited to, claims regarding the relief sought, or from all those claims that were or might have been asserted regarding and/or relating to the relief sought, or from all those claims that were or

BEDFORD, RIVERA, LEUDER, DE LA TORRE & BOSA, P.A., ATTORNEYS AT LAW
261 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 • PHONE (305) 443-3394 • FAX (305) 443-3282



STIPULATION AGREEMENT
CASE NO. 08-4310 CA 15

might have been asserted, in that certain counterclaim filed by OWNER against ASSOCIATION in this action wherein OWNER asserted claims for *Usury* and *Intentional Interference with Business Relationship*.

9.      This is a complete agreement between the parties and the parties waive the effect of Fla.R.Civ.P. 1.420(e).

10.     The parties request that this Court approve the foregoing Stipulation Agreement and retain jurisdiction of this matter until payment is made in full, or until Final Judgment.

11.     This Stipulation Agreement constitutes the full and entire agreement and understanding between the parties with respect to the subject matter hereof, and there are no agreements or representations except as specifically set forth herein.   All prior discussions, negotiations, letters, demands and writings of any kind are fully merged into this Stipulation Agreement and are to be construed to be of no further force or effect, it being the intention of the parties that this Stipulation Agreement shall serve as the sole and entire expression of their agreement and understanding.   This Stipulation Agreement may not be amended or modified except by an instrument in writing signed by both OWNER and ASSOCIATION. This Stipulation Agreement may be signed in counterparts, and facsimile and digitally transmitted original signatures shall be deemed originals.

12.     Confidentiality.   The parties hereto acknowledge that this Agreement, the nature of the negotiations leading thereto and any other aspect pertaining to this Agreement, shall remain confidential.   ASSOCIATION and OWNER further agree to keep all the reasons or perceived reasons for entering into this Agreement confidential.   A violation of this provision by any party hereto, their heirs, beneficiaries, assigns, household and/or family members, guests or agents, shall be deemed a violation of the Agreement. In

SHUTTS, RIVERA, LERNER, DE LA TORRE & ROSS, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 805, CORAL GABLES, FLORIDA 33134 • PHONE (305) 442-3334 • FAX (305) 443-3292

STIPULATION AGREEMENT
CASE NO. 98-678 CA 15

such event, ASSOCIATION or OWNER shall be subject to the provisions of Paragraph 7 above, and shall also be liable for any and all damages suffered by the Association of any nature whatsoever, including any expenses, attorneys' fees and costs incurred by the Association or OWNER as a result of ASSOCIATION's or OWNER'S breach of this Paragraph.

13.    This Stipulation is not enforceable unless executed by all parties.  A facsimile copy shall be considered an original for purposes of enforcement of this agreement.

DATED this ____ day of May, 2019.

SIEGFRIED, RIVERA, LERNER
DE LA TORRE, & SOBEL, P.A.
Attorneys for Plaintiff
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
(305) 442-3334
(305) 443-3292

By: _____
NICHOLAS D. SIEGFRIED, ESQ.
Florida Bar No. 27020

SIMON, SIGALOS & SPYREDES, P.A.
Attorneys for Elizabeth Hasan
3695 NW Boca Raton Blvd., Suite 100
Boca Raton, Florida 33431
(561) 447-0017
(561) 447-0018

By: _____
MICHAEL W. SIMON, ESQ.
Florida Bar No. 778354

FISHER       ISLAND       COMMUNITY
ASSOCIATION, INC.

By: _____
Print Name: _____
Title: _____

By: _____
_____, President

HOLLAND & KNIGHT, LLP.
Co-Counsel for Plaintiff
701 Brickell Ave., Ste 3000
Miami, Florida 33131
(305) 374-8500
(305) 789-7799

By: _____
TIFFANI ELLISE, ESQ.
Florida Bar No. 022917

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 Alhambra Circle, Suite 1102, Coral Gables, Florida 33134 • Phone (305) 442-3334 • Fax (305) 443-3292

Case 1:26-cv-20060-LFL   Document 1   Entered on FLSD Docket 01/06/2026   Page 45 of 212
View Document – Miami-Dade County OCS

1/5/26, 1:08



2

6075925

ORDR

MIAMI-

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR

DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

CASE NO. 08-4519 CA 15

Plaintiff,

vs.

ELIZABETH HAZAN, et. al.,

Defendants.

_____/

### ORDER ON STIPULATION AGREEMENT

THIS CAUSE having come on to be heard before me, the undersigned Judge, upon the
parties' confidential Stipulation Agreement; and the Court after being advised of the Stipulation
Agreement executed by the Plaintiff/Counter-Defendant, FISHER ISLAND COMMUNITY
ASSOCIATION, INC. ("ASSOCIATION") and the Defendant/Counter-Plaintiff ELIZABETH
HAZAN ("HAZAN"), and being otherwise fully advised in the premises, it is:

ORDERED AND ADJUDGED as follows:

1.    The Stipulation Agreement is approved.

2.    HAZAN'S counterclaim against the ASSOCIATION is dismissed with prejudice.

This Court retains jurisdiction over this matter in accordance with the Stipulation

IT IS FURTHER ORDERED AND ADJUDGED that the movant shall, using the
method(s) mandated by the Florida Rules of Civil Procedure, serve all parties/counsel of record



EXHIBIT
B

Bk 27286 Pg 1188 CFN 20100327766 05/17/2010 09:52:12 Pg 1 of 2 Mia-Dade Cty, FL

STIPULATION AGREEMENT
CASE NO. 08-4619 CA 15

with a true and correct copy of this Order IMMEDIATELY upon receipt and file proof of service
with the Clerk.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, this   11   day of
MAY, 2010.

Signed and Dated

MAY 11 2010

Judge Israel Reyes

ISRAEL REYES
CIRCUIT COURT JUDGE

Signed and stamped original Order sent to court file by Judge Reyes' staff
Electronic copy furnished to the below listed recipient(s) by facsimile.
NICHOLAS D. SIEGFRIED, Esq. (305.443.3292)

MICHAEL W. SIMON, Esq. (561.447.0018)
TIFFANI LEE, Esq. (305.789.7799)
NLG, LLC (305.422.0539)

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 ⸱ PHONE (305) 442-3334 ⸱ FAX (305) 443-3292

**IN THE CIRCUIT COURT OF THE**
**11TH JUDICIAL CIRCUIT IN AND FOR**
**MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**
**CASE NO:** _CS-UST CA-1_

_Fisher Island community_
_Association INC_
                    Plaintiff(s).

vs.

_Elizabeth Hean_

                    Defendant(s),

_____

**ORDER**
**GRANTING/DENYING**
**PLAINTIFF'S/DEFENDANT'S**

_____

FILED FOR RECORD
2011 MAY -5 PM 3:46

**THIS CAUSE** having come on to be heard on ___May 3, 2011___
on Plaintiff's/Defendant's Motion

___Courts Motion for Non-jury Trial___

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

**ORDERED AND ADJUDGED** that said Motion be, and the same is hereby

_The case is finally dismissed without prejudice._

**DONE AND ORDERED** in Chambers at Miami-Dade County, Florida this___

day of ___May___                    ___2011___

                    **CIRCUIT COURT JUDGE**

                    Eugene J. Fierro
                    Circuit Judge

Copies furnished to: Counsel of Record

117-01-354    5/11

**EXHIBIT**
**C**

6076925

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

GENERAL JURISDICTION DIVISION

CASE NO. 08-4519 CA 15

Plaintiff,

vs

ELIZABETH HAZAN, et. al,

Defendants.

_____/

### AMENDMENT TO STIPULATION AGREEMENT

Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation, (hereinafter the "ASSOCIATION"), by and through its undersigned counsel, and Defendant ELIZABETH HAZAN ("OWNER") hereby amend the Stipulation Agreement dated May 6, 2010 as follows:

### RECITALS

A. The ASSOCIATION and OWNER entered into that certain Stipulation Agreement dated May 6, 2010 and attached hereto as Exhibit "1" ("Stipulation Agreement"). Unless expressly amended herein, the Stipulation Agreement remains in full force and effect and its terms and conditions are incorporated herein.

B. Pursuant to Paragraph 2 of the Stipulation Agreement, OWNER has the option of prepaying, without penalty, the amount due to the ASSOCIATION.

NOW THEREFORE, in consideration of the mutual promises exchanged herein and other valuable consideration, the receipt and sufficiency of the same being hereby acknowledged, it is hereby agreed that:

1. **Recitals.** The above recitals are true and correct and are incorporated herein.

Espinosa, Rivera, Lerman, De La Torre & Sobel, P.A., Attorneys At Law
201 Alhambra Circle, Suite 803, Coral Gables, Florida 33134 • Phone (305) 442-3334 • Fax (305) 443-3302


EXHIBIT
D

AMENDMENT TO STIPULATION AGREEMENT
CASE N███████████ 15

2. **Early Payment Discount.**

   a. The parties agree that so long as OWNER does not breach the Stipulation Agreement, the amount due and owing by OWNER to the ASSOCIATION will be $39,142.22 as of January 1, 2012.

   b. The parties agree that OWNER shall be entitled to a $10,000.00 discount in the total amount owed so long as the following conditions precedent are satisfied:

      I. OWNER does not breach the Stipulation Agreement; and

      II. Payment of the balance due to the ASSOCIATION pursuant to the Stipulation Agreement is paid to the ASSOCIATION on or before January 1, 2012

   c. Accordingly, and as long as the conditions precedent are satisfied, OWNER'S final payment under the Stipulation Agreement, as amended herein, will be for the total amount of $29,142.22.

   d. Should OWNER not pay $29,142.22 by January 1, 2012, then the Stipulation Agreement shall continue in full force and effect.

3. **July 1, 2011 Monthly Payment, 3rd Quarter 2011 Assessment and August 1, 2011 Monthly Payment.**

   a. The parties agree that the due date for the following payments: (i) $2,610.00 (due July 1, 2011 per Stipulation Agreement); (ii) quarterly assessment of $5,722.50 (Due July 1, 2011 – 3rd Quarter 2011 assessment); and (iii) payment of $2,610.00 (due August 1, 2011 per Stipulation Agreement) shall be extended to August 10, 2011 and payment must be made via wire transfer to the ASSOCIATION.

   b. OWNER must continue to make all other payments in the Stipulation

SHOFNER, RIVERA, LEGLER, DE LA TORRE & SONIS, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 905, CORAL GABLES, FLORIDA 33134 • PHONE (305) 443-3334 • FAX (305) 443-3292

AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-5918 CA 15

Agreement on the dates specified in the Stipulation Agreement.  No
other extensions will be permitted under the Stipulation Agreement
unless agreed to in writing and executed by all parties.

4.      All of the other terms, covenants, conditions and provisions of the Stipulation
Agreement specifically including payment due dates, except as are herein specifically
amended, shall remain in full force and effect and are hereby adopted and reaffirmed by the
parties hereto.

5.      This Amendment to the Stipulation Agreement is not enforceable unless
executed by all parties.  A facsimile copy shall be considered an original for purposes of
enforcement of this Amendment.

DATED this 30 day of June, 2011.

SIEGFRIED, RIVERA, LERNER
DE LA TORRE, & SOBEL, P.A.
Attorneys for Plaintiff
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
(305) 442-3334
(305) 443-3292

By: _____
NICHOLAS D. SIEGFRIED, ESQ.
Florida Bar No. 27020

FISHER      ISLAND      COMMUNITY
ASSOCIATION, INC.

By: _____
Print Name: _____
Title: _____

SIMON & SIGALOS, LLP.
Attorney for Elizabeth Hazan
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, Florida 33431
(561) 447-0017
(561) 447-0018

By: _____
MICHAEL W. SIMON, ESQ.
Florida Bar No. 776894

By: _____
Elizabeth      Hazan,      Defendant

H:\LIBRARY\WOA\FISHISLAND\AMENDMENTSTIP.0749.DOC

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 • PHONE (305) 442-3334 • FAX (305) 443-3292

30/12/11

6075925

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

CASE NO. 06-4519 CA 15

Plaintiff,

vs.

ELIZABETH HAZAN, et. al,

Defendants.

_____/

## SECOND AMENDMENT TO STIPULATION AGREEMENT

Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida
corporation, (hereinafter the "ASSOCIATION"), by and through its undersigned counsel, and
Defendant ELIZABETH HAZAN ("OWNER") hereby amend the Stipulation Agreement dated
May 6, 2010 and the Amendment to Stipulation Agreement dated June 30, 2011 as follows:

### RECITALS

A.     The ASSOCIATION and OWNER entered into that certain Stipulation
Agreement dated May 6, 2010 and attached hereto as Exhibit "1"("Stipulation Agreement")
Unless expressly amended herein, the Stipulation Agreement remains in full force and
effect and its terms and conditions are incorporated herein.

B.     The ASSOCIATION and OWNER entered into that certain Amendment to
Stipulation Agreement dated June 30, 2011 and attached hereto as Exhibit "2"("Amended
Stipulation Agreement").

C.     The ASSOCIATION and OWNER have agreed to modify the payment schedule
for the remaining balance due to the Association.



SHUBFIELD, RIVERA, ...A, ATTORNEYS AT LAW
701 ALHAMBRA CIRCLE, SUITE 803, ...NE (305) 442-3334 & FAX (305) 443-3292

**EXHIBIT E**

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-4949 CA 15

D.    As a result of the modification to the payment schedule, the terms and
conditions of the Amended Stipulation Agreement are no longer applicable and are completely
replaced by this Second Amendment to the Stipulation Agreement.

NOW THEREFORE, in consideration of the mutual premises exchanged herein and
other valuable consideration, the receipt and sufficiency of the same being hereby
acknowledged, it is hereby agreed that:

1.    Recitals. The above recitals are true and correct and are incorporated herein.

2.    The parties have agreed to amend paragraph 2 of the Stipulation Agreement
in its entirety as follows:

a.    Payment Schedule for Assessments Due Through the Second
Quarter of 2011:

i.    The parties agree that as of the Second Quarter of 2011, the
balance due to the ASSOCIATION is $53,633.02[1] which shall
be paid as follows:

*January 1, 2012* ✏ *E.H*

1.    Commencing December 1, 2011, OWNER shall make
*25* payments of $2,110 and a final payment in the
amount of $8,464.62 in accordance with the schedule
attached hereto as Exhibit "3" on the dates specified
therein.

b.    Payment Schedule for Third Quarter and Fourth Quarter of 2011
Assessments:

1.    The Third Quarter and Fourth Quarter of 2011
Assessment in the total amount of $11,445.00 shall be

---

[1] This amount represents the current amount due to ASSOCIATION of $49,357.99 for assessments, late
fees and leases charges as of the Second Quarter of 2011 and the amount of $4,175.19 for attorney's
fees and costs as of the Second Quarter of 2011.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 ● PHONE (305) 442-3334 ● FAX (305) 443-3292

View Document - Miami-Dade County OCS

1/5/26, 1:08

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-4619 CA 15

paid on or before December 27, 2011.

c. **Early Payment on or before January 1, 2012.**

    i. The parties agree that so long as OWNER does not breach this Second Amendment to Stipulation Agreement, the amount due and owing by OWNER to the ASSOCIATION will be $51,423.02 as of January 1, 2012.

    ii. The parties agree that OWNER shall be entitled to a $10,000.00 discount in the total amount owed so long as the following conditions precedent are satisfied:

        1. OWNER does not breach the Stipulation Agreement or this Second Amendment to Stipulation Agreement; and

        2. Payment of the balance due to the ASSOCIATION as of December 31, 2011, pursuant to this Second Amendment to Stipulation Agreement, is paid to the ASSOCIATION on or before December 31, 2011.

    iii. Accordingly, and as long as the conditions precedent are satisfied, OWNER'S final payment under the Stipulation Agreement, as amended by this Second Amendment to Stipulation Agreement, will be for the total amount of $41,423.02.

    iv. Should OWNER not pay $41,423.02 by January 1, 2012, then the Stipulation Agreement and Second Amendment to Stipulation Agreement shall continue in full force and effect.

d. **Early Payment After January 1, 2012.** At any time within the term of this Second Amendment to Stipulation Agreement, in the event of a

Brennan, Rocha, Lerner, De La Torre & Bossi, P.A. Attorneys At Law
281 Alhambra Circle, Suite 503, Coral Gables, Florida 23134 • Phone (305) 443-3334 • Fax (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 98-4810 CA 16

sale of the property or a foreclosure by any lender on the property or
ASSOCIATION'S breach of this Stipulation or OWNER'S breach or at
OWNER'S election, OWNER may prepay, without penalty, the balance
due in the amount of $53,533.02, less any payments already made,
plus any additional assessments assessed but not yet paid together
with any finance charges or late fees incurred on the unpaid assessed
assessments at the time of default by OWNER, as well as any
reasonable attorney's fees and costs incurred by the ASSOCIATION
as a result of OWNER'S breach, if applicable, and this action shall be
dismissed and the lien shall be satisfied of record by the
ASSOCIATION. In the event of OWNER'S Breach and failure to pay
ASSOCIATION, the ASSOCIATION shall only be entitled to judgment
for this amount.

e. THE PAYMENTS SET FORTH IN THIS PARAGRAPH ARE TO BE
MADE WHEN DUE. TIME IS OF THE ESSENCE.

f. NOTICES:   Except as to the Failure Notice identified in paragraph 5
below, all notices, requests, or instructions hereunder shall be in
writing and delivered personally, sent by facsimile transmission,
overnight or certified mail, postage pre-paid as follows:

    i. If to the OWNER, notice to the Property address with a copy to:

       c/o Michael W. Simon, Esquire
       Simon, Sigalos & Spyredes, P.A.
       3839 NW Boca Raton Blvd., Suite 100
       Boca Raton, Florida 33431
       Phone number: (561) 447-0017
       Facsimile number (561) 447-0018

    ii. If to the Association

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 ● PHONE (305) 442-3334 ● FAX (305) 443-3292

View Document - Miami-Dade County OCS

1/5/26, 1:08

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO 09-4245 CA 15

NICHOLAS D. SIEGFRIED, Esq.
201 Alhambra Cir. #1102
Coral Gables, FL 33134
Phone number: 305-442-0677
Facsimile number: 305-446-6727

3.      The parties have agreed to amend paragraph 3 of the Stipulation Agreement
in its entirety as follows:

   a   It is further understood that Exhibit "3" only includes the amount due to
       the Association through the Second Quarter of 2011.

4.      The parties have agreed to amend paragraph 4 of the Stipulation Agreement
in its entirety as follows:

   a   Future Assessments. By accepting the terms of this Second
       Amended Stipulation, including the Payment Schedule attached
       hereto, OWNER acknowledges that she remains liable for all future
       regular assessment payments for the Property commencing January
       1, 2012 as well as any special assessments coming due on the
       Property after execution of this Second Amended Stipulation on the
       timeframe specified by the ASSOCIATION pursuant to its governing
       documents. OWNER acknowledges that the ASSOCIATION has not
       waived OWNER'S obligation to timely pay any future assessments not
       accounted for in this Second Amended Stipulation.

5       The parties have agreed to amend paragraph 7 of the Stipulation Agreement
in its entirety as follows:

   a.  IF OWNER SHOULD FAIL TO COMPLY WITH THE PAYMENT
       SCHEDULE SET FORTH IN PARAGRAPH 2 OF THIS SECOND
       AMENDMENT TO STIPULATION AGREEMENT OR SHOULD FAIL

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 1102, CORAL GABLES, FLORIDA 33134 ● PHONE (305) 442-3334 ● FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-4618 CA 19

TO TIMELY PAY ALL FUTURE ASSESSMENTS AS SET FORTH IN PARAGRAPH 4 OF THIS SECOND AMENDMENT TO STIPULATION AGREEMENT, the ASSOCIATION or the ASSOCIATION'S counsel shall notify OWNER that such payment has not been received, in writing ("Failure Notice"). Notice to the OWNER under this paragraph shall be made by e-mail transmission to OWNER'S counsel, Michael W Simon, Esq., at msimon@3slaw.com and to OWNER at elizabethhazan1@aol.com. Upon the transmission of the Failure Notice under this paragraph, OWNER shall have ten (10) days from the date of such Failure Notice to cure the default. The Association shall only be obligated to transmit a Failure Notice two (2) times under this Second Amendment to Stipulation Agreement. In the event that OWNER fails to pay the amounts within the 10 day notice to cure, the ASSOCIATION shall immediately schedule a hearing in order to proceed to Final Judgment as to its Complaint, and for interest, late fees, if applicable, attorney's fees and costs (which will include additional attorney's fees and costs incurred due to OWNER breach of the Stipulation Agreement), by application to the Court with notice and hearing, upon a sworn Affidavit stating the balance due to the Association. At the time of Final Judgment, the ASSOCIATION shall be entitled to the balance due in the amount of $53,533.02, less any payments already made, plus any additional assessments assessed but not yet paid together with any finance charges or late fees incurred on the unpaid assessed assessments at the time of default by OWNER, as well as any reasonable attorney's fees and costs incurred

SHEPARD, SMIBS, LAWYER, DE LA TORRE & SOBS, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 • PHONE (305) 443-3334 & FAX (305)443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 98-4918 CA 16

by the ASSOCIATION as a result of OWNER'S breach, if applicable OWNER reserves her rights to defend the election of remedies pursued by ASSOCIATION at the time of the ASSOCIATION'S application with the court on its Complaint. OWNER further agrees that should a default occur, any payments made will be applied first to assessments, then to any interest accrued, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment. Should OWNER'S mortgage lender foreclose on the property during the term of this Second Amendment to Stipulation Agreement, then, upon payment by the Lender, the ASSOCIATION shall credit OWNER with a minimum of the Lender's statutory obligation, if applicable, to pay assessments to offset any balance due to ASSOCIATION by OWNER. In the event of foreclosure by OWNER'S mortgage lender, OWNER shall be deemed in breach of this Second Amendment to Stipulation Agreement and ASSOCIATION may proceed with its rights as set forth in this Paragraph.

6.      No later than December 27, 2011, OWNER shall make payment to ASSOCIATION in the amount of $1,012.50 representing the amount of attorney's fees incurred by the ASSOCIATION in the preparation of this Second Amendment to Stipulation Agreement.

7.      All of the other terms, covenants, conditions and provisions of the Stipulation Agreement specifically including payment due dates, except as are herein specifically amended, shall remain in full force and effect and are hereby adopted and reaffirmed by the parties hereto.

SHOMANO, KINNRA, LEHRER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 ● PHONE (305) 442-3334 ● FAX (305) 443-9292

Case 1:26-cv-20060-LFL   Document 1   Entered on FLSD Docket 01/06/2026   Page 59 of 212
View Document – Miami-Dade County OCS

1/5/26, 1:08

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 08-4919 CA 15

8.      This Second Amendment to Stipulation Agreement is not enforceable unless executed by all parties.  A facsimile copy shall be considered an original for purposes of enforcement of this Second Amendment.

DATED this 30 day of November, 2011.

SIEGFRIED, RIVERA, LERNER
DE LA TORRE, & SOBEL, P.A
Attorneys for Plaintiff
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
(305) 442.3334
(305) 443.3292

By:
NICHOLAS D. SIEGFRIED, ESQ.
Florida Bar No. 27020

SIMON & SIGALOS , LLP
Attorneys for Elizabeth Hazan
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, Florida 33431
(561) 447.0017
(561) 447.0018

By:
MICHAEL W. SIMON, ESQ.
Florida Bar No. 776384

FISHER      ISLAND      COMMUNITY
ASSOCIATION, INC.

By:
Title:  CEO
Print Name:  GARY SNIDER

By:
Elizabeth      Hazan,      Defendant

Filing # 43782968 E-Filed 07/11/2016 03:23:27 PM

CFN 20160401821 BOOK 30147 PAGE 2115
DATE 07/12/2016 10:44:32 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**
**CASE NO.: 08-004519 CA 34**

FISHER ISLAND COMMUNITY ASSOCIATION.
INC., a non-profit Florida corporation.

    Plaintiff.

vs.

ELIZABETH HAZAN, et al.,

    Defendants

_____

## NOTICE OF FILING SUGGESTION OF BANKRUPTCY

    Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation, by and through undersigned counsel files this Suggestion of Bankruptcy wherein Defendant Elizabeth Hazan placed the Plaintiff on notice of her proceeding for relief under Chapter 11 of the United States Bankruptcy Code

## CERTIFICATE OF SERVICE

    WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by email to Mark D. Cohen, Esq., Counsel for Defendant Hazan, at mdcohenpa@yahoo.com, and to NLG, LLC c/o Christopher David, Esq. at CDavid@fuerstlaw.com on this 11th day of July, 2016.

                         Melissa O'Connor

                         _____
                         Melissa O'Connor, Esq
                         Melissa@peytonbolin.com
                         Foreclosure@peytonbolin.com
                         FBN: 44711
                         *Attorney for Plaintiff*

                         PeytonBolin, PL.
                         3343 West Commercial Boulevard
                         Fort Lauderdale, FL 33319
                         Telephone: (954) 316-1339
                         Facsimile: (954) 727-5776



EXHIBIT
F

Filing # 36522688 E-Filed 01/13/2016 02:57:09 PM

CFN 20160401821 BOOK 30147 PAGE 2116

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

CASE NO. : 2013 CA 025902

JP MORGAN CHASE BANK, NA,

    Plaintiff,

vs

ELIZABETH HAZAN,

    Defendant.

_____/

## SUGGESTION OF BANKRUPTCY

PLEASE TAKE NOTICE that on January 11, 2016, Defendant, ELIZABETH HAZAN a/k/a Liza Hazan (the "Debtor"), filed a proceeding for relief under Chapter 11 of the United States Bankruptcy Code, 11 USC § 101 *et. seq.* under Case Number 16-10389-AJC in the United States Bankruptcy Court for the Southern District of Florida.

Accordingly, pursuant to 11 USC § 362, all creditors, including but not limited to the Plaintiff, are stayed from, *inter alia*, the commencement or continuation of judicial, administrative or other actions or proceedings against the Debtor, the enforcement of judgments against the Debtor or property of the Debtor, any act to obtain possession of property of the estate or property from the estate, and any act to create, perfect or enforce any lien against property of the estate. Accordingly, this action is stayed against the Debtor.

Respectfully submitted,
**Aaronson Schantz Beiley P.A.**
/s/ Jeremy David Evans
Jeremy David Evans, Esq.
Florida Bar No. 105111
Geoffrey S. Aaronson, Esq.
Florida Bar No. 349623
Miami Tower
100 SE 2nd Street, 27th Floor
Miami, Florida 33131

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 | 786.594.3000 | Fax 305.424.9336

CFN 20180100031 BOOK 20145 PAGE 2117

Tel 786.594.3000
Fax 305.675.3880
gaaronson@aspalaw.com
jevans@aspalaw.com
jrodriguez@aspalaw.com
*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that all true and correct copy of the foregoing Suggestion of Bankruptcy has been filed with the Florida Courts E-Filing Portal on January 13, 2015 with a copy of same served by the E-Filing Portal and via E-mail upon:

**Barry Fishman, Esq.**
**Lee Andrew Watson, Esq.**
Shapiro & Fishman
2424 N Federal Hwy Ste 360
Boca Raton, FL 33431-7781
Office: 561-998-6700
bfishman@logs.com
lewatson@logs.com

**Megan Wells, Esq.**
Wells Law Firm, LLC
8100 Oak Ln Ste 403
Miami Lakes, FL 33016-5876
Office: 786-431-5016
mwells@wellscivilfirm.com

**Juan Ramirez, Jr. Esq.**
Diaz Reus & Targ LLP
100 SE 2nd St Ste 3400
Miami, FL 33131-2122
Office: 305-375-9220
jramirez@diazreus.com

**Gian Ratnapala, Esq.**
Peytonbolin, PL
3343 W Commercial Blvd Ste 100
Ft Lauderdale, FL 33309-3425
Office: 954-316-1339 x4002
gian@peytonbolin.com

**Nicole Moskowitz, Esq.**
Neustein Law Group
18305 Biscayne Blvd Ste 250
Aventura, FL 33160-2193
Office: 305-531-2545

2

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor | Miami, Florida 33131 - 786.594.3000 | Fax 305.424.9336

CFN 20240100931 BOOK 10945 PAGE 2118

nlglaw@yahoo.com

**Vanessa Jaleh Bravo, Esq.**
Arcia Law Firm, P.C.
3350 SW 148th Ave Ste 405
Miramar, FL 33027-3282
Office: 954-437-9066
service@arcialawfirm.com

**David B. Haber, Esq.**
**Jonathan S. Goldstein, Esq.**
Haber Slade, P.A
201 S Biscayne Blvd, Suite 1205
Miami, FL 33131-4317
Office: 305-379-2400
dhaber@dhaberlaw.com
jgoldstein@dhaberlaw.com

**Michael W. Simon, Esq.**
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd, Suite 100
Boca Raton, FL 33431-5857
Office: 561-447-0017
msimon@simonsigalos.com

**Ray Garcia, Esq.**
Law Office of Ray Garcia, P.A.
14850 SW 26th St Suite 204
Miami, FL 33185-5931
Office: 305-227-4030
rgarcia@raygarcialaw.com

**Robert Paul Lithman, Esq.**
Robert P Lithman PA
150 Alhambra Cir Fl 1150
Coral Gables, FL 33134-4505
Office: 305-858-0220
RPL@LithmanLaw.com

/s/ Jeremy David Evans
Jeremy David Evans, Esq

3

Aaronson Schantz Beiley P.A. | Miami Tower | 100 SE 2nd Street, 27th Floor , Miami, Florida 33131   786.594.3000 | Fax 305.424.9336

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN,                                        CASE NO.: 16-10389 AJC

       Debtor.                                        CHAPTER 11

_____/

### SECURED CREDITOR'S FISHER ISLAND COMMUNITY ASSOCIATION, INC.'S MOTION FOR RELIEF FROM STAY

COMES NOW, Secured Creditor Fisher Island Community Association, Inc., (herein "Fisher Island", by and through the undersigned counsel, files this Motion for Relief from Stay, and as grounds states as follows:

1. The Debtor filed for Bankruptcy Protection under Chapter 11 of the United States Bankruptcy Code on January 11, 2016.

2. The Debtor is the owner of, and resides at, a residence located at 6913 Valencia Drive, Fisher Island FL 33109.

3. The Property maintains a Legal Description as follows:

    Lot No. 7, Block No. 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, as recorded in Plat Book 157, at Page 64 of the Public Records of Miami-Dade County, Florida. A/K/A 6913 VALENCIA DRIVE FISHER ISLAND FLORIDA 33109.

4. The Debtor purchased the Property on March 7, 2007 from NLG, LLC.



**EXHIBIT**
**G**

Case 16-10389-AJC    Doc 258    Filed 10/20/16    Page 2 of 4

5. On January 29, 2008, Fisher Island filed a Complaint in Miami-Dade County Court to foreclose on the lien rights provided to it under Fla. Stat. 720.3085 pursuant to its Declaration of Covenants (Exhibit A).

6. After a lengthy legal fight, the Debtor and Fisher Island entered into a Stipulation Agreement (Exhibit B).

7. The Debtor ultimately breached the Second and Final Stipulation agreement by failing to remit the required payment on August 1, 2012 and the subsequent payments.

8. On December 6th, 2012 after a default under the Stipulation Agreement, Fisher Island filed a Motion for Final Judgment based upon the terms of the Stipulation Agreement.

9. As of June 20, 2016 the Debtor-in-Possession is delinquent in the amount of $247,755 in past assessments and interest, notwithstanding an approximately $30,000 obligation from Attorney's Fees necessary in attempting to collect on the delinquent assessments.

10. Pursuant to Fla. Stat. 720.3085 and the Declaration of Covenants for Fisher Island, the Property at issue and all potential subsequent purchasers of the property jointly and severally liable for the delinquent assessments.

11. The Debtor has failed to remain current on the assessments owed to Fisher Island Post-Petition, as demonstrated by the Debtor's own Monthly Operating Reports showing Account Payable for two Quarterly assessments in the amount of $6,545.48 per assessment for a total post-petition obligation due of $13,090.96.

12. The Debtor's Plan as it is filed, indicates no payments to Fisher Island for the pre-petition arrearage nor the post-petition payments which the Debtor is already substantially delinquent.

13. Even if the amount of the pre-petition arrearage is in dispute, the debtor's agreement in the second Stipulation agreement places the balance due the association at $53,533.02 as June 2011.

14. While the Debtor may not agree with specific amounts owed, it is agreed that some amount is currently due and owing as a pre-petition arrearage, and it is undisputed that the post-petition assessments are due and owing as well.

15. In addition the post-petition assessments are rendered non-dischargeable pursuant to 11 U.S.C. 523 (a)(16) which states:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case:

16. Due solely to the post-petition delinquency and the Debtor's intent to not pay those dues through the Chapter 11 plan, Fisher Island should be permitted to take the actions allowable under the laws of Florida to pursue its collection of, at a minimum, the non-dischargeable post-petition assessments if the Debtor refuses to become current on those obligations.

17. The Debtor has taken no action to remove Fisher Island's Lien on the property, and could not do so as it is argued by the Debtor that the property retains equity even above the Mortgages and Association Liens held on the property by various parties.

18. Fisher Island has been prejudiced by the lack of post-petition payments, and the treatment as outlined in the Debtor's First Amended Plan fails to rectify that prejudice in any form.

Case 16-10389-AJC    Doc 258    Filed 10/20/16    Page 4 of 4

19. It would be a substantial burden to require Fisher Island to continue to provide the Debtor

with the benefits provided by Fisher Island without commensurate compensation

provided to Fisher Island.

WHEREFORE, the Secured Creditor, Fisher Island Community Association, Inc., prays

this Honorable Court grant the foregoing Motion for Relief from Stay, Permit Fisher Island to

pursue all State Court remedies available to it, including but not limited to filing a new Lien and

all necessary conditions precedent, and for any and all further relief the Court deems just and

proper.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
510 Lavers Cir # 161
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by electronic service via the

CM/ECF this 20th Day of October 2016 to all parties who have made an appearance on this

case including but not limited to the Debtor by mail to all parties on the Courts Mailing Matrix.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
510 Lavers Cir # 161
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

1986 SEP -5 AM 11:54    86R302265

REC 13008PG2052

**MASTER COVENANTS**
**FOR**
**FISHER ISLAND**

THIS DECLARATION OF MASTER COVENANTS is made this _5th_ day of _AUGUST_ , 19__, by ISLAND DEVELOPERS, LTD., a Florida limited partnership, which declares hereby that "The Properties" as described in Article II hereof are and shall be held, transferred, sold, conveyed and occupied subject to the covenants, restrictions, easements, charges and liens hereinafter set forth.

### ARTICLE I

### DEFINITIONS

The following words when used in this Declaration (unless the context shall prohibit) shall have the following meanings:

(a)    "Architectural Control Committee" or "Committee" shall mean and refer to the committee of the Community Association responsible for performing the architectural review and approval functions set forth in Article VIII of this Declaration.

(b)    "Assessments" shall mean and refer to the various forms of payment to the Association which are required to be made by Owners, as more particularly defined in Article VI, Section 1 of this Declaration.

(c)    "Association" or "Community Association" shall mean and refer to FISHER ISLAND COMMUNITY ASSOCIATION, INC., a Florida corporation not for profit, which is (or is to be) incorporated.

(d)    "Board" or "Board of Directors" shall mean and refer to the duly constituted Board of Directors of the Association.

(e)    "Common Areas" shall mean and refer to the land within Fisher Island which is not (i) a Lot, (ii) common elements of a condominium, (iii) common areas of a Neighborhood Association, (iv) dedicated to the public or (v) dedicated to or owned by a governmental or quasi-governmental body or public or private utility (including cable television) company, except as provided below. As used herein, "Common Areas" shall also include, for purposes of maintenance, operation, administration and regulation by the Community Association (i) all improvements to the aforesaid land including, without limitation, private roadways and signage located thereon or adjacent thereto, entry features, swales and berms, structures, street lights (as provided herein), pedestrian paths and irrigation systems, (ii) the perimeter seawall for Fisher Island and supporting rock structures, (iii) ponds and other water bodies, (iv) special grading, landscaping, signage or improvements of common benefit to Fisher Island abutting but not located within the land constituting the Common Areas, (v) mangroves, beaches (even though subject to a right of public access as a requirement of law or otherwise), and park sites (even if owned or controlled by a governmental or quasi-governmental entity), and (vi) Common Areas declared as such is toto or for limited purposes in a Supplemental Declaration. It is intended that the main roadway and abutting landscaped areas

129

REC. 13008 PG 2053

within Fisher Island, all street lighting illuminating such roadway and irrigation systems (wherever located) shall be a part of the Common Areas, but that the roadways and abutting land between the roadways and the adjoining Lots within each area administered by a Neighborhood Association be a common area of that Association, subject to other applicable provisions hereof. In no event shall public or private utility installations or systems (other than street lights and irrigation systems) located within the Common Area be deemed a part thereof unless same are owned by the Community Association.

(f) "Declarant" shall mean and refer to ISLAND DEVELOPERS, LTD., a Florida limited partnership, its successors and such of its assigns as to which the rights of Declarant hereunder are specifically assigned. Declarant may assign all or a portion of its rights hereunder, or all or a portion of such rights in connection with appropriate portions of the Development. In the event of such a partial assignment, the assignee shall not be deemed the Declarant, but may exercise such rights of Declarant specifically assigned to it. Any such assignment may be made on a non-exclusive basis.

(g) "Club" shall mean and refer to the entity operating the club located or to be located within Fisher Island and its successors and assigns and, where the context so requires, the portion of Fisher Island owned and/or operated by the Club.

(h) "Hotel" shall mean and refer to any hotel or similar structure located within the Properties and, where the context so requires, the Owner of such hotel (or the operator thereof if authorized to act on behalf of the owner); provided, that in the event that a hotel is submitted to the condominium form of ownership, the association for such condominium shall be deemed the Owner thereof for purposes of acting on behalf of the owners of units therein. If only a portion of a hotel is submitted to the condominium form of ownership, then same shall be deemed a separate Hotel for purposes hereof.

(i) "Lot" shall mean and refer to an individual parcel of land within Fisher Island which is shown as an individual lot on the various site plans (or similar plans) adopted by the Declarant from time to time and, after the conveyance thereof by Declarant to an Owner other than the Declarant or the Club, the lot legally described in the deed of such conveyance. In the case of a condominium made subject to this Declaration, the "Lots" therein shall be the individual condominium units thereof and not the parcel(s) of real property on which the condominium is constructed.

(j) "Member" shall mean and refer to all those Owners and others who are Members of the Community Association as hereinafter provided (including, without limitation, the Declarant and the Club).

(k) "Member's Permittees" shall mean and refer to those persons described in Article IX of this Declaration to whom certain privileges hereunder are afforded.

(l) "Neighborhood Association" shall mean any association created or to be created to administer specific portions of Fisher Island and common areas or elements lying within such portions pursuant to a declaration of condominium or declaration of covenants and restrictions affecting such portions.

- 2 -

OFF.
REC. 13008142054

(m)   "Owner" shall mean and refer to the record owner, whether one or more persons or entities, of the fee simple title to any Lot situated upon The Properties.

(n)   "The Properties" and "Fisher Island" shall mean and refer to all properties described in Exhibit "A" attached hereto and made a part hereof, and all additions thereto, now or hereafter made subject to this Declaration, except such as are withdrawn from the provisions hereof in accordance with the procedures set forth in this Declaration.

(o)   "Supplemental Declaration" shall mean and refer to an instrument executed by the Declarant (or the Community Association, if permitted by Article II, Section 4 hereof) and recorded in the Public Records for the purpose of adding to The Properties, withdrawing any portion(s) thereof from the effect of this Declaration, designating a portion of The Properties as a Common Area hereunder or a common area of a Neighborhood Association or for such other purposes as are provided in this Declaration.

(p)   "Transportation System" shall mean and refer to the transportation system described in Article XI hereof.

(q)   "Unit" shall mean and refer to any dwelling unit constructed on a Lot or any condominium dwelling unit in any condominium building that may be erected on any parcel of land within The Properties, which land is designated by Declarant by recorded instrument to be subject to this Declaration (and to the extent Declarant is not the Owner thereof, then by Declarant joined by the Owner thereof).

All references in this instrument to recording data refer to the Public Records of Dade County, Florida.

ARTICLE II

PROPERTY SUBJECT TO THIS DECLARATION;
SUPPLEMENTAL DECLARATIONS

Section 1.   Legal Description.   The initial real property which is and shall be held, transferred, sold, conveyed and occupied subject to this Declaration is located in Dade County, Florida, and is more particularly described in Exhibit A attached hereto and shall initially constitute The Properties.

Section 2.   Supplements.   Declarant may from time to time bring other land in and outside Fisher Island (including, without limitation, all or portions of the Club or Transportation System as provided in Article V and Article XI hereof, respectively) under the provisions of this Declaration by Supplemental Declaration (which shall not require the consent of then existing Owners or the Community Association) and thereby add to The Properties.   It is the present intention of the Declarant that all real property within the general Fisher Island development owned by Declarant or its affiliates shall eventually be made a part of The Properties.   Nothing in this Declaration shall, however, obligate Declarant to add to the initial portion of The Properties or to develop currently underdeveloped portions of the overall island not subject hereto under a common scheme, nor to prohibit Declarant from rezoning and changing the development plans with respect to such future portions.   All Owners, by acceptance of a deed to or other conveyance of their Lots, thereby automatically consent to any such rezoning, change, addition or deletion

- 3 -

OFF.
REC. 13008 2055

thereafter made by the Declarant and shall evidence such consent in writing if requested to do so by the Declarant at any time (provided, however, that the refusal to give such written consent shall not obviate the general effect of this provision). With respect to property not owned by the Declarant and its affiliates, the Declarant shall have the right to impose (and retain for its own account) fees for the privilege of allowing such other property to be made subject to this Declaration as aforesaid.

Section 3.  Withdrawal.  Declarant reserves the right to amend this Declaration unilaterally at any time, without prior notice and without the consent of any person or entity, for the purpose of removing certain portions of The Properties then owned by the Declarant or its affiliates or the Association from the provisions of this Declaration to the extent included originally in error or as a result of any changes whatsoever in the plans for Fisher Island desired to be effected by the Declarant; provided, however, that such withdrawal is not unequivocably contrary to the overall, uniform scheme of development for Fisher Island.

Section 4.  Common Areas.  In the event of any doubt, conflict or dispute as to whether any portion of Fisher Island is or is not a Common Area under this Declaration or a common area of a Neighborhood Association, the Declarant may, without the consent of the Community Association or then existing Owners, record in the Public Records a Supplemental Declaration resolving such issue and such Supplemental Declaration shall be dispositive and binding.  After the Declarant no longer owns any portion of Fisher Island, the Community Association may, without the consent of then existing Owners, record the aforesaid Supplemental Declaration, which shall have the same dispositive and binding effect.  Notwithstanding the foregoing, no Supplemental Declaration may change the common elements of a condominium.

### ARTICLE III

### MEMBERSHIP AND VOTING RIGHTS IN THE ASSOCIATION

Section 1.  Membership.  Every person or entity who is an Owner shall be a Member of the Community Association.  Notwithstanding the foregoing, any such person or entity who merely holds record ownership as security for the performance of an obligation shall not be a Member of the Community Association.

Section 2.  Voting Rights.  The Community Association shall have such classes of Voting Members, who shall cast such votes, as are provided in the Articles of Incorporation of the Association.

Section 3.  General Matters.  When reference is made in this Declaration, or in the Articles, By-Laws, Rules and Regulations, management contracts or otherwise, to a majority or specific percentage of Members, such reference shall be deemed to be reference to a majority or specific percentage of the votes of the respective Voting Members present at a duly constituted meeting thereof (i.e., one for which proper notice has been given and at which a quorum exists) and not of the Members or Voting Members themselves or their Lots.

- 4 -

REC. 13008PG2056

## ARTICLE IV

### COMMON AREAS AND CERTAIN EASEMENTS

Section 1.  Ownership.  The Common Areas are hereby dedicated to the joint and several use, in common, of the Declarant, the Club (as hereinafter provided) and the Owners of all Lots that may from time to time constitute part of The Properties, in the manner specified in this Declaration, and all of the Declarant's, the Club's and such Owners' respective lessees, guests and invites, all as provided and regulated herein or otherwise by the Community Association (subject to applicable exemptions therefrom in favor of Declarant and the Club).  When all improvements proposed by Declarant to be constructed within The Properties have been completed and conveyed to the Owners, or sooner at Declarant's option exercisable from time to time as to any portion or all of the Common Areas, the Declarant, or its applicable assign, shall convey and transfer (or cause to be conveyed and transferred) the record fee simple title to the Common Areas (except those areas lying within dedicated areas or not capable of being legally described or those which are made Common Areas for maintenance or other limited purposes) to the Community Association, and the Community Association shall accept such conveyance, holding title for the Owners and Members and the Club as stated in the preceding sentence.  Beginning upon the date these covenants are recorded, the Community Association shall be responsible for the maintenance of all Common Areas (whether or not conveyed or to be conveyed to the Community Association) in a continuous and satisfactory manner without cost to the general taxpayers of Dade County.  It is intended that all real estate taxes assessed against that portion of the Common Areas owned or to be owned by the Community Association shall be (or have been, based upon the purchase prices of the Lots and Units already having taken into account their proportionate shares of values of the Common Areas) proportionally assessed against and payable as part of the taxes of the Lots within The Properties.  However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Areas, the Community Association shall be responsible for the payment (subject to protest or appeal before or after payment) of the same, including taxes on any improvements and any personal property thereon accruing from and after the date these covenants are recorded, and such taxes shall be prorated between Declarant (or the then Declarant-affiliated Owner thereof) and the Community Association as of the date of such recordation.

Declarant and its affiliates shall have the right from time to time to enter upon the Common Areas and other portions of The Properties (including, without limitation, Lots and Units) for the purpose of the installation, construction, reconstruction, repair, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Areas or elsewhere in The Properties that Declarant and its affiliates, as appropriate, elect to effect, and Declarant and its affiliates shall have the right to use the Common Areas for sales, displays and signs during the period of construction and sale of any of the land owned by Declarant and its affiliates within Fisher Island.  All of the foregoing shall apply notwithstanding the fact that the Community Association holds title to the applicable Common Areas as of any relevant time.

Section 2.  Easements.  Each Member of the Community Association, and each Member's Permittee, shall have a permanent and perpetual non-exclusive easement for the use and enjoyment of all Common Areas in common with all other such Members and Member's Permittees, their tenants, agents and invites.

- 5 -

View Document - Miami-Dade County OCS

RE: 13008PG2057

All rights of use and enjoyment are subject to the following:

(a)     Such easements as may exist over and upon the Common Areas in favor of all Neighborhood Associations and their members, provided, however, that this subsection shall not in itself be deemed to grant any easements or use rights which are not specifically granted elsewhere herein or in any other documents to which The Properties are now or hereafter made subject.

(b)     The right and duty of the Community Association to levy assessments against each Lot for the purpose of maintaining the Common Areas and facilities in compliance with the provisions of this Declaration and with the restrictions on the plats of portions of The Properties from time to time recorded.

(c)     The right of the Community Association to suspend the right of an Owner (or Member) and his designees to use the Common Areas (except for legal access) and common facilities for any period during which any applicable assessment remains unpaid; and for a period not to exceed sixty (60) days for any infraction of lawfully adopted and published rules and regulations.

(d)     The right of the Community Association to charge reasonable admission and other fees for the use of any recreational facility situated on the Common Areas, provided that such right is now or hereafter granted to or adopted by the Community Association.

(e)     The right of the Community Association to adopt at any time and from time to time and enforce rules and regulations governing the use of the Common Areas and all facilities at any time situated thereon, including the right to fine Members as elsewhere provided herein. Any rule and/or regulation so adopted by the Community Association shall apply until rescinded or modified as if originally set forth at length in Schedule A to this Declaration.

(f)     The right of the Community Association, by a majority vote of the entire membership, through their Voting Members, to dedicate or convey portions of the Common Areas to a Neighborhood Association or a public or quasi-public agency, community development district or similar entity under such terms as the Community Association deems appropriate and, by majority vote of the Board of Directors of the Community Association, to contract with Dade County, community development and special taxing districts or the Club for lighting, roads, irrigation, the Transportation System, recreational or other services deemed appropriate by the Community Association (to which such creation or contract all Owners hereby consent).

(g)     Easements in favor of the Community Association, over and upon the Common Areas as is reasonably necessary for the Community Association to perform any maintenance or other obligations imposed by this Declaration.

(h)     The right of the owner of the Transportation System to provide service over the Common Areas and enter upon the Common Areas as is reasonably necessary for the operation, repair and maintenance of the Transportation System.

- 6 -

REC. 13006r2058

(i)  Anything to the contrary in this Declaration notwithstanding, the Declarant shall have the right to permit persons other than Members to use certain portions of the Common Areas and any recreational facilities that may be constructed thereon under such terms as Declarant, its successors and assigns, may from time to time desire without interference from the Community Association.

(j)  The right of the Declarant and the Association to have, grant and use general ("blanket") and specific easements over, under and through the Common Areas.

(k)  The rights of the Club as elsewhere provided in this Declaration.

Section 3.  Easements Appurtenant.  The easements provided in Section 2 shall be appurtenant to and shall pass with the title to each Lot.

Section 4.  Maintenance.  The Community Association shall at all times maintain in good repair, operate, manage and insure, and shall replace as often as necessary, the Common Areas, any and all improvements situated on the Common Areas (upon completion of construction by Declarant or its affiliates, if applicable), including, but not limited to, all recreational facilities, seawall and supporting rock structures, park sites (even if owned by a governmental or quasi-governmental body), mangroves, beaches (even if subject to public access) landscaping, paving, drainage structures, transportation systems and facilities, private roads, street lighting fixtures and appurtenances (to the extent provided below), sidewalks, swimming pools and structures, except public utilities (to the extent same have not been made Common Areas), all such work to be done as ordered by the Board of Directors of the Community Association.  Maintenance of sprinkler and irrigation systems within Fisher Island shall be performed by the Community Association, regardless of whether such systems are located within the Common Areas, and such maintenance shall include and extend to payment for all utilities utilized in connection therewith.  Without limiting the generality of this Section, the Community Association shall assume all of Declarant's, its affiliates' (and its and their predecessors') responsibility to Dade County and all other applicable governmental authorities of any kind with respect to the Common Areas and shall indemnify Declarant and its affiliates and hold Declarant and its affiliates harmless with respect thereto.  The foregoing assumptions and indemnification provisions shall apply to the Transportation System in the event that same (or any duties or obligations with respect thereto) are transferred to the Community Association.

All work pursuant to this Section and all expenses hereunder or otherwise allocated to the Community Association shall be paid for by the Community Association through assessments imposed in accordance herewith.  The Community Association, on behalf of itself and/or all or appropriate Neighborhood Associations, shall have the power to incur, by way of contract or otherwise, expenses general to all or applicable portions of Fisher Island, or appropriate portions thereof, and the Community Association shall then have the power to allocate portions of such expenses among the Community Association and/or the Neighborhood Associations, based on such formula as may be adopted by the Community Association or as otherwise provided in this Declaration.  The portion so allocated to the Community Association or any Neighborhood Association shall be deemed a general expense thereof, collectible through its own assessments.  No Owner may waive or otherwise escape liability for the assessments for such maintenance by non-use (either voluntary or involuntary) of the Common Areas or abandonment of his right to use the Common Areas.

- 7 -

REC: 13008PG2059

Section 5.  **Street Lights.**  The Community Association shall be responsible for the operation, maintenance, repair and replacement of all street lighting fixtures, installations and equipment serving the Common Areas (solely or primarily), even if same are located within the common areas/elements owned or administered by a Neighborhood Association (and said fixtures, installations and equipment shall be deemed Common Areas for the aforesaid purposes).  In the event of doubt as to whether any particular street lighting serves the Common Areas solely or primarily, the decision of the Board of Directors in such regard shall be final and conclusive.  Notwithstanding the foregoing, in the event that a Neighborhood Association requests the Community Associations to maintain, repair or replace any street lighting fixtures, installations or equipment which would not otherwise fall under the Community Association's responsibilities, then the Community Association may do so as long as all costs and expenses thereof are paid by the requesting Neighborhood Association.  Charges for electricity used by street lights shall be paid by the Community Association or Neighborhood Association, depending upon to which Association's account such electricity is metered (as originally established by Declarant or the applicable utility company).

Section 6.  **Golf Carts.**  Each Unit Owner shall be responsible for the upkeep, repair and appearance of any golf cart owned or operated by the Owner.  Each golf cart is to be white in color and maintained in its original condition, reasonable wear and tear excepted.  The Community Association shall have the right, but not the obligation, to perform such maintenance on any golf cart not kept to the standards expressed herein, in which event, a personal assessment shall be made against the Unit Owner for the costs and expenses thereof.

Section 7.  **Utility Easements.**  Public utilities installed in the Common Areas for the service of The Properties shall be installed underground.  The Declarant and its designees shall have a perpetual easement over, upon and under the Common Areas and the unimproved portions of the Lots for the installation, operation, maintenance, repair, replacement, alteration and extension of such utility and other systems as the Developer shall deem appropriate to have located within The Properties.

Section 8.  **Public Easements.**  Fire, police, health and sanitation and other public service personnel and vehicles shall have a permanent and perpetual easement for ingress and egress over and across the Common Areas in the performance of their respective duties.

Section 9.  **Hotel Easements.**  The Hotel shall have an easement over and upon the Common Areas for the use thereof by its guests and the Community Association shall not, by action, inaction or rule, do anything which unreasonably interferes with such uses.

## ARTICLE V

### THE CLUB, HOTEL AND COMMERCIAL PROPERTIES

Section 1.  **Conveyance of Club.**  All persons, including all Owners, are hereby advised that no representations or warranties have been or are made by the Declarant or any other person or entity with regard to the continuing ownership or operation of the Club as same presently exists, and no purported representation or warranty in such regard shall ever be effective without an amendment hereto executed or joined into by the Declarant.  Further, the ownership or operational duties of and as to the Club may change at any time and from time to time by virtue of, but without limitation, (i) the sale or assumption of operations of the Club by/to an independent person or entity, (ii) the conversion of the Club membership structure to an "equity" or similar arrangement whereby the members of the Club or an entity owned or

- 8 -

REC. 13008 PG 2060

controlled thereby become the owner(s) and/or operator(s) of the Club, (iii) the conveyance, pursuant to contract, option or otherwise, of the Club to one or more affiliates, shareholders, employees or independent contractors of Declarant or the Club or (iv) the conveyance of the Club to the Community Association, with or without consideration and subject or not subject to a mortgage(s) or other encumbrance. As to any of the foregoing or any other alternative, no consent of the Community Association, any Neighborhood Association or any Owner shall be required to effectuate same, even in the case of a conveyance of the Club to the Community Association, for or without consideration and subject to or not subject to any mortgage, covenant, lien or other encumbrance on the applicable land and other property.

Section 2. **Rights of Access.** The Club and its members (regardless of whether same are Owners hereunder), employees, agents, contractors and designers shall at all times have a right and non-exclusive easement of access and use over all roadways located in Fisher Island reasonably necessary to travel from/to the entrance of Fisher Island to/from the Club and, further, over those portions of Fisher Island (whether Common Areas or otherwise) reasonably necessary for the operation, maintenance, repair and replacement of the Club and its facilities.

Section 3. **Architectural Control.** Neither the Community Association, the Architectural Control Committee, nor any Neighborhood Association or similar committee or board thereof, shall approve or permit any construction, addition, alteration, change or installation on or to any portion of Fisher Island which is adjacent to, or otherwise in the direct line of sight from, the Club without giving the Club at least fifteen (15) days prior notice of its intent to approve or permit same together with copies of the request therefor and all other documents and information finally submitted in such regard. The Club shall then have fifteen (15) days in which to approve or disapprove the matter so submitted to it on such grounds as the Club may elect in its reasonable discretion (which may include, without limitation, purely aesthetic considerations). The failure of the Club to respond to the aforesaid notice within the fifteen (15) day period shall constitute a waiver of the Club's right to object to the matter so submitted. This Section shall also apply to any work on the Common Areas hereunder or any common areas/elements of a Neighborhood Association.

Section 4. **Limitations on Amendments.** In recognition of the fact that the provisions of this Article are for the benefit of the Club, no amendment to this Article, and no amendment in derogation hereof to any other provisions of this Declaration, may be made without the written approval thereof by the Club. The foregoing shall not apply, however, to amendments made by the Declarant. The foregoing shall also apply to any other provisions of this Declaration which are, in the sole discretion of the Club, for the benefit of the Club.

Section 5. **Hotel Rights.** The Declarant may (but shall not be obligated to) assign to the Hotel and/or any commercial property located within Fisher Island the same rights as exist under Section 3 and/or 4 of this Article. Such assignment, which shall be non-exclusive, shall be made by virtue of a Supplemental Declaration to such effect recorded in the Public Records.

**ARTICLE VI**

**COVENANT FOR MAINTENANCE ASSESSMENTS**

Section 1. **Creation of the Lien and Personal Obligation for Assessments.** As used herein, Assessments shall include:

(a) **General Assessments** - which shall be those assessments regularly levied against the Lots by the Association pursuant to a budget thereof.

- 9 -

RE: 13086#2061

    (b)   **Capital Improvement Assessments** - which shall mean those Assessments levied for the purposes described in, and subject to, Section 3 of this Article.

    (c)   **Special Assessments** - which shall mean Assessments levied for a specific purpose(s) which is of a non-recurring nature.

    (d)   **Personal Assessments** - which shall mean Assessments levied against one or more Lots but not all Lots, as provided in Section 11 of this Article and elsewhere in this Declaration.

    Except as provided elsewhere herein, the Declarant (and each party joining in this Declaration or in any supplemental declaration), for each Lot owned by it (or them) within The Properties, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree, to pay to the Community Association general assessments for the maintenance, operation, management and insurance of the Common Areas and the Community Association as provided herein, including such reasonable reserves as the Community Association may deem necessary, and capital improvement, special and personal assessments as also provided herein, all such assessments to be fixed, established and collected from time to time as hereinafter provided. All assessments, together with late charges, interest and costs of collection thereof as hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the property against which each such assessment is made. Each such assessment, together with late charges, interest and costs of collection thereof as hereinafter provided, shall also be the personal obligation of all Owner(s) of such property from time to time. All general, capital improvement and special assessments shall be imposed equally against all Lots within The Properties and those that may in the future be subject to liens of the Community Association.

    Section 2.  **Rate of Assessment.** Assessments shall be made at a uniform rate against applicable Assessment Units. For the purposes hereof, each residential Unit shall constitute one (1) Assessment Unit; each one (1) acre (or fraction thereof) of the Club, including any water area controlled thereby, shall constitute one (1) Assessment Unit; each one-thousand (1,000) enclosed square feet (or fraction thereof) of commercial or retail space constructed on a Lot shall constitute one (1) Assessment Unit and each separate guest room in a Hotel shall constitute one (1) Assessment Unit. Notwithstanding the foregoing, until such time as the commercial or retail structure, as applicable, to be built on a Lot receives a permanent certificate of occupancy or its equivalent (as distinguished, however, from a certificate or other approval which is issued upon the completion of interior (tenant) improvements, the completion of such improvements not to be required for purposes of this Section) the assessments applicable to such Lot shall be assessed at a uniform rate equal to six (6) Assessment Units for each acre (or portion thereof) contained within such Lot. For the purposes of this Section, the "enclosed square feet" of a Unit shall be measured from the exterior walls thereof and shall not be reduced by any area occupied by walls, pillars, stairwells or other improvements therein. It is contemplated that boat slips may be made available on Fisher Island for sale, at which time the number of Assessment Units attributable to such slip(s) shall be as provided in the Supplemental Declaration adding such slips to The Properties (and if not so provided, such number shall be one (1) Assessment Unit per slip).

- 10 -

RE: 13008PG2062

Section 3.  Purpose of Assessments.  The assessments levied by the Community Association shall be used for maintenance, operation, management and insurance of the Common Areas and the Community Association as provided herein, to promote the welfare and recreational opportunities of the Members of the Community Association and their Member's Permittees, to pay such other obligations of the Community Association as may be imposed hereby (which specifically include the proportionate share of the expenses of the Transportation System as provided for in Article XI hereof and which may include, without limitation, the provision of cable television services), or otherwise become binding upon the Community Association and for such other purposes as are provided for in this Declaration.

Section 4.  Capital Improvements.  Funds in excess of the lesser of (i) $15,000 or (ii) 5% of the then-current operating budget of the Association, in any one case, which are necessary for the addition or replacement of capital improvements (as distinguished from repairs and maintenance) relating to the Common Areas and which have not previously been collected as reserves or are not otherwise available to the Community Association may be levied as capital improvement assessments by the Community Association upon approval by a majority of the Board of Directors of the Community Association and upon approval of majority vote at a meeting as may be provided by the By-Laws of the Community Association.  It is the intent of this Section that any capital improvements having a cost of less than the aforesaid amount be paid for by general assessments, with an appropriate adjustment to the budget of the Community Association and the assessments levied thereunder to be made, if necessary, or a special assessment to be levied pursuant to Section 12 of this Article.

Section 5.  Date of Commencement of General Assessments; Due Dates.  The general assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through December 31 of such year.  Each subsequent general assessment shall be imposed for the year beginning January 1 and ending December 31.

The general assessments shall be payable in advance in monthly installments or quarter-annual installments if so determined by the Board of Directors of the Community Association. The general assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other general assessment that is in the future adopted.  The original general assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised general assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year.

The due date of any special assessment or capital improvement or personal assessment shall be fixed in the Board resolution authorizing such assessment.

Section 6.  Duties of the Board of Directors.  The Board of Directors shall fix the date of commencement and the amount of the general assessment against each Lot for each assessment period, to the extent practicable, at least thirty (30) days in advance of such year, and shall, at that time, prepare a roster of the Lots, the Owners thereof and general assessments applicable thereto, which roster shall be kept in the office of the Community Association and shall be open to inspection by any Owner during normal Community Association business hours.

- 11 -

RE: 13008m2063

Written notice of the applicable general assessment shall thereupon be sent to every Owner subject thereto or every Neighborhood Association thirty (30) days prior to the date the first payment at the then-established assessment rate is due. In the event notice of changes in the general assessment for a new period is not given, the general assessment amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein.

The Community Association shall, upon demand at any time, furnish to any Owner liable for any type of assessment a certificate in writing signed by an officer of the Community Association setting forth whether such assessment has been paid as to any particular Lot. Such certificate shall be conclusive evidence of payment of such assessment to the Community Association therein stated to have been paid.

The Community Association, through the action of its Board of Directors, shall have the power, but not the obligation, to acquire, by purchase, lease or otherwise, one or more Units for occupancy by its employees or independent contractors, and to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Declarant) for management services. The Community Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

Section 7. Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association. If any installment of a general assessment is not paid on the dates when due (being the date specified by the Board from time to time), or if any other type of assessment is not paid, then such assessment (or the applicable installation(s) thereof) shall become delinquent and shall, together with late charges, interest and the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the appropriate Lot, which shall bind such Lot in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 8 of this Article, the personal obligation of the then Owner to pay such assessment shall pass to his successors in interest and recourse may be had against either or both.

If any assessment (or installment thereof) is not paid within fifteen (15) days after the due date, at the option of the Community Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid) or the next 12 months of installments may be accelerated and become immediately due and payable in full, and all sums due shall bear interest from the dates when due until paid at the highest lawful rate (or, if there is no highest lawful rate, 18% per annum) and the Community Association may bring an action at law against the Owner(s) personally obligated to pay the same or may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the property on which the assessment and late charges are unpaid, or may foreclose the lien against the property on which the assessments and late charges are unpaid, or pursue one or more of such remedies at the same time or successively, and attorneys' fees and costs of preparing and filing the claim of lien and the complaint (if any) in such action, and in prosecuting same, shall be added to the amount of such assessments, interest and late charges, and in the event a judgment is obtained, such judgment shall include

- 12 -

RE: 13008PG2064

all such sums as above provided and attorneys' fees actually in-
curred in the applicable action together with the costs of the
action, and the Community Association shall be entitled to attor-
neys' fees in connection with any appeal of any such action.

In the case of an acceleration of the next 12 months of
installments, each installment so accelerated shall be deemed,
initially, equal to the amount of the then most current delin-
quent installment, provided that if any such installment so
accelerated would have been greater in amount by reason of a sub-
sequent increase in the applicable budget, the Owner of the Lot
whose installments were so accelerated shall continue to be li-
able for the balance due and payable by reason of such an in-
crease and special assessments against such Lot shall be levied
by the Community Association for such purpose.

In addition to the rights of collection of assessments
stated in this Section, any and all persons acquiring the title
to or the interest in a Lot as to which the assessment is delin-
quent, including, without limitation, persons acquiring title by
operation of law and by judicial sale, shall not be entitled to
the occupancy of such Lot or the enjoyment of the Common Areas
until such time as all unpaid and delinquent assessments due and
owing from the selling Owner have been fully paid, and no sale or
other disposition of Lots shall be permitted until an estoppel
letter is received from the Community Association acknowledging
payment in full of all assessments and other sums due; provided,
however, that the provisions of this sentence shall not be appli-
cable to the mortgagees and purchasers contemplated by Section 8
of this Article.

Unless delegated to a Neighborhood Association by the Com-
munity Association, it shall be the legal duty and responsibility
of the Community Association to enforce payment of the assess-
ments hereunder. Failure of a collecting entity to send or
deliver bills or notices of assessments shall not, however,
relieve Owners from their obligations hereunder.

All assessments, late charges, interest, penalties, fines,
attorneys' fees and other sums provided for herein shall accrue
to the benefit of the Community Association.

Owners shall be obligated to deliver the documents original-
ly received from the Declarant, containing this and other declar-
ations and documents, to any grantee of such Owners.

The Community Association shall have such other remedies for
collection and enforcement of assessments as may be permitted by
applicable law. All remedies are intended to be, and shall be,
cumulative.

Section 8. Subordination of the Lien. The lien of the
assessments provided for in this Article shall be subordinate to
real property tax liens and to the lien of any first mortgage re-
corded prior to recordation of a claim of lien, which mortgage
encumbers any Lot and is in favor of any bona fide lender
generally recognized as an institutional-type lender that is now
or hereafter placed upon a portion of The Properties subject to
assessment; provided, however, that any such mortgagee when in
possession of any receiver, and in the event of a foreclosure,
any purchaser at a foreclosure sale, and any such mortgagee ac-
quiring a deed in lieu of foreclosure or in satisfaction of debt,
and all persons claiming by, through or under any such purchaser
or such mortgagee, shall hold title subject to the liability and
lien of any assessment coming due after such foreclosure (or con-
veyance in lieu of foreclosure). Any unpaid assessment which
cannot be collected as a lien against any Lot by reason of the

- 13 -

OFF.
REC. 13003 2065

provisions of this Section shall be deemed to be an assessment
divided among, payable by and a lien against all Lots as provided
in Section 1 of this Article, including the Lot as to which the
foreclosure (or conveyance in lieu of foreclosure or in satisfac-
tion of debt) took place.   Liens for assessment under this
Article shall be superior to liens for assessments of the Neigh-
borhood Associations which may be referred to in declarations of
restrictions and protective covenants recorded with respect to
certain Lots.   In the event only a portion of the assessments of
the Community Association and Neighborhood Associations are col-
lected, the amount collected shall be applied first to assess-
ments of the Community Association and the balance, if any, shall
then be paid to such Neighborhood Associations.

Section 9.   Collection of Assessments.   Assessments levied
pursuant hereto shall be collected in the manner established pur-
suant to Article X, Section 4 of this Declaration.   In the event
that at any time said manner provides for collection of assess-
ments levied pursuant hereto by an entity other than the Commu-
nity Association, all references herein to collection (but not
necessarily enforcement) by the Community Association shall be
deemed to refer to the other entity performing such collection
duties and the obligations of Owners to pay assessments shall be
satisfied by making such payments to the applicable collecting
entity.

Section 10.   Effect on Declarant.   Notwithstanding any pro-
vision that may be contained to the contrary in this instrument,
for so long as Declarant (or any of its affiliates) is the owner
of any Lot or undeveloped property within Fisher Island, the
Declarant shall have the option, in its sole discretion, to (i)
pay assessments on the Lots owned by it, (ii) pay assessments
only on certain designated Lots (e.g., those under construction
or those containing a Unit for which a certificate of occupancy
has been issued) or (iii) not paying assessments on any Lots and
in lieu thereof funding any resulting deficit in the Associa-
tion's operating expenses not produced by assessments receivable
from Owners other than the Declarant.   The deficit to be paid un-
der option (iii), above, shall be the difference between (i)
actual operating expenses of the Community Association (exclusive
of capital improvement costs, reserves and management fees) and
(ii) the sum of all monies receivable by the Community Associa-
tion (including, without limitation, assessments, interest, late
charges, fines and incidental income) and any surplus carried
forward from the preceding year(s).   The Declarant may from time
to time change the option stated above under which the Declarant
is making payments to the Community Association by written notice
to such effect to the Community Association.   If Declarant at any
time elects option (ii) above, it shall not be deemed to have
elected option (iii) as to the Lots which are not designated un-
der option (ii).   When all Lots within The Properties are sold
and conveyed to purchasers, neither the Declarant, nor its affil-
iates, shall have further liability of any kind to the Community
Association for the payment of assessments, deficits or contribu-
tions.   In no event shall Declarant ever be obligated to pay a
Personal Assessment.

Section 11.   Association Funds.   The portion of all regular
assessments collected by the Community Association for reserves
for future expenses, and the entire amount of all special assess-
ments, shall be held by the Community Association and may be in-
vested in interest bearing accounts or in certificates of deposit
or other like instruments or accounts available at banks or sav-
ings and loan institutions, the deposits of which are insured by
an agency of the United States.

- 14 -

REC 13008PG2066

Section 12. **Special Assessments.** In the event that the Board of Directors determines that it is necessary for the Community Association to obtain funds for a specific purpose(s) which is of a non-recurring nature, for which no reserve funds have been collected or allocated, and which is not the appropriate subject of a capital improvement assessment, then the Board of Directors may levy a special assessment for such purpose. Such special assessment may, in the discretion of the Board of Directors, be payable in one lump sum or in appropriate installments; provided, however, that (i) the Board of Directors shall use reasonable efforts to fund an expense for which a special assessment would otherwise be levied by changing the Association's budget and, therefore, the general assessments and (ii) the requirements set forth above as to the approval by the Members of capital improvement assessments shall also apply to Special Assessments.

Section 13. **Personal Assessments.** Owners (on their behalf and on behalf of their Member's Permittees) causing damage to any portion of the Common Areas as a result of misuse, negligence, failure to maintain or otherwise shall be directly liable to the Community Association and a personal assessment may be levied therefor against such Owner or Owners. Such personal assessments shall be subject to all of the provisions hereof relating to other assessments, including, but not limited to, the lien and foreclosure procedures.

### ARTICLE VII

### RULES AND REGULATIONS

Section 1. **Compliance by Owners.** Every Owner and Member's Permittee shall comply with any and all rules and regulations adopted by the Community Association as contemplated herein.

Section 2. **Enforcement.** Failure to comply with such rules and regulations shall be grounds for immediate action which may include, without limitation, an action to recover sums due for damages, injunctive relief or any combination thereof. The Community Association shall also have the right to suspend rights of use of Common Areas as specified herein.

Section 3. **Fines.** In addition to all other remedies, in the sole discretion of the Board of Directors of the Community Association, a fine or fines may be imposed upon an Owner for failure of an Owner or his Member's Permittees to comply herewith or with any rule or regulation, provided the following procedures are adhered to:

(a) **Notice:** The Community Association shall notify the Owner of the infraction or infractions. Included in the notice shall be the date and time of a special meeting of the Board of Directors at which time the Owner shall present reasons why penalties should not be imposed. At least six (6) days' notice of such meeting shall be given.

(b) **Hearing:** The non-compliance shall be presented to the Board of Directors after which the Board of Directors shall hear reasons why a fine should not be imposed. A written decision of the Board of Directors shall be submitted to the Owner by not later than twenty-one (21) days after the Board of Directors' meeting. The Owner shall have a right to be represented by counsel and to cross-examine witnesses. If the impartiality of the Board is in question, the Board shall appoint three (3) impartial Members to a special hearing panel.

- 15 -

REC. 13008 PG 2067

(c)     **Amounts of Fines:**  The Board of Directors (if its or such panel's findings are made against the Owner) may impose personal assessments against the Lot owned by the Owner as follows:

(1)  First non-compliance or violation:  a fine not in excess of One Hundred Dollars ($100.00).

(2)  Second non-compliance or violation:  a fine not in excess of Five Hundred Dollars ($500.00).

(3)  Third and subsequent non-compliance, or violation or violations which are of a continuing nature:  a fine not in excess of One Thousand Dollars ($1,000.00).

(d)     **Payment of Fines:**  Fines shall be paid not later than five (5) days after notice of the imposition or assessment of the penalties.

(e)     **Collection of Fines:**  Fines shall be treated as a personal assessment subject to the provisions for the collection of assessments as set forth herein.

(f)     **Application of Fines:**  All monies received from fines shall be allocated as directed by the Board of Directors.

(g)     **Non-exclusive Remedy:**  These fines shall not be construed to be exclusive, and shall exist in addition to all other rights and remedies to which the Community Association may be otherwise legally entitled; however, any fine paid by the offending Owner shall be deducted from or offset against any damages which the Community Association may otherwise be entitled to recover by law from such Owner.

**Section 4.  Initial Rules and Regulations.**  Attached to this Declaration as Schedule A are the initial rules and regulations of the Community Association which are incorporated into this Declaration by this reference and which may be modified, in whole or in part, at any time by the Board without the necessity of recording such new or modified rules and regulations in the public records, provided that the Board shall notify each Neighborhood Association and the owners of the Club, Hotel and Lots (including commercial and retail) which are not within a Neighborhood Association of all modifications of rules and regulations as aforesaid.  Receipt by a Neighborhood Association of such notice shall constitute notice to its members.

**ARTICLE VIII**

**ARCHITECTURAL CONTROL; GENERAL POWERS**

The following provisions of this Article VIII are subject to those of Article X hereof.  Accordingly, this Section shall be operative only so long as the Community Association is performing (subject to later delegation) architectural control duties and powers in the manner provided in Article X.  This Article is also subject to Article V, Section 3 of this Declaration with respect to the Club.

**Section 1.  Members of Committee.**  The Architectural Control Committee, sometimes referred to in this Declaration as the "Committee", shall consist of three (3) members.  The initial members of the Committee shall consist of persons designated by

- 16 -

RE: 13008PG2068

Declarant. Each of the initial members shall hold office until all Lots and Improvements planned for the Development have been constructed and conveyed (if appropriate), or sooner at the option of Declarant. Thereafter, each new member of the Committee shall be appointed by the Board of Directors and shall hold office until such time as he has resigned or has been removed, or his successor has been appointed, as provided herein. Members of the Committee may be removed by the Board of Directors at any time without cause.

Section 2. Review of Proposed Construction. Subject to Section 9 below, no building, fence, wall or other structure or improvement (including, but not limited to, landscaping, hurricane protection, basketball hoops, birdhouses, other pet houses, swales, asphalting or other improvements or changes of any kind) shall be commenced, altered, painted, erected or maintained in The Properties, nor shall any addition, change or alteration (including paint or exterior finishing) visible from the exterior of any Unit be made, nor shall any awning, canopy or shutter be attached to or placed upon outside walls or roofs of buildings or other improvements, until the plans and specifications showing the nature, kind, shape, height, materials and location of the same shall have been submitted to, and approved in writing by, the Committee. The Committee shall approve proposals or plans and specifications submitted for its approval only if it deems that the construction, alterations or additions contemplated thereby in the locations indicated will not be detrimental to the appearance of Fisher Island as a whole, and that the appearance of any structure affected thereby will be in harmony with the surrounding structures and landscaping and is otherwise desirable. If the proposed construction, alterations or additions are to common elements of a condominium, said approval shall also be subject to the prior approval of the applicable condominium association. The Committee may condition its approval of proposals and plans and specifications as it deems appropriate, and may require submission of additional plans and specifications or other information prior to approving or disapproving material submitted. The Committee may require such detail in plans and specifications submitted for its review as it deems proper, including, without limitation, floor plans, site plans, drainage plans, elevation drawings and descriptions or samples of exterior materials and colors. Until receipt by the Committee of any required plans and specifications, the Committee may postpone review of any plans submitted for approval. The Committee shall have thirty (30) days after delivery of all required materials to approve or reject any such plans, and if not rejected within such 30-day period, said plans shall be deemed approved. All work done by a Member after receiving the approval of the Committee shall be subject to the inspection by, and final approval of, the Committee in accordance with its procedural rules adopted as herein provided.

All changes and alterations shall also be subject to all applicable permit requirements and to all applicable governmental laws, statutes, ordinances, rules, regulations, orders and decrees as well as the approval of the Club as provided in Article V, Section 3 hereof, if applicable.

Section 3. Meetings of the Committee. The Committee shall meet from time to time as necessary to perform its duties hereunder. The Committee may from time to time, by resolution unanimously adopted in writing, designate a Committee representative (who may, but need not, be one of its members) to take any action or perform any duties for and on behalf of the Committee, except the granting of variances pursuant to Section 8 hereof. In the absence of such designation, the vote of any two (2) members of the Committee shall constitute an act of the Committee.

~ 17 ~

REC 13008 PG 2069

**Section 4.   No Waiver of Future Approvals.**  The approval of the Committee of any proposals or plans and specifications or drawings for any work done or proposed, or in connection with any other matter requiring the approval and consent of the Committee, shall not be deemed to constitute a waiver of any right to withheld approval or consent as to any similar proposals, plans and specifications, drawings or matters whatever subsequently or additionally submitted for approval or consent.

**Section 5.   Compensation of Members.**  The members of the Committee shall receive no compensation for services rendered, other than reimbursement for expenses incurred by them in the performance of their duties hereunder.

**Section 6.   Committee Rules.**  The Committee shall adopt reasonable rules of procedure and standards for the submission and review of any matter to be brought before it and the inspection and final approval of any completed work done pursuant to an approval of the Committee.  Such rules shall be (i) subject to the prior approval of the Board of Directors, (ii) consistent with the covenants and restrictions set forth in this Declaration and (iii) published or otherwise made available to all Members and their contractors, subcontractors and other appropriate designees.  All rules of the Committee shall be adopted and/or amended by a majority vote thereof, provided that no amendment shall be applicable to any matter submitted to the Committee prior to the making of such amendment.

**Section 7.   Non-Liability of Committee Members.**  Neither the Community Association, the Board of Directors, the Committee nor any member thereof, nor any duly authorized representative of any of the foregoing, shall be liable to any Neighborhood Association or to any Owner or any other person or entity for any loss, damage or injury arising out of or in any way connected with the performance or non-performance of the Committee's duties hereunder.  The Committee shall review and approve or disapprove all plans submitted to it for any proposed improvement, alteration or addition solely on the basis of aesthetic considerations and the benefit or detriment which would result to the immediate vicinity and to Fisher Island generally.  The Committee shall take into consideration the aesthetic aspects of the architectural designs, placement of buildings, landscaping, color schemes, exterior finishes and materials and similar features, but shall not be responsible for reviewing, nor shall its approval of any plan or design be deemed approval of, or warranty as to, any plan or design from the standpoint of structural safety or conformance with building or other codes.

**Section 8.   Variance.**  The Committee may authorize variances from compliance with any of the architectural control provisions of this Declaration when circumstances such as topography, natural obstructions, hardship, aesthetic or environmental considerations require, but only in accordance with its duly adopted rules and regulations.  Such variances may only be granted, however, when unique circumstances dictate and no variance shall (i) be effective unless in writing, (ii) be contrary to the restrictions set forth in this Declaration, or (iii) estop the Committee from denying a variance in other circumstances.

**Section 9.   Exemptions.**  Declarant and its affiliates and the Club shall be exempt from the provisions hereof with respect to alterations and additions desired to be effected by any of them and shall not be obligated to obtain Committee approval for any construction or changes which any of them may elect to make at any time.  Further, the provisions of this Article shall not apply to the initial construction of any improvements within Fisher Island (other than those ancillary to already completed

- 18 -

RE: 13008PG2070

buildings or other improvements) unless Declarant assigns the
right of review/approval as to same to the Community Association,
which shall then exercise such rights as specified in the Assign-
ment.

Section 10. General Powers of the Community Association.
The Community Association (and the Committee, as appropriate)
shall have the absolute power to veto any action taken or con-
templated to be taken, and the Community Association shall have
the absolute power to require specific action to be taken, by any
Neighborhood Association in connection with applicable sections
of Fisher Island.  Without limiting the generality of the fore-
going, the Community Association (and the Committee, as appro-
priate) may veto any decision of any Neighborhood Association (or
architectural control board or other committee thereof), and the
Community Association may require specific maintenance or repairs
or aesthetic changes to be effected, require that a proposed
budget include certain items and that expenditures be made there-
for, veto or cancel any contract providing for maintenance, re-
pair or replacement of the property governed by such Neighborhood
Association and otherwise require or veto any other action as the
Community Association deems appropriate from time to time.

Any action required by the Community Association in a writ-
ten notice to be taken by a Neighborhood Association shall be
taken within the time frame set by the Community Association in
such written notice.  If the Neighborhood Association fails to
comply with the requirements set forth in such written notice,
the Community Association shall have the right to effect such
action on behalf of the Neighborhood Association and shall assess
the Lots and Units governed by the Neighborhood Association for
their pro-rata share of any expenses incurred by the Community
Association in connection therewith, together with an administra-
tive charge to be determined by the Community Association under
the circumstances (to cover the Community Association's adminis-
trative expenses in connection with the foregoing and to discour-
age the Neighborhood Association from failing to comply with the
requirements of the Community Association).  Such assessments may
be collected as special assessments hereunder and shall be sub-
ject to all lien rights provided for herein.

ARTICLE IX

RESALE, LEASE AND OCCUPANCY RESTRICTIONS

Section 1.  Estoppel Certificate.  No Owner may sell or
convey his interest in a Lot unless all sums due the Association
shall be paid in full and an estoppel certificate in recordable
form to such effect shall have been received by the Owner.  If
all such sums shall have been paid, the Association shall deliver
such certificate within ten (10) days of a written request there-
for.

Section 2.  Leases.  No portion of a Lot or Unit (other
than an entire Lot and Unit together) may be rented (other than
by way of a "ground lease" having a term of twenty (20) years or
more).  The leasing of a Lot and Unit shall be subject to the
requirements of the applicable Neighborhood Association.

Section 3.  Members' Permittees.  No Lot or Unit shall be
occupied by any person other than the Owner(s) thereof and the
applicable Members' Permittees and in no event other than as a
residence.  For purposes of this Declaration, "Member's Permit-
tees" shall be the following persons and such persons' families,
provided that the Owner or other permitted occupant must reside
with his/her family:  (i) an individual Owner(s), (ii) an offi-

- 19 -

REC: 13008*2071

cer, director, stockholder or employee of a corporate owner,
(iii) a partner in or employee of a partnership owner, (iv) a
fiduciary or beneficiary of an ownership in trust, or (v) occu-
pants named or described in a lease or sublease, but only if
approved in accordance with this Declaration.  Under no circum-
stances may more than one family reside in a Unit at one time,
except for guests.  In no event shall occupancy (except for
temporary occupancy by guests) exceed two (2) persons per bedroom
and one (1) person per den (as defined by the Association for the
purpose of excluding from such definition living rooms, dining
rooms, family rooms and the like).  The Board of Directors shall
have the power to authorize occupancy of a Unit by persons in
addition to those set forth above.  The provisions of this Sec-
tion shall not be applicable to Units used by the Declarant for
model apartments, sales offices or management services.

As used herein, "family" or words of similar import shall be
deemed to include a spouse, children, parents, brothers, sisters,
grandchildren and other persons permanently cohabiting the Unit
as or together with the Owner or permitted occupant thereof.

As used herein, "guests" or other words of similar import
shall include only those persons who have a principal residence
other than the Unit.  Unless otherwise determined by the Board of
Directors of the Association, a person(s) occupying a Unit for
more than one (1) month shall not be deemed a guest but, rather,
shall be deemed a lessee for purposes of this Declaration
(regardless of whether a lease exists or rent is paid) and shall
be subject to the provisions of this Declaration which apply to
lessees and leasees.  The purpose of this paragraph is to prohibit
the circumvention of the provisions and intent of this Article
and the Board of Directors of the Association shall enforce, and
the Owners comply with, same with due regard for such purpose.

Section 4.  Applicability to Developer.  The provisions of
this Article IX shall not be applicable to Developer.

## ARTICLE X

## COMMUNITY ASSOCIATION AND NEIGHBORHOOD ASSOCIATIONS

Section 1.  Preamble.  In order to ensure the orderly dev-
elopment, operation and maintenance of Fisher Island, and the
properties subject to the administration of the Neighborhood
Associations as integrated parts of Fisher Island, this Article
has been promulgated for the purposes of (1) giving the Community
Association certain powers to effectuate such goal, (2) providing
for intended (but not guaranteed) economies of scale and (3)
establishing the framework of the mechanism through which the
foregoing may be accomplished.  The provisions of this Article
are specifically subject, however, to Article XII, Section 12 of
this Declaration.

Section 2.  Cumulative Effect; Conflict.  The covenants,
restrictions and provisions of this Declaration shall be cumul-
ative with those of the Neighborhood Associations and the Com-
munity Association may, but shall not be required to, enforce the
latter; provided, however, that in the event of conflict between
or among such covenants, restrictions and provisions, or any
Articles of Incorporation, By-Laws, rules and regulations, poli-
cies or practices adopted or carried out pursuant thereto, those
of the Neighborhood Associations shall be subject and subordinate
to this Declaration.  The foregoing priorities shall apply, but
not be limited to, the liens for assessments created in favor of
the Community Association and the Neighborhood Associations as

- 20 -

View Document - Miami-Dade County OCS

REC. 13008PG2072

provided for herein.  As to any Neighborhood Association which is
a condominium association, no duties of same hereunder shall be
performed or assumed by the Community Association if same are
required by law to be performed by the Neighborhood Association
or if the performance or assumption of such duties would be con-
trary to the purpose and intent of Article XI, Section 13 of this
Declaration.

Section 3.  Architectural Control, Maintenance and Use
Restrictions.  All architectural control, Lot and Unit mainten-
ance requirements and use restrictions provided for in or pursu-
ant to this Declaration shall, initially, be exercised and en-
forced by the Community Association.  However, the Community Asso-
ciation may delegate to a Neighborhood Association(s) all or any
part of such rights/duties, on an exclusive or non-exclusive
basis, upon written notice recorded in the Public Records of Dade
County, Florida.

As long as the Community Association performs architectural
control functions, no Neighborhood Association shall do so unless
such functions are specifically delegated to it by the Community
Association; provided, however, that a Neighborhood Association
for a condominium may perform such functions to the extent re-
quired by its Declaration of Condominium or by applicable law.

Section 4.  Collection of Assessments.  The Neighborhood
Associations shall, initially, collect all assessments and other
sums due the Community Association and the applicable Neighbor-
hood Association from the members thereof.  The Neighborhood
Association will remit the assessments so collected to the re-
spective payees pursuant to such procedures as may be adopted by
the Community Association.  The sums so collected shall be
applied first to the assessments of the Community Association and
then to those of the collecting Neighborhood Association.  No
sums collected by a Neighborhood Association on behalf of the
Community Association shall be deemed a common expense of the
collecting Neighborhood Association.

Notwithstanding the priority of disbursements of collected
lump sums as provided above, all capital improvement assessments,
special assessments, personal assessments, interest, late
charges, recovered costs of collection and other extraordinary
impositions shall be remitted to the respective entity imposing
same separate and apart from the priorities established above.

The Community Association shall notify the various Neighbor-
hood Associations, by written notice given at least thirty (30)
days in advance, of any changes in the amounts of the assessments
due it or the frequency at which they are to be collected.  The
aforesaid notice period shall also apply to capital improvement
assessments, but may be as short as five (5) days before the
next-due regular assessment installment in the case of special
assessments, and personal assessments of the Community Associa-
tion.

The Neighborhood Associations shall not be required to re-
cord liens or take any other actions with regard to delinquencies
in assessments payable to the Community Association unless the
Community Association gives them written notice of its election
to have them do so.  In the event that the Community Association
does, however, make such election, then all of the Community
Association's rights of enforcement provided in this Declaration
shall be deemed to have automatically vested in the applicable
Neighborhood Association, but all costs and expenses of exer-
cising such rights shall nevertheless be paid by the Community
Association (which shall be entitled to receive payment of any
such costs and expenses which are ultimately recovered).

- 21 -

RE: 13008 2073

The Community Association may, from time to time by sixty (60) days' prior written notice to the affected Neighborhood Association(s), change the procedures set forth in this Section 4 in whole or in part. Such change may include, without limitation, the assumption by the Community Association of all or some of the collection functions (including those for a Neighborhood Association) provided for herein or in the declaration for a Neighborhood Association(s) (to which assumption the Neighborhood Association and its members shall be deemed to have automatically agreed).

All fidelity bonds and insurance maintained by a Neighborhood Association shall reflect any duties performed by it pursuant hereto and the amounts to be received and disbursed by it and shall name the Community Association as an obligee/insured party for so long as its assessments are being collected and remitted by the Neighborhood Association.

To the extent lawful, a Neighborhood Association may delegate, or contract for the performance of, any duties performed by it pursuant hereto to/with a management company approved by the Community Association, provided that (1) the Neighborhood Association shall remain ultimately liable hereunder, (2) the management company, as well as the Neighborhood Association, shall comply with the requirements of the foregoing paragraph and (3) the approval of the management company may be withdrawn, with or without cause, at any time upon thirty (30) days' prior written notice. Any management agreement or similar contract entered into by the Neighborhood Association shall be subject to the provisions of this Article and shall not require the Neighborhood Association to pay fees for the performance of duties which would otherwise be delegated to the company in connection with this Article if such duties are performed by the Community Association as provided above.

In the event of any change in assessment collection procedures elected to be made by the Community Association, the relative priorities of assessment remittances and liens (i.e., the Community Association first and the applicable Neighborhood Association second) shall nevertheless still remain in effect, as shall the Community Association's ability to modify or revoke its election from time to time.

Section 5. Delegation of Other Duties. The Community Association shall have the right to delegate to a Neighborhood Association, on an exclusive or non-exclusive basis, such additional duties not specifically described in this Article as the Community Association shall deem appropriate, provided that such duties have a reasonable relationship (by virtue of function or location) to the Neighborhood Association or its respective property. Such delegation shall be made by written notice to the Neighborhood Association, which shall be effective no earlier than thirty (30) days from the date it is given. Any delegation made pursuant hereto may be modified or revoked by the Community Association at any time.

Section 6. Acceptance of Delegated Duties. Whenever the Community Association delegates any duty to a Neighborhood Association pursuant to this Article, the Neighborhood Association shall be deemed to have automatically accepted same and to have agreed to indemnify, defend and hold harmless the Community Association for all liabilities, losses, damages and expenses (including attorneys' fees actually incurred and court costs, through all appellate levels) arising from or connected with the Neighborhood Association's performance, non-performance or negligent performance thereof. All Neighborhood Associations shall be responsible to the Community Association for maintaining adequate

- 22 -

RE: 13008PG2074

liability and other insurance covering injuries, deaths, losses or damages arising from or connected with the Neighborhood Association's performance or nonperformance of its duties hereunder.

Section 7. **Expense Allocations.** The Community Association may, by written notice given to the affected Neighborhood Association at least sixty (60) days prior to the end of the Neighborhood Association's fiscal year, allocate and assess to the Neighborhood Association a share of the expenses incurred by the Community Association which are reasonably allocable to the Neighborhood Association and/or the portion of Fisher Island within its jurisdiction (e.g., for street lighting systems). In such event, the expenses so allocated shall thereafter be deemed common expenses of the Neighborhood Association payable by it (with assessments collected from its members) to the Community Association.

In the event of a failure of a Neighborhood Association to budget or assess its members for expenses allocated as aforesaid, the Community Association shall be entitled to pursue all available legal and equitable remedies against the Neighborhood Association or, without waiving its right to the foregoing, specially assess the members of the Neighborhood Association and their Lots for the sums due (such special assessments, as all others, to be secured by the lien provided for in this Declaration).

Section 8. **Non-Performance of Neighborhood Association Duties.** In addition to the specific rights of the Community Association provided in Section 7, above, and subject to the limitations set forth in Section 2 of this Article and Article XII, Section 12 of this Declaration, in the event that a Neighborhood Association fails to perform any duties delegated to, or required of, it under this Declaration or to otherwise be performed by it pursuant to its own declaration, articles of incorporation, by-laws or related documents, which failure continues for a period in excess of thirty (30) days after the Community Association's giving notice thereof, then the Community Association may, but shall not be required to, assume such duties. In such event, the Neighborhood Association shall not perform such duties unless and until such time as the Community Association directs it to once again do so.

Section 9. **Conflict.** In the event of conflict between this Article X, as amended from time to time, and any of the other covenants, restrictions or provisions of this Declaration or the Articles of Incorporation, By-Laws or rules and regulations of the Association all as amended from time to time, the provisions of this Article shall supersede and control.

## ARTICLE XI

### TRANSPORTATION SYSTEM

Section 1. **Transportation System.** Declarant, or an affiliate thereof, currently owns, operates and maintains a transportation system to and from Fisher Island which provides ferry boat service from a transportation station (which is not within The Properties or a part of the Common Areas) abutting The Properties to the mainland, and may include shuttle bus service from the transportation station to or among specific points within Fisher Island. Said system, as same may be expanded, contracted or modified from time to time, is referred to in this Declaration as the "Transportation System".

Section 2. **Conveyance of Transportation System.** All persons, including all Owners, are hereby advised that no represen-

- 23 -

REC. 13008 PG 2075

tations or warranties have been or are made with respect to the
continuing ownership of the Transportation System as same pre-
sently exists, and no purported representation or warranty in
such regard shall ever be effective without an amendment hereto
executed or joined into by the Declarant. Further, the ownership
or operational duties of, and as to, the Transportation System
may change at any time and from time to time by virtue of factors
such as (without limitation): (a) the sale or assumption of
operations of the Transportation System by/to an affiliate of the
Declarant, (b) the sale or assumption of operations of the Trans-
portation System by/to an independent person or entity including
a special taxing district in which the Properties or portions
thereof are located, and (c) the conveyance of the Transportation
System to the Community Association, with or without considera-
tion and whether or not subject to any lease and accompanying
rental obligations, mortgages, covenants, liens or other encum-
brances. As to any of the foregoing or any other alternative, no
consent of the Community Association, any Neighborhood Associa-
tion or any Owner shall be required to effectuate same.

Section 3.  Operation and Expenses of the Transportation
System.  Inasmuch as the Transportation System has been estab-
lished for the benefit of Owners and their guests, certain
charges will be made against Owners, through the Community Asso-
ciation, reasonably necessary to properly maintain and operate
the Transportation System.  The owner of the Transportation
System may, in its sole discretion, make charges for the use of
the Transportation System on a per person basis, on a per ride
basis, or otherwise.  Alternatively, the owner of the Transporta-
tion System may, at least sixty (60) days prior to the end of the
fiscal year of the Community Association, submit to the Community
Association an amount, as closely as possible representing the
actual operating and maintenance expenses of the Transportation
System (which include, without limitation, rent payable for the
transportation station and insurance premiums) based on prior
years' information and projections of future costs and usage,
which shall be included in the budget of the Community Associa-
tion, collected as part of the General Assessments made against
Lots and paid to the Transportation System Owner as a common
expense of the Community Association.  If the owner of the Trans-
portation System exercises its rights of contribution from the
Community Association as aforesaid, then the Community Associa-
tion shall be automatically obligated to budget for and make such
contributions, failing which the owner of the Transportation
System shall have all rights and remedies available to it at law
or in equity (including, without limitation, specific perform-
ance), but shall not be entitled to deny Owners access to Fisher
Island or their Lots.  The last clause of the foregoing sentence
may not be amended.

Section 4.  Assessments.  In consideration of the fact that
the Transportation System is designed for the benefit of Owners,
and inasmuch as the Transportation System is not located within
The Properties, neither the Transportation System, nor any of its
property, shall be subject to assessment hereunder or under any
similar document for any Neighborhood Association.

Section 5.  Limitations on Amendments.  In recognition of
the fact that the provisions of this Article are for the benefit
of the Transportation System, and its owner(s), no amendment to
this Article, and no amendment in derogation hereof or otherwise
prejudicial to the Transportation System or its owner(s) may be
made without the written approval of said owner(s).  The fore-
going shall not be amended, but shall not apply to amendments
made by Declarant.

- 24 -

REC 13008PG2076

ARTICLE XII

GENERAL PROVISIONS

Section 1.   Duration.   The covenants and restrictions of this Declaration shall run with and bind The Properties, and shall inure to the benefit of and be enforceable by the Declarant, the Community Association, the Club, any Neighborhood Association, the Owner of any land subject to this Declaration, the owner of the Transportation System and the Committee, and their respective legal representatives, heirs, successors and assigns, for a term of ninety-nine (99) years from the date this Declaration is recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years each unless an instrument signed by the then Owners of 75%, and the mortgagees of 75% of the Lots agreeing to revoke said covenants, has been recorded and the Community Association has given its prior written consent thereto.   No such agreement to revoke shall be effective unless made and recorded three (3) years in advance of the effective date of such agreement and unless written notice of the proposed agreement is sent to every Owner at least ninety (90) days in advance of any action taken.

Section 2.   Notice.   Any notice required to be sent to any Member or Owner under the provisions of this Declaration shall be deemed to have been properly sent when personally delivered or mailed, postpaid, to the last known address of the person who appears as Member or Owner on the records of the Community Association at the time of such mailing.

Section 3.   Enforcement.   Enforcement of these covenants and restrictions shall be accomplished by means of a proceeding at law or in equity against any person or persons violating or attempting to violate any covenant or restriction, either to restrain violation or to recover damages, and against the land to enforce any lien created by these covenants; and failure of the Community Association, the Club, the Declarant, the Committee, any Neighborhood Association or any Owner to enforce any covenant or restriction herein contained shall in no event be deemed a waiver of the right to do so thereafter.   These covenants may also be enforced by any architectural control committee established in other covenants that may from time to time be recorded.

Section 4.   Severability.   Invalidation of any one of these covenants or restrictions or any part, clause or word hereof, or the application thereof in specific circumstances, by judgment or court order shall not affect any other provisions or applications in other circumstances, all of which shall remain in full force and effect.

Section 5.   Amendment.   In addition, but subject, to any other manner herein provided for the amendment of this Declaration, the covenants, restrictions, easements, charges and liens of this Declaration may be amended, changed or added to at any time and from time to time upon the execution and recordation of an instrument executed by Declarant, for so long as it or its affiliate holds title to any Lot or Unit affected by this Declaration; or alternatively, by an instrument signed by the President of the Community Association, attested to by its Secretary and certifying that the amendment set forth in the instrument was adopted by a vote of at least 66-2/3% of the Owners at a duly called meeting thereof (and not through their Voting Members), provided that so long as Declarant or its affiliates is the Owner of any Lot affected by this Declaration, Declarant's consent must be obtained if such amendment, in the sole opinion of Declarant, affects its interest.   In the event Island Developers, Ltd. is not Declarant, no amendment may be made

- 25 -

RE: 13008/02077

which, in the opinion of Island Developers, Ltd. adversely affects its interest without its consent. The foregoing sentence may not be amended.

Section 6. **Conflict.** This Declaration shall take precedence over conflicting provisions in the Articles of Incorporation and By-Laws of the Association and the Articles shall take precedence over the By-Laws.

Section 7. **Effective Date.** This Declaration shall become effective upon its recordation in the Public Records of Dade County, Florida.

Section 8. **Standards for Consent, Approval, Completion, Other Action and Interpretation.** Whenever this Declaration shall require the consent, substantial completion, or other action by the Declarant or its affiliates, the Community Association or the Architectural Control Committee, such consent, approval or action may be withheld in the sole and unfettered discretion of the party requested to give such consent or approval or take such action, and all matters required to be completed or substantially completed by the Declarant or its affiliates, the Community Association or the Committee shall be deemed so completed or substantially completed when such matters have been completed or substantially completed in the reasonable opinion of the Declarant, Community Association or Committee, as appropriate. This Declaration shall be interpreted by the Board of Directors and an opinion of counsel of the Community Association that a particular interpretation is not unreasonable shall conclusively establish the validity of such interpretation.

Section 9. **Easements.** Should the intended creation of any easement provided for in this Declaration fail by reason of the fact that at the time of creation there may be no grantee in being having the capacity to take and hold such easement, then any such grant of easement deemed not to be so created shall nevertheless be considered as having been granted directly to the Association as agent for such intended grantees for the purpose of allowing the original party or parties to whom the easements were originally to have been granted the benefit of such easement and the Owners designate hereby the Declarant and the Association (or either of them) as their lawful attorney-in-fact to execute any instrument on such Owners' behalf as may hereafter be required or deemed necessary for the purpose of later creating such easement as it was intended to have been created herein. Formal language of grant or reservation with respect to such easements, as appropriate, is hereby incorporated in the easement provisions hereof to the extent not so recited in some or all of such provisions.

Section 10. **Litigation.** No judicial or administrative proceeding shall be commenced or prosecuted by the Association unless same is approved by a vote of seventy-five percent (75%) of the Members through their respective Voting Members. In the case of such a vote, and notwithstanding anything contained in this Declaration or the Articles of Incorporation or By-Laws of the Association to the contrary, the Voting Members shall not vote in favor of bringing or prosecuting any such proceeding unless authorized to do so by a vote of seventy-five percent (75%) of all members of the Neighborhood Association represented by the Voting Member. This Section 10 shall not apply, however, to (i) actions brought by the Association to enforce the provisions of this Declaration (including, without limitation, the foreclosure of liens), (ii) the imposition of personal assessments as provided in Article VII hereof, (iii) proceedings involving challenges to ad valorem taxation or (iv) counterclaims brought by the Association in proceedings instituted against

- 26 -

REC. 13008 PG 2078

it. Notwithstanding the provisions of Section 5 of this Article, this Section 10 shall not be amended unless such amendment is made by the Declarant or is approved by the percentage votes, and pursuant to the same procedures, necessary to institute proceedings as provided above.

Section 11.  Covenants Running with the Land.  Anything to the contrary herein notwithstanding and without limiting the generality (and subject to the limitations) of Section 1 hereof, it is the intention of all parties affected hereby (and their respective heirs, personal representatives, successors and assigns) that these covenants and restrictions shall run with the land and with title to the Properties.  Without limiting the generality of Section 4 hereof, if any provision or application of this Declaration would prevent this Declaration from running with the land as aforesaid, such provision and/or application shall be judicially modified, if at all possible, to come as close as possible to the intent of such provision or application and then be enforced in a manner which will allow these covenants and restrictions to so run with the land; but if such provision and/or application cannot be so modified, such provision and/or application shall be unenforceable and considered null and void in order that the paramount goal of the parties affected hereby (that these covenants and restrictions run with the land as aforesaid) be achieved.

Section 12.  Limitation on Community Association.  Anything in this Declaration to the contrary notwithstanding, the existence or exercise of any easement, right, power, authority, privilege or duty of the Community Association as same pertains to any condominium located within Fisher Island which would cause the Community Association to be subject to Chapter 718, Florida Statutes, or any related administrative rules or regulations, shall be null, void and of no effect to the extent, but only to the extent, that such existence or exercise is finally determined by a court or administrative hearing officer of competent jurisdiction (after all appellate rights have been exercised or waived) to subject the Community Association to said Chapter 718.  It is the intent of this provision that the Community Association not be deemed to be a condominium association, nor the Common Areas be deemed to be common elements of any such condominium.

EXECUTED as of the date first above written.

Signed, sealed and delivered in the presence of:

ISLAND DEVELOPERS, LTD.

By: FISHER ISLAND ASSOCIATES, LTD., a Florida limited partnership, General Partner of ISLAND DEVELOPERS, LTD.

By: _____
General Partner
of FISHER ISLAND
ASSOCIATES, LTD.

- 27 -



RE: 13008 2079

By: FID COMPANY, INC., a
Florida corporation,
General Partner of
FISHER ISLAND ASSOCI-
ATES, LTD.

By: _____
President

[SEAL]

By: NUBEN REALTY COMPANY, a New
Jersey corporation, General
Partner of ISLAND DEVEL-
OPERS, LTD.

By: _____
President

STATE OF FLORIDA )
) SS:
COUNTY OF DADE )

The foregoing Declaration was acknowledged before me
this ___ day of _____, 19__ by _____, as General
Partner of Fisher Island Associates, Ltd., a Florida limited
partnership which is General Partner of Island Developers, Ltd.,
a Florida limited partnership, on behalf of Island Developers,
Ltd.

_____
NOTARY PUBLIC
State of Florida at Large

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA,
MY COMMISSION EXPIRES JAN. 28, 1990.

STATE OF FLORIDA )
) SS:
COUNTY OF DADE )

The foregoing Declaration was acknowledged before me
this ___ day of _____, 19__ by _____,
_____ President of FID Company, Inc., a Florida
corporation which is General Partner of Fisher Island Associates,
Ltd., a Florida limited partnership which is General Partner of
Island Developers, Ltd., a Florida limited partnership, on behalf
of Island Developers, Ltd.

_____
NOTARY PUBLIC
State of Florida at Large

My Commission Expires:

NOTARY PUBLIC, STATE OF FLORIDA,
MY COMMISSION EXPIRES JAN. 28, 1990.

- 28 -

REC: 130082080

## CONSENT OF MORTGAGEE

THIS CONSENT is given this 26 day of AUGUST , 1986 on behalf of IRVING TRUST COMPANY OF NEW YORK, a New York Trust Company ("Mortgagee"), being the owner and holder of that certain mortgage given by ISLAND DEVELOPERS, LTD., a Florida limited partnership ("Mortgagor") recorded August 27, 1984 in Official Records Book 12249, Page 868, of the Public Records of Dade County, Florida.

WHEREAS, Mortgagor has requested Mortgagee to subordinate its interest in the mortgaged properties to the terms, conditions, easements and other provisions of, and consent to, the recording of the foregoing Master Covenants for Fisher Island (the "Declaration").

NOW, THEREFORE, Mortgagee consents to the recordation of the Declaration and subordinates its interest in the mortgaged properties to the terms, conditions, easements and other provisions set forth in the Declaration. Notwithstanding the foregoing subordination, Mortgagee's lien on the property shall be superior to the lien for assessments granted to the Association as provided in the Declaration.

Mortgagee makes no warranty or any representation of any kind or nature concerning the Declaration, any of its terms or provisions, or the legal sufficiency thereof, and disavows any such warranty or representation as well as any participation in the development of Fisher Island, and does not assume and shall not be responsible for any of the obligations or liabilities of the developer contained in the Declaration or other documents issued in connection with the promotion of Fisher Island. None of the representations contained in the aforesaid documents shall be deemed to have been made by Mortgagee, nor shall they be construed to create any obligation on Mortgagee to any person relying thereon.

Made as of the day and year first above written.

Signed, sealed and delivered        IRVING TRUST COMPANY OF NEW YORK
in the presence of:

_____           By: _____

_____           Attest: _____

                                    (Corporate Seal)
                                    Assistant Secretary

STATE OF New York   )
                    )  SS:
COUNTY OF New York  )

The foregoing instrument was acknowledged before me this 26 day of August , 1986, by _____ and _____ as _____ and _____, respectively, of IRVING TRUST COMPANY OF NEW YORK, a New York Trust Company, on behalf of the Company.

_____
Notary Public

My Commission Expires:

CLAIRE D. VAN COTT
Notary Public, State of New York
No. 43-4751699
Qualified in Richmond County
Commission Expires March 30, 19__

RE: 13008 PG 2081

EXHIBIT "A"

**LEGAL DESCRIPTION:**

Bayside Village Condominium is a part of Tract C of Lindisfarne on Fisher Island-Section 1 , according to the Plat thereof, as recorded in Plat Book 128, Page 59 of the Public Records of Dade County, Florida, more particularly described as follows:

Beginning at the Southwesterly corner of Commercial Subdivision of Harbor Terminal, on Fisher Island, recorded in Plat Book 23 at Page 67 of the Public Records of Dade County, Florida, run N. 88° 04' 00" E. along the Southerly line of "D" Street as shown on said plat, a distance of 378.63 feet to a point;  Thence run S. 23° 25' 14" W., a distance of 248.40 feet to a point;  Thence run S. 23° 34' 46" E., a distance of 105.00 feet to a point; Thence run S. 39° 10' 00" W., a distance of 259.56 feet to the Southerly Deed Line of Fisher Island, said Deed Line being on the Northerly shore line of Norris Cut (Biscayne Bay);  Thence run N. 50° 50' 00" W. along the Southerly Deed Line of Fisher Island, along the Northerly shore line of Norris Cut (Biscayne Bay), along the water face of an existing concrete bulkhead, a distance of 854.04 feet to a point;  Thence run N. 39° 10' 00" E. along the water face of an existing concrete bulkhead, a distance of 306.66 feet to a point; Thence run N. 88° 04' 00" E. along the water face of an existing concrete bulkhead, a distance of 301.61 feet to the Westerly line of Fifth Street, as said street is shown on aforementioned Commercial Subdivision of Harbor Terminal;  Thence run S. 1° 56' 00" E. along the Westerly line of Fifth Street, a distance of 274.86 feet to the Point of Beginning (P.O.B.).  Described tract contains 340,497 square feet, more or less, or 7.82 acres, more or less.

( CONTINUED ON PAGE 2)

REC. 13008 PG 2082

- together with -

All portions of the property commonly known as
Fisher Island, owned by Declarant on the date hereof
and described as "Common Areas" in Section I(e) of the
foregoing Declaration, excluding therefrom, however,
all public utility installations, lines and equipment
and subject to Declarant's right, under Section I(o) of
the Declaration, to more specifically describe and
identify Common Areas by Supplemental Declaration
recorded after the date hereof (which description and
identifications may, but need not, have the effect of
excluding from the Common Areas property which would
currently be included therein by virtue of the
generality of Section I(e) as aforesaid).

Exhibit A

Page 2

EXHIBIT H

IN THE 11TH JUDICIAL CIRCUIT
COURT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

FISHER    ISLAND    COMMUNITY          Case No: 08-004519 CA 42
ASSOCIATION, INC.,
            Plaintiff,

v.                                         FILED

ELIZABETH HAZAN,                          JUL - 1 2019
            Defendant.
_____/                CLERK, CIRCUIT & COUNTY COURTS

### ORDER ON DEFENDANT'S MOTION TO DISMISS AND
### MOTION FOR PROTECTIVE ORDER

THIS CAUSE having come before the Court upon Defendant, ELIZABETH HAZAN'S

MOTION TO DISMISS AND MOTION FOR PROTECTIVE ORDER, the Court having

reviewed the file, and heard argument of counsel, it is hereby;

ORDERED AND ADJUDGED that Defendant's Motion is GRANTED/DENIED. It is

further;

ORDERED AND ADJUDGED *Motion to dismiss granter*
*With Prejudice as stated on the record.*

_____

DONE AND ORDERED in MIAMI-DADE COUNTY, Florida, this ___ day of

JUL - 1 2019 , 2019.

CONFORMED COPY

JUL 0 1 2019                          Honorable Rodney Smith
JACQUELINE HOGAN SCOLA               Circuit Court Judge
(CS)                                 Hogan Scola

Copies furnished:
Guy M. Shir, Esq., 2295 N.W. Corporate Blvd., Suite 140, Boca Raton, FL 33431 Michael Mayer, Esq.,
PeytonBolin, PL, 3343 W. Commercial Blvd., Suite 100, Fort Lauderdale, FL  33309,
michael@peytonbolin.com; foreclosure@peytonbolin.com  Signed and Dated

SMART ZOBRS, ESQ.                                        JUL 01 2019         ORIGINAL
Marci Peyta, Esq                                    Judge Jacqueline Hogan Scola    JUDGE JACQUELINE HOGAN SCOLA
1481.000                              EXHIBIT
Nately Gutierrez, Esq                    D

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and finalize several notices of filing affidavits in support of our Final Judgment.  0.30 | Joseph Giannell | $195.00 | $58.50 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and finalize Motion for Final Judgment after Breach and all correspondence exhibits.  0.40 | Joseph Giannell | $195.00 | $78.00 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review case status.  0.20 | Nate Handley | $75.00 | $15.00 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Update Affidavit Spreadsheet  0.10 | Christen Risteen | $75.00 | $7.50 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review court docket  0.10 | Christen Risteen | $75.00 | $7.50 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review executed Affidavit of Reasonable Attorneys' Fees  0.10 | Christen Risteen | $75.00 | $7.50 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review executed Affidavit of Fees and Costs by Attorney of Record  0.10 | Christen Risteen | $75.00 | $7.50 |
| 12/03/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review executed Affidavit of Amounts Due and Owing  0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/30/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Update Affidavit Spreadsheet  0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/30/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Notarize Affidavit of Reasonable Attorneys' Fees  0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████  0.20 | Christen Risteen | $75.00 | $15.00 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████  0.30 | Joseph Giannell | $195.00 | $58.50 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and finalize Affidavit of Attorney's Time.  0.20 | Joseph Giannell | $195.00 | $39.00 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Notarize Affidavit of Fees and Costs by Attorney of Record  0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████  0.10 | Christen Risteen | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Revise and review Affidavit of Amounts Due and Owing<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: ▉▉▉▉▉▉▉▉▉<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Affidavit of Reasonable Attorneys' Fees<br>0.20 | Christen Risteen | $75.00 | $15.00 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Affidavit of Fees and Costs by Attorney of Record<br>0.20 | Christen Risteen | $75.00 | $15.00 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Review expense report<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: ▉▉▉▉▉▉▉▉▉<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Affidavit of Amounts Due and Owing<br>0.20 | Christen Risteen | $75.00 | $15.00 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Notice of Filing Affidavit of Reasonable Attorneys' Fees<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Notice of Filing Affidavit of Fees and Costs by Attorney of Record<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Notice of Filing Affidavit of Amounts Due and Owing<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Update Affidavit Spreadsheet<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: ▉▉▉▉▉▉▉▉▉<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Review ledger<br>0.30 | Christen Risteen | $75.00 | $22.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Review file<br>0.30 | Christen Risteen | $75.00 | $22.50 |
| 11/27/ 2012 | FICA-6913 Valencia Dr- Collections | Legal Services: Review file in preparation for Motion for Final Judgment.<br>0.50 | Nate Handley | $75.00 | $37.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████<br><br>0.10 | Nate Handley | $75.00 | $7.50 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare & Review Motion for Final Judgment after Breach of Stipulation.<br><br>0.80 | Nate Handley | $75.00 | $60.00 |
| 11/27/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████<br><br>0.20 | Nate Handley | $75.00 | $15.00 |
| 11/14/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review and Update<br><br>0.20 | Patty Browning | $75.00 | $15.00 |
| 11/14/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare for Submission to Court, Scan and Save - Notice of Serving Order for Sub of Counsel<br><br>0.20 | Patty Browning | $75.00 | $15.00 |
| 11/14/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft Notice of Serving Order for Substitution of Counsel.<br><br>0.40 | Angela Pecoraro | $75.00 | $30.00 |
| 11/14/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review executed Order for Substitution of Counsel.<br><br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 11/14/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review order of substitution.<br><br>0.10 | Joseph Giannell | $195.00 | $19.50 |
| 11/09/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Upload Order for Substitution of Counsel to Judge via e-courtesy.<br><br>0.20 | Angela Pecoraro | $75.00 | $15.00 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: E-serve Motion for Substitution of Counsel to service list.<br><br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and finalize Motion for Substitution.<br><br>0.10 | Joseph Giannell | $195.00 | $19.50 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft Order on Motion for Substitution of Counsel.<br><br>0.30 | Angela Pecoraro | $75.00 | $22.50 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review service list and Florida Bar website for correct e-mail addresses for e-service.<br><br>0.20 | Angela Pecoraro | $75.00 | $15.00 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft Motion for Substitution of Counsel.<br><br>0.40 | Angela Pecoraro | $75.00 | $30.00 |
| 11/05/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review executed Stipulation for Substitution of Counsel.<br><br>0.10 | Angela Pecoraro | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 10/30/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review case docket. 0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 10/30/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Pull and review Accurint person and asset search for Elizabeth Hazan. 0.50 | Angela Pecoraro | $75.00 | $37.50 |
| 10/29/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████ 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 10/29/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file regarding curing breach. 0.40 | Joseph Giannell | $195.00 | $78.00 |
| 10/25/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft Stipulation for Substitution of Counsel and e-mail same to previous counsel for signature. 0.30 | Angela Pecoraro | $75.00 | $22.50 |
| 10/25/2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Review e-mail correspondence(s) re: breach of Stipulation. 0.20 | Nate Handley | $75.00 | $15.00 |
| 10/19/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review status of bank foreclosure based on possible additional breaches from defendant. 0.50 | Joseph Giannell | $195.00 | $97.50 |
| 10/19/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft default notice to owner and her attorney regarding her failure to pay. 0.50 | Joseph Giannell | $195.00 | $97.50 |
| 10/19/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review both settlement agreement based on alleged breach. 0.60 | Joseph Giannell | $195.00 | $117.00 |
| 10/19/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review several correspondence regarding breach. 0.40 | Joseph Giannell | $195.00 | $78.00 |
| 10/18/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file, docket, and settlement agreements regarding the reopening of this matter based on a breach of stipulation. 0.70 | Joseph Giannell | $195.00 | $136.50 |
| 10/18/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████ 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 08/15/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review terms of stipulation and correspondence regarding potential breach. 0.60 | Joseph Giannell | $195.00 | $117.00 |
| 08/15/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████ 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 05/23/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review case file and docket for status update. 0.40 | Joseph Giannell | $195.00 | $78.00 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 03/19/2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review bank foreclosure docket for case status. | Angela Pecoraro | $75.00 | $15.00 |
| | | | 0.20 | | |
| | | | 64.90 | | $13,534.50 |

IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

      Plaintiff,                         CASE NO.:   08-4519 CA 42

vs.

ELIZABETH HAZAN, ET AL.,

      Defendants.

_____/

## AMENDED AFFIDAVIT OF REASONABLE ATTORNEYS' FEES

STATE OF FLORIDA
COUNTY OF BROWARD

      BEFORE ME, the undersigned authority, personally appeared Michael H. Johnson, Esq.,

who, after being duly sworn according to law, did depose and say as follows:

      1.    I am an attorney at law licensed to practice law in the State of Florida and I have

been practicing law in the State of Florida.  I am a member of the Florida Bar in good standing

with the Florida Bar.

      2.    I have reviewed the pleadings, motions, and the entire contents of the file of

Plaintiff's attorneys, PeytonBolin, PL, and have personal knowledge of same.  I have determined

that the above styled cause is a foreclosure action.

      3.    I am familiar with the actions of this type in Florida and am personally familiar

with the reasonable and customary attorney's fees with respect to same.

      4.    It is my opinion that the time and services rendered by the members of PeytonBolin,

PL were reasonable and necessary to represent adequately and appropriately Plaintiff in this cause.



5.      I am familiar with Rule 4-1.5(b) of the Rules Regulating the Florida Bar and have taken into consideration the factors set forth in such Rule for the determination of reasonable attorney's fees.

6.      I am also familiar with and have considered the dictates of the Florida Supreme Court in the case of *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985) for the determination of reasonable attorney's fees.

7.      In arriving at my opinion of the value of reasonable attorney's fees in this action, I have utilized and considered the following criteria:

a.      The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.

b.      The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

c.      The fee customarily charged in the locality for similar legal services.

d.      The amount involved and the results obtained.

e.      The time limitations imposed by the client or by the circumstances.

f.      The nature and length of the professional relationship with the client.

g.      The experience, reputation and ability of the lawyer or lawyers performing the services.

h.      Whether the fee is fixed or contingent.

8.      In my opinion, a reasonable hourly attorney rate is $250.00 per hour for partners and litigation managing attorneys within a firm, and a reasonable hourly attorney rate is $195.00 per hour for associates within a firm.

9.      In my experience, a reasonable hourly law clerk rate is $145.00 per hour.

Page 2 of 3

10.     In my experience, a reasonable hourly paralegal rate is $145.00 per hour.

11.     In my experience, a reasonable hourly legal assistant rate is $100.00 per hour.

12.     Flat fee presuit items set forth in Case Summary have a reasonable value of $545.00.

13. In my opinion, based upon the foregoing, a fee of $19,082.50 in attorneys' fees is reasonable.

14.     I charge a flat fee of $50.00 for my expert services rendered to PeytonBolin, PL in execution of this Affidavit.

FURTHER AFFIANT SAYETH NAUGHT.



Michael H. Johnson, Esq.
Florida Bar No.: 0149543

SWORN TO AND SUBSCRIBED before me this 15 day of June, 2018 by Michael H. Johnson, Esq., who has produced a Florida Driver's License as identification.

NOTARY PUBLIC, State of Florida

My Commission Expires:

ASHLEY TAVERAS
MY COMMISSION # GG 130279
EXPIRES: August 1, 2021
Bonded Thru Notary Public Underwriters

Page 3 of 3

Case 16-10389-AJC    Doc 691    Filed 06/12/18    Page 1 of 8



**ORDERED in the Southern District of Florida on June 11, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov**

In re:                                              Case No: 16-10389 AJC
                                                    Chapter 11
Liza Hazan
Debtor.            /

**ORDER CONFIRMING PLAN OF REORGANIZATION**

THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or "Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on Confirmation of Plan entered 12/13/17 Doc 580.

In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc  681  ,* (the "Ballot Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the *Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii) considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv) considered the other evidence presented at the hearing.

The only creditors who previously objected to or voted against the plan were present, and announced that they were changing their votes to support the plan or had no objection.

*Exhibit
"E"*

Case 16-10389-AJC    Doc 691    Filed 06/12/18    Page 2 of 8

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises*, 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar*, 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan. Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(1) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II through V of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

I. The Disclosure Statement Article III sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

J. Each of the Voting Classes have accepted the Plan in the requisite number of

2

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C. § 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or in connection with the Plan either have been approved by or are subject to the approval of the Bankruptcy Court, including applications for compensation and reimbursement of expenses and, therefore, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor, who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to each Class of Claims or Interests that are impaired under the Plan, including without limitation, creditors holding Unsecured Claims who will receive more on account of their Claims under this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11 U.S.C. § 1129(a)(11) are satisfied;

3

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS:**

1. The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
(A) unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
(B) at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
(i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
(ii) modification of the plan under section 1127 is not practicable; and (iii) subparagraph (C) permits the court to discharge; and (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
(i) section 522(q)(1) may be applicable to the Debtor; and (ii) there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141. . .

4

Case 16-10389-AJC   Doc 691   Filed 06/12/18   Page 5 of 8

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

5

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

**16. All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(l) To determine any tax liability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(0) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18.        Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

6

upon completion all payments required under the Plan to unsecured creditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)   Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)   The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)   The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)   During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)   Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)   Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

### 

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

7

Case 16-10389-AJC    Doc 691    Filed 06/12/18    Page 8 of 8



8

Case 16-10389-AJC    Doc 766    Filed 12/07/18    Page 1 of 12



**ORDERED in the Southern District of Florida on December 6, 2018.**

*A. Jay Cristol*

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                          Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,               Chapter 11

          Debtor.
_____/

## ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT, AND ENTER DISCHARGE TO REORGANIZED DEBTOR

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745].  The Court has further considered the following:

*Exhibit "F"*

*CASE NO. 16-10389-BKC-AJC*

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al.* [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

CASE NO. 16-10389-BKC-AJC

Having considered the record, including NLG's Objection and Opposition,[2] and finding

that due and adequate notice has been given and no additional notice is required, the Court grants

the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the

Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to

a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued

and the case shall not be re-closed at this time.

**I.      11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to
          individual debtor who has not completed all plan payments**

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered

by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A)*.

An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual

debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice
> and a hearing, the court may grant a discharge to the debtor who has
> not completed payments under the plan if –
>
> (i) the value, as of the effective date of the plan, of property
> actually distributed under the plan on account of each allowed
> unsecured claim is not less than the amount that would have been
> paid on such claim if the estate of the debtor had been liquidated
> under chapter 7 on such date;
> (ii) modification of the plan under section 1127 is not
> practicable; and
> (iii) subparagraph (C) permits the court to grant a discharge.

---

[2] Although this Court previously determined that NLG is not a creditor and has no claim against the
Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint
Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No.
16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules
same.

7. The attached Exhibit "1" is a ledger made at or near the time the amounts owed come due and are created and made by a person with knowledge as to how the amounts are generated.

8. The attached Exhibit "1" is a ledger kept in the course of a regularly conducted business activity of the Association.

9. It is the regular practice of the Association to make the attached Exhibit "1" ledger.

10. Based on the attached Exhibit "1" and calculated interest, the Association is owed a total of $366,750.02.

11. Association engaged its attorney of record and in doing so agreed and obligated itself to pay said attorneys their fees and costs for their services.

FURTHER AFFIANT SAITH NOUGHT.

By: _____

The foregoing was acknowledged before me this _11_ day of _June_ , 2018 in Miami-Dade County, Florida

( ✓ )  who is personally known to me, or
(   )  who has produced  as identification, and
who ( ) did ( ) did not take an oath.

GENEOVY REYES
Notary Public - State of Florida
Commission # FF 993461
My Comm. Expires May 17, 2020
Bonded through National Notary Assn.

_____
NOTARY PUBLIC, State of Florida
My Commission Expires: 05/17/2020 .

```
System:      6/11/2018   10:41:37 AM         Fisher Island Community Associ              Page:   1
User Date:   6/11/2018                     TRANSACTION BY CUSTOMER INQUIRY REPORT        User ID: carola
                                                 Receivables Management

Customer ID: 11213                    Elizabeth Hazan

Ranges:                      From:                        To:
  Document Number            First                        Last
  Document Date              First                        Last

Sorted By: Document Date                         Include:  Open

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID |
|---|---|---|---|---|---|---|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | Amount Remaining |
| Open | SLS | 1ST Q 09 - 617 | | 1/1/2009 | SLSTE00000019 | 1ST Q 09 | Z-US$ |
| 12/2/2008 | | 1ST Q 09 - 617 | | $0.00 | $0.00 | $5,409.00 | $3,109.72 |
| Open | SLS | 2ND Q 09 - 978 | | 4/1/2009 | SLSTE00000024 | 2ND Q ASSESS | Z-US$ |
| 3/2/2009 | | 2ND Q 09 - 978 | | $0.00 | $0.00 | $5,409.00 | $5,409.00 |
| Open | SLS | Q03090605 | | 7/1/2009 | SLSTE00000027 | 3RD Q 2009 | Z-US$ |
| 6/1/2009 | | Q03090605 | | $0.00 | $0.00 | $5,409.00 | $5,409.00 |
| Open | SLS | Q04090603 | | 10/1/2009 | SLSTE00000029 | 0409Q-C | Z-US$ |
| 9/1/2009 | | Q04090603 | | $0.00 | $0.00 | $5,409.00 | $5,409.00 |
| Open | SLS | Q01101270 | | 1/1/2010 | SLSTE00000049 | 1STQ10 | Z-US$ |
| 12/2/2009 | | Q01101270 | | $0.00 | $0.00 | $5,450.00 | $5,450.00 |
| Open | SLS | QA0000578 | | 4/1/2010 | SLSTE00000069 | 2Q10 | Z-US$ |
| 3/2/2010 | | QA0000578 | | $0.00 | $0.00 | $5,450.00 | $5,450.00 |
| Open | SLS | QA0001934 | | 7/1/2010 | SLSTE00000096 | 3Q 10A | Z-US$ |
| 6/1/2010 | | QA0001934 | | $0.00 | $0.00 | $5,450.00 | $5,450.00 |
| Open | SLS | QA0002612 | | 10/1/2010 | SLSTE00000122 | 4Q 10 | Z-US$ |
| 9/1/2010 | | QA0002612 | | $0.00 | $0.00 | $5,450.00 | $5,450.00 |
| Open | SLS | QA0008020 | | 7/1/2012 | SLSTE00000330 | 3RD Q 12 | Z-US$ |
| 6/1/2012 | | QA0008020 | | $0.00 | $0.00 | $5,722.50 | $3,815.00 |
| Open | SLS | INV1007091 | | 8/5/2012 | RMSLS00001083 | 070620120DRR | Z-US$ |
| 7/6/2012 | | E.Hazan speeding 3/25 & 4/2 | | $0.00 | $0.00 | $200.00 | $200.00 |
| Open | DR | DEBIT1000436 | | 8/31/2012 | RMSLS00001098 | 8/12PPI | Z-US$ |
| 8/1/2012 | | 8/12 P. PLAN INTEREST | | $0.00 | $0.00 | $295.51 | $295.51 |
| Open | SLS | QA0008695 | | 10/1/2012 | SLSTE00000359 | 4Q12MS | Z-US$ |
| 9/1/2012 | | QA0008695 | | $0.00 | $0.00 | $5,722.50 | $5,722.50 |
| Open | DR | DEBIT1000444 | | 10/1/2012 | RMSLS00001121 | 0912PPINT | Z-US$ |
| 9/1/2012 | | 09/12 P.Plan Interest | | $0.00 | $0.00 | $273.62 | $273.62 |
| Open | DR | DEBIT1000469 | | 10/31/2012 | RMSLS00001139 | 1012PPINT | Z-US$ |
| 10/1/2012 | | 10/12 P.Plan Interest | | $0.00 | $0.00 | $269.81 | $269.81 |
| Open | DR | DEBIT1000481 | | 12/1/2012 | RMSLS00001157 | 1112PPI | S-US$ |
| 11/1/2012 | | 11/12 P. Plan Interest | | $0.00 | $0.00 | $248.55 | $248.55 |
| Open | SLS | LEG11213112012 | | 12/20/2012 | SLSTE00000378 | 11202012LEG | Z-US$ |
| 11/20/2012 | | LEG11213112012 | | $0.00 | $0.00 | $1,210.85 | $1,210.85 |
| Open | DR | DEBIT1000488 | | 12/31/2012 | RMSLS00001178 | 1212PPINT | Z-US$ |
| 12/1/2012 | | 12/12 P.Plan Interest | | $0.00 | $0.00 | $243.71 | $243.71 |

```
System:     6/11/2018  10:41:37 AM              Fisher Island Community Associ          Page:    2
User Date:  6/11/2018                        TRANSACTION BY CUSTOMER INQUIRY REPORT      User ID: carola
                                                  Receivables Management

Customer ID:  11213                 Elizabeth Hazan

* Voided

Origin    Type  Document Number    Check Number      Due Date    Audit Trail Code   Batch ID              Currency ID
----------------------------------------------------------------------------------------------------------------------
Doc Date        Description                      Discount Amount     Writeoff Amount      Document Amount     Amount Remaining

Open    SLS   QA0009375                           1/1/2013    SLSTE00000385     1ST 2013             %-US$
12/2/2012     QA0009375                             $0.00             $0.00            $5,722.50                      $5,722.50

Open    SLS   LC000879                            2/17/2013   SLSTE00000399     011820130DLATE        %-US$
1/18/2013     LC000879                              $0.00             $0.00              $286.12                       $286.12

Open    SLS   FCHRG1003039                        3/9/2013    SLSTE00000405     0212FC               %-US$
2/7/2013      FCHRG1003039                          $0.00             $0.00              $845.95                       $845.95

Open    SLS   LC1121302212013                     3/23/2013   SLSTE00000408     022120130DLEG         %-US$
2/21/2013     LC1121302212013                       $0.00             $0.00            $1,575.00                      $1,575.00

Open    SLS   QA0010051                           4/1/2013    SLSTE00000409     2ND Q 13             %-US$
3/2/2013      QA0010051                             $0.00             $0.00            $5,722.50                      $5,722.50

Open    SLS   FCHRG1003060                        4/3/2013    SLSTE00000411     0313FIN              %-US$
3/4/2013      FCHRG1003060                          $0.00             $0.00              $845.95                       $845.95

Open    SLS   LEG1121303072013                    4/6/2013    SLSTE00000417     03072013LEGHA%        %-US$
3/7/2013      LEG1121303072013                      $0.00             $0.00            $2,396.90                      $2,396.90

Open    SLS   LEG1121303252513                    4/24/2013   SLSTE00000424     03252013LEG          %-US$
3/25/2013     LEG1121303252513                      $0.00             $0.00               $58.50                        $58.50

Open    SLS   FCHRG1003076                        5/2/2013    SLSTE00000427     0413FC               %-US$
4/2/2013      FCHRG1003076                          $0.00             $0.00              $845.95                       $845.95

Open    SLS   LC000946                            5/17/2013   SLSTE00000429     04172013LATE          %-US$
4/17/2013     LC000946                              $0.00             $0.00              $286.12                       $286.12

Open    SLS   FCHRG1003089                        6/5/2013    SLSTE00000439     0513FC               %-US$
5/6/2013      FCHRG1003089                          $0.00             $0.00              $931.79                       $931.79

Open    SLS   QA0010720                           7/1/2013    SLSTE00000433     3Q 13                %-US$
6/1/2013      QA0010720                             $0.00             $0.00            $5,544.12                      $5,544.12

Open    SLS   FCHRG1003102                        7/5/2013    SLSTE00000440     0613FC               %-US$
6/5/2013      FCHRG1003102                          $0.00             $0.00              $931.79                       $931.79

Open    SLS   FCHRG1003115                        8/1/2013    SLSTE00000444     0713FC               %-US$
7/2/2013      FCHRG1003115                          $0.00             $0.00              $931.79                       $931.79

Open    SLS   LC001000                            8/18/2013   SLSTE00000447     0713LF               %-US$
7/19/2013     LC001000                              $0.00             $0.00              $277.21                       $277.21

Open    SLS   LG000263                            8/18/2013   SLSTE00000446     LEGAL                %-US$
7/19/2013     LG000263                              $0.00             $0.00            $3,244.34                      $3,244.34

Open    SLS   FCHRG1003124                        9/5/2013    SLSTE00000452     0813FC               %-US$
8/6/2013      FCHRG1003124                          $0.00             $0.00              $931.79                       $931.79

Open    SLS   LG000269                            9/21/2013   SLSTE00000454     0713LG               %-US$
8/22/2013     LG000269                              $0.00             $0.00               $75.00                        $75.00

Open    SLS   QA0011391                           10/1/2013   SLSTE00000455     4Q 13                %-US$
9/1/2013      QA0011391                             $0.00             $0.00            $5,544.12                      $5,544.12
```

View Document - Miami-Dade County OCS

1/5/26, 1:08

```
System:    6/11/2018   10:41:37 AM        Fisher Island Community Associ        Page:    3
User Date: 6/11/2018                    TRANSACTION BY CUSTOMER INQUIRY REPORT    User ID: carola
                                              Receivables Management

Customer ID: 11213              Elizabeth Hazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open 9/4/2013 | SLS | FCHRG1003135 FCHRG1003135 | | 10/4/2013 $0.00 | SLSTE00000457 $0.00 | 913FC | $1,014.95 | Z-US$ | $1,014.95 |
| Open 9/12/2013 | SLS | LG000275 LG000275 | | 10/12/2013 $0.00 | SLSTE00000462 $0.00 | 09.13 LEGAL | $500.96 | Z-US$ | $500.96 |
| Open 10/4/2013 | SLS | FCHRG1003151 FCHRG1003151 | | 11/3/2013 $0.00 | SLSTE00000468 $0.00 | 1013FC | $1,014.95 | Z-US$ | $1,014.95 |
| Open 10/18/2013 | SLS | LC001049 LC001049 | | 11/17/2013 $0.00 | SLSTE00000470 $0.00 | 4QLC | $277.21 | Z-US$ | $277.21 |
| Open 10/30/2013 | SLS | LG000281 LG000281 | | 11/29/2013 $0.00 | SLSTE00000472 $0.00 | 1013LG | $835.40 | Z-US$ | $835.40 |
| Open 11/8/2013 | SLS | FCHRG1003170 FCHRG1003170 | | 12/8/2013 $0.00 | SLSTE00000477 $0.00 | 113FC | $1,098.11 | Z-US$ | $1,098.11 |
| Open 11/30/2013 | SLS | LG000289 LG000289 | | 12/30/2013 $0.00 | SLSTE00000487 $0.00 | 1113LG | $552.00 | Z-US$ | $552.00 |
| Open 12/2/2013 | SLS | LG000296 LG000296 | | 1/1/2014 $0.00 | SLSTE00000489 $0.00 | 1213LG | $3,039.33 | Z-US$ | $3,039.33 |
| Open 12/2/2013 | SLS | QA0012069 QA0012069 | | 1/1/2014 $0.00 | SLSTE00000478 $0.00 | 1 Q 14 | $5,956.05 | Z-US$ | $5,956.05 |
| Open 12/4/2013 | SLS | FCHRG1003191 FCHRG1003191 | | 1/3/2014 $0.00 | SLSTE00000486 $0.00 | 1213FC | $1,098.11 | Z-US$ | $1,098.11 |
| Open 1/10/2014 | SLS | FCHRG1003203 FCHRG1003203 | | 2/9/2014 $0.00 | SLSTE00000497 $0.00 | 0114FC | $1,179.25 | Z-US$ | $1,179.25 |
| Open 1/16/2014 | SLS | LC001098 LC001098 | | 2/15/2014 $0.00 | SLSTE00000498 $0.00 | 1Q14LC | $297.80 | Z-US$ | $297.80 |
| Open 1/29/2014 | SLS | LG000301 LG000301 | | 2/28/2014 $0.00 | SLSTE00000499 $0.00 | 0114LG | $510.00 | Z-US$ | $510.00 |
| Open 2/6/2014 | SLS | FCHRG1003220 FCHRG1003220 | | 3/8/2014 $0.00 | SLSTE00000500 $0.00 | 0214FC | $1,268.59 | Z-US$ | $1,268.59 |
| Open 2/28/2014 | SLS | LG000307 LG000307 | | 3/30/2014 $0.00 | SLSTE00000513 $0.00 | 02/14 LEG | $58.50 | Z-US$ | $58.50 |
| Open 3/2/2014 | SLS | QA0012748 QA0012748 | | 4/1/2014 $0.00 | SLSTE00000508 $0.00 | 2ND Q 14 | $5,956.05 | Z-US$ | $5,956.05 |
| Open 3/6/2014 | SLS | FCHRG1003244 FCHRG1003244 | | 4/5/2014 $0.00 | SLSTE00000514 $0.00 | 03.14FC | $1,268.59 | Z-US$ | $1,268.59 |
| Open 3/31/2014 | SLS | LG000311 LG000311 | | 4/30/2014 $0.00 | SLSTE00000518 $0.00 | 0314LEG | $141.00 | Z-US$ | $141.00 |
| Open 4/3/2014 | SLS | FCHRG1003257 FCHRG1003257 | | 5/3/2014 $0.00 | SLSTE00000517 $0.00 | 0414FC | $1,268.59 | Z-US$ | $1,268.59 |

```
System:    6/11/2018   10:41:37 AM        Fisher Island Community Associ          Page:   4
User Date: 6/11/2018                   TRANSACTION BY CUSTOMER INQUIRY REPORT      User ID: carola
                                            Receivables Management

Customer ID: 11213              Elizabeth Mazan

' Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|---|---|---|---|---|---|---|---|---|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LC001153 | | 5/16/2014 | SLSTE00000525 | 2Q14LC | | 1-US$ | |
| 4/16/2014 | | LC001153 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | INV1009303 | | 5/30/2014 | RMSLS00001526 | 414 | | 1-US$ | |
| 4/30/2014 | | 04/14 LEGAL | | $0.00 | $0.00 | | $161.50 | | $161.50 |
| Open | SLS | FCHRG1003265 | | 6/4/2014 | SLSTE00000529 | 0514FC | | 1-US$ | |
| 5/5/2014 | | FCHRG1003265 | | $0.00 | $0.00 | | $1,268.59 | | $1,268.59 |
| Open | SLS | INV1009361 | | 6/30/2014 | RMSLS00001543 | 05.14 | | 1-US$ | |
| 5/31/2014 | | 05/14 Legal | | $0.00 | $0.00 | | $112.00 | | $112.00 |
| Open | SLS | QA0013422 | | 7/1/2014 | SLSTE00000530 | 3Q14 | | 1-US$ | |
| 6/1/2014 | | QA0013422 | | $0.00 | $0.00 | | $5,956.05 | | $5,956.05 |
| Open | SLS | FCHRG1003270 | | 7/6/2014 | SLSTE00000532 | 0614FC | | 1-US$ | |
| 6/6/2014 | | FCHRG1003270 | | $0.00 | $0.00 | | $1,357.93 | | $1,357.93 |
| Open | SLS | LG000313 | | 7/30/2014 | SLSTE00000542 | 0614LG | | 1-US$ | |
| 6/30/2014 | | LG000313 | | $0.00 | $0.00 | | $185.00 | | $185.00 |
| Open | SLS | FCHRG1003276 | | 8/2/2014 | SLSTE00000538 | 0714FC | | 1-US$ | |
| 7/3/2014 | | FCHRG1003276 | | $0.00 | $0.00 | | $1,357.93 | | $1,357.93 |
| Open | SLS | LC001210 | | 8/16/2014 | SLSTE00000543 | 0714LC | | 1-US$ | |
| 7/17/2014 | | LC001210 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | FCHRG1003295 | | 9/5/2014 | SLSTE00000549 | 814FC | | 1-US$ | |
| 8/6/2014 | | FCHRG1003295 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | QA0014089 | | 10/1/2014 | SLSTE00000551 | 4Q 14 | | 1-US$ | |
| 9/1/2014 | | QA0014089 | | $0.00 | $0.00 | | $5,956.05 | | $5,956.05 |
| Open | SLS | FCHRG1003317 | | 10/5/2014 | SLSTE00000557 | 0914FC | | 1-US$ | |
| 9/5/2014 | | FCHRG1003317 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LG000326 | | 10/30/2014 | SLSTE00000561 | 0914LG | | 1-US$ | |
| 9/30/2014 | | LG000326 | | $0.00 | $0.00 | | $243.00 | | $243.00 |
| Open | SLS | FCHRG1003332 | | 11/1/2014 | SLSTE00000560 | 1014FC | | 1-US$ | |
| 10/2/2014 | | FCHRG1003332 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LC001256 | | 11/16/2014 | SLSTE00000566 | 4Q14LC | | 1-US$ | |
| 10/17/2014 | | LC001256 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | LG000332 | | 11/30/2014 | SLSTE00000567 | 1014LG | | 1-US$ | |
| 10/31/2014 | | LG000332 | | $0.00 | $0.00 | | $157.50 | | $157.50 |
| Open | SLS | FCHRG1003338 | | 12/5/2014 | SLSTE00000568 | 1114FC | | 1-US$ | |
| 11/5/2014 | | FCHRG1003338 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LG000338 | | 12/30/2014 | SLSTE00000576 | 11.14LG | | 1-US$ | |
| 11/30/2014 | | LG000338 | | $0.00 | $0.00 | | $58.50 | | $58.50 |
| Open | SLS | QA0014762 | | 1/1/2015 | SLSTE00000573 | 1Q15 | | 1-US$ | |
| 12/2/2014 | | QA0014762 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |

```
System:    6/11/2018   10:41:37 AM          Fisher Island Community Associ          Page:    5
User Date: 6/11/2018                      TRANSACTION BY CUSTOMER INQUIRY REPORT     User ID: carola
                                              Receivables Management

Customer ID:  11213              Elizabeth Hazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | Amount Remaining |
| Open 12/3/2014 | SLS | FCHRG1003347 FCHRG1003347 | | 1/2/2015 $0.00 | SLSTE00000575 $0.00 | 12.14FC | $1,536.66 | I-US$ $1,536.66 |
| Open 1/7/2015 | SLS | FCHRG1003363 FCHRG1003363 | | 2/6/2015 $0.00 | SLSTE00000582 $0.00 | 0115FC | $1,536.66 | I-US$ $1,536.66 |
| Open 1/16/2015 | SLS | LC001327 LC001327 | | 2/15/2015 $0.00 | SLSTE00000589 $0.00 | 0115LC | $314.65 | I-US$ $314.65 |
| Open 1/31/2015 | SLS | INV1010077 01/15 LEGAL FEES | | 3/2/2015 $0.00 | RMSLS00001667 $0.00 | 0115LG | $112.00 | I-US$ $112.00 |
| Open 2/6/2015 | SLS | FCHRG1003383 FCHRG1003383 | | 3/8/2015 $0.00 | SLSTE00000590 $0.00 | 0215FC | $1,631.06 | I-US$ $1,631.06 |
| Open 3/2/2015 | SLS | QA0015431 QA0015431 | | 4/1/2015 $0.00 | SLSTE00000598 $0.00 | 2Q15 | $6,293.04 | I-US$ $6,293.04 |
| Open 3/5/2015 | SLS | FCHRG1003408 FCHRG1003408 | | 4/4/2015 $0.00 | SLSTE00000601 $0.00 | 0315FC | $1,631.06 | I-US$ $1,631.06 |
| Open 3/31/2015 | SLS | LG000348 LG000348 | | 4/30/2015 $0.00 | SLSTE00000613 $0.00 | 0315LG | $379.50 | I-US$ $379.50 |
| Open 4/2/2015 | SLS | FCHRG1003422 FCHRG1003422 | | 5/2/2015 $0.00 | SLSTE00000608 $0.00 | 0415FC | $1,631.06 | I-US$ $1,631.06 |
| Open 4/16/2015 | SLS | LC001393 LC001393 | | 5/16/2015 $0.00 | SLSTE00000615 $0.00 | 2QLC | $314.65 | I-US$ $314.65 |
| Open 5/5/2015 | SLS | FCHRG1003434 FCHRG1003434 | | 6/4/2015 $0.00 | SLSTE00000616 $0.00 | 0515FC | $1,631.06 | I-US$ $1,631.06 |
| Open 5/31/2015 | SLS | LG000353 LG000353 | | 6/30/2015 $0.00 | SLSTE00000624 $0.00 | 0515LG | $901.00 | I-US$ $901.00 |
| Open 6/1/2015 | SLS | QA0016096 QA0016096 | | 7/1/2015 $0.00 | SLSTE00000621 $0.00 | 3Q 15 | $6,293.04 | I-US$ $6,293.04 |
| Open 6/4/2015 | SLS | FCHRG1003444 FCHRG1003444 | | 7/4/2015 $0.00 | SLSTE00000623 $0.00 | 0615FC | $1,725.46 | I-US$ $1,725.46 |
| Open 7/6/2015 | SLS | FCHRG1003456 FCHRG1003456 | | 8/5/2015 $0.00 | SLSTE00000630 $0.00 | 0715FC | $1,725.46 | I-US$ $1,725.46 |
| Open 7/16/2015 | SLS | LC001457 LC001457 | | 8/15/2015 $0.00 | SLSTE00000634 $0.00 | 3Q15 | $314.65 | I-US$ $314.65 |
| Open 7/31/2015 | SLS | LG000356 LG000356 | | 8/30/2015 $0.00 | SLSTE00000635 $0.00 | 715LG | $2,607.25 | I-US$ $2,607.25 |
| Open 8/6/2015 | SLS | FCHRG1003474 FCHRG1003474 | | 9/5/2015 $0.00 | SLSTE00000636 $0.00 | 0815FC | $1,819.86 | I-US$ $1,819.86 |
| Open 8/31/2015 | SLS | LG000360 LG000360 | | 9/30/2015 $0.00 | SLSTE00000648 $0.00 | 815LG | $243.50 | I-US$ $243.50 |

```
System:      6/11/2018  10:41:37 AM          Fisher Island Community Associ          Page:   6
User Date:   6/11/2018                     TRANSACTION BY CUSTOMER INQUIRY REPORT    User ID: carola
                                                  Receivables Management

Customer ID: 11213              Elizabeth Hazan

* Voided

Origin   Type  Document Number    Check Number      Due Date     Audit Trail Code   Batch ID         Currency ID
-----------------------------------------------------------------------------------------------------------------
Doc Date       Description                        Discount Amount    Writeoff Amount      Document Amount    Amount Remaining

Open    SLS   QA0016762                            10/1/2015      SLSTE00000646    4Q15             I-US$
9/1/2015      QA0016762                             $0.00             $0.00                  $6,293.04          $6,293.04

Open    SLS   FCHRG1003495                         10/4/2015      SLSTE00000649    915FC            I-US$
9/4/2015      FCHRG1003495                          $0.00             $0.00                  $1,819.86          $1,819.86

Open    SLS   LG000367                             10/30/2015     SLSTE00000653    915LG            I-US$
9/30/2015     LG000367                              $0.00             $0.00                  $272.50            $272.50

Open    SLS   FCHRG1003510                         11/8/2015      SLSTE00000654    1015FC           I-US$
10/9/2015     FCHRG1003510                          $0.00             $0.00                  $1,819.86          $1,819.86

Open    SLS   LC001521                             11/19/2015     SLSTE00000658    4Q15LC           I-US$
10/20/2015    LC001521                              $0.00             $0.00                  $314.65            $314.65

Open    SLS   LG000373                             11/30/2015     SLSTE00000663    1015LG           I-US$
10/31/2015    LG000373                              $0.00             $0.00                  $272.19            $272.19

Open    SLS   FCHRG1003534                         12/6/2015      SLSTE00000662    1115FC           I-US$
11/6/2015     FCHRG1003534                          $0.00             $0.00                  $1,914.26          $1,914.26

Open    SLS   LG000379                             12/30/2015     SLSTE00000667    1115LG           I-US$
11/30/2015    LG000379                              $0.00             $0.00                  $3,613.48          $3,613.48

Open    SLS   QA0017428                            1/1/2016       SLSTE00000665    1Q 16            I-US$
12/2/2015     QA0017428                             $0.00             $0.00                  $6,607.73          $6,607.73

Open    SLS   FCHRG1003570                         1/8/2016       SLSTE00000670    1215FC           I-US$
12/9/2015     FCHRG1003570                          $0.00             $0.00                  $1,914.26          $1,914.26

Open    SLS   LG000384                             1/30/2016      SLSTE00000683    1215LG           I-US$
12/31/2015    LG000384                              $0.00             $0.00                  $685.50            $685.50

Open    SLS   FCHRG1003589                         2/7/2016       SLSTE00000682    0116FC           I-US$
1/8/2016      FCHRG1003589                          $0.00             $0.00                  $1,914.26          $1,914.26

Open    SLS   LC001590                             2/17/2016      SLSTE00000684    1Q16 LC          I-US$
1/18/2016     LC001590                              $0.00             $0.00                  $330.39            $330.39

Open    SLS   LG000390                             3/1/2016       SLSTE00000690    01.16LG          I-US$
1/31/2016     LG000390                              $0.00             $0.00                  $2,382.50          $2,382.50

Open    SLS   FCHRG1003609                         3/6/2016       SLSTE00000686    0216FC           I-US$
2/5/2016      FCHRG1003609                          $0.00             $0.00                  $2,013.38          $2,013.38

Open    SLS   INV1011221                           3/18/2016      RMSLS00001830    217              I-US$
2/17/2016     Clearance Fee                         $0.00             $0.00                  $50.00             $0.00

Open    PMT   PMT1027400                                          RMCSH00003448    217CASH          B-US$
2/17/2016                                           $0.00             $0.00                  ($50.00)           $0.00

Open    SLS   LG000396                             3/30/2016      SLSTE00000701    02.16LG          I-US$
2/29/2016     LG000396                              $0.00             $0.00                  $2,348.95          $2,348.95

*Open   SLS   QA0018096                            4/1/2016       SLSTE00000691    2Q16             I-US$
3/2/2016      QA0018096                             $0.00             $0.00                  $6,607.73          $0.00
```

```
System:   6/11/2018   10:41:37 AM            Fisher Island Community Associ           Page:   7
User Date: 6/11/2018                       TRANSACTION BY CUSTOMER INQUIRY REPORT    User ID: carola
                                              Receivables Management

Customer ID: 11213                  Elizabeth Mazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | Amount Remaining |
| Open | SLS | QA0018760 | | 4/1/2016 | SLSTE00000692 | 2Q16-1 | 1-US$ | |
| 3/2/2016 | | QA0018760 | | $0.00 | $0.00 | | $6,545.48 | $6,545.48 |
| Open | SLS | FCHRG1003643 | | 4/3/2016 | SLSTE00000696 | 03.16FC | 1-US$ | |
| 3/4/2016 | | FCHRG1003643 | | $0.00 | $0.00 | | $2,013.38 | $2,013.38 |
| Open | SLS | LG000401 | | 4/30/2016 | SLSTE00000708 | 3.16LG | 1-US$ | |
| 3/31/2016 | | LG000401 | | $0.00 | $0.00 | | $497.50 | $497.50 |
| Open | SLS | FCHRG1003665 | | 5/5/2016 | SLSTE00000702 | 04.16FC | 1-US$ | |
| 4/5/2016 | | FCHRG1003665 | | $0.00 | $0.00 | | $2,013.38 | $2,013.38 |
| Open | SLS | LC001638 | | 5/18/2016 | SLSTE00000709 | 2Q16LC | 1-US$ | |
| 4/18/2016 | | LC001638 | | $0.00 | $0.00 | | $327.27 | $327.27 |
| Open | SLS | INV1011424 | | 5/27/2016 | RMSLS00001868 | 427 | 1-US$ | |
| 4/27/2016 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1028285 | | | RMCSH00003516 | 427CASH | 1-US$ | |
| 4/27/2016 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | FCHRG1003686 | | 6/3/2016 | SLSTE00000715 | 5.16FC | 1-US$ | |
| 5/4/2016 | | FCHRG1003686 | | $0.00 | $0.00 | | $2,111.56 | $2,111.56 |
| Open | SLS | INV1011502 | | 6/16/2016 | RMSLS00001880 | 517 | 1-US$ | |
| 5/17/2016 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1028382 | | | RMCSH00003532 | 517CASH | 1-US$ | |
| 5/17/2016 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | LG000406 | | 6/30/2016 | SLSTE00000226 | 05.16LG | 1-US$ | |
| 5/31/2016 | | LG000406 | | $0.00 | $0.00 | | $78.50 | $78.50 |
| Open | SLS | QA0019424 | | 7/1/2016 | SLSTE00000717 | 3Q 16 | 1-US$ | |
| 6/1/2016 | | QA0019424 | | $0.00 | $0.00 | | $6,545.48 | $6,545.48 |
| Open | SLS | FCHRG1003718 | | 7/3/2016 | SLSTE00000725 | 06.16FC | 1-US$ | |
| 6/3/2016 | | FCHRG1003718 | | $0.00 | $0.00 | | $2,111.56 | $2,111.56 |
| Open | SLS | INV1011578 | | 7/17/2016 | RMSLS00001888 | 617 | 1-US$ | |
| 6/17/2016 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1028603 | | | RMCSH00003551 | 617REG | 1-US$ | |
| 6/17/2016 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | INV1011583 | | 7/30/2016 | RMSLS00001896 | 630 | 1-US$ | |
| 6/30/2016 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | SLS | LG000408 | | 7/30/2016 | SLSTE00000732 | 06.16LG | 1-US$ | |
| 6/30/2016 | | LG000408 | | $0.00 | $0.00 | | $19.50 | $19.50 |
| Open | PMT | PMT1028763 | | | RMCSH00003567 | 630REG | 1-US$ | |
| 6/30/2016 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | FCHRG1003731 | | 8/11/2016 | SLSTE00000733 | 07.16FC | 1-US$ | |
| 7/12/2016 | | FCHRG1003731 | | $0.00 | $0.00 | | $2,111.56 | $2,111.56 |

View Document - Miami-Dade County OCS

1/5/26, 1:08

```
System:    6/11/2018   10:41:37 AM        Fisher Island Community Associ           Page:   8
User Date: 6/11/2018                    TRANSACTION BY CUSTOMER INQUIRY REPORT      User ID: carola
                                              Receivables Management

Customer ID: 11213              Elizabeth Kazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LC001695 | | 8/14/2016 | SLSTE00000734 | 3QLC | | I-US$ | |
| 7/15/2016 | | LC001695 | | $0.00 | $0.00 | | $327.27 | | $327.27 |
| Open | SLS | INV1011656 | | 8/18/2016 | RMSLS00001904 | 719 | | I-US$ | |
| 7/19/2016 | | Clearance Fees | | $0.00 | $0.00 | | $400.00 | | $0.00 |
| Open | PMT | PMT1029121 | | | RMCSH00003582 | 719CASH | | I-US$ | |
| 7/19/2016 | | | | $0.00 | $0.00 | | ($400.00) | | $0.00 |
| Open | SLS | LG000412 | | 8/30/2016 | SLSTE00000744 | 07.16LG | | I-US$ | |
| 7/31/2016 | | LG000412 | | $0.00 | $0.00 | | $419.00 | | $419.00 |
| Open | SLS | FCHRG1003747 | | 9/3/2016 | SLSTE00000741 | 08.16FC | | I-US$ | |
| 8/4/2016 | | FCHRG1003747 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| Open | SLS | LG000417 | | 9/30/2016 | SLSTE00000752 | 816LEG | | I-US$ | |
| 8/31/2016 | | LG000417 | | $0.00 | $0.00 | | $614.50 | | $614.50 |
| Open | SLS | QA0020109 | | 10/1/2016 | SLSTE00000746 | 4Q16 | | I-US$ | |
| 9/1/2016 | | QA0020109 | | $0.00 | $0.00 | | $6,545.48 | | $6,545.48 |
| Open | SLS | INV1011805 | | 10/2/2016 | RMSLS00001924 | 902 | | I-US$ | |
| 9/2/2016 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | | $0.00 |
| Open | PMT | PMT1029308 | | | RMCSH00003616 | 902CASH | | I-US$ | |
| 9/2/2016 | | | | $0.00 | $0.00 | | ($50.00) | | $0.00 |
| Open | SLS | FCHRG1003772 | | 10/6/2016 | SLSTE00000748 | 09.16FC | | I-US$ | |
| 9/6/2016 | | FCHRG1003772 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| Open | SLS | LG000422 | | 10/30/2016 | SLSTE00000759 | 9.16LG | | I-US$ | |
| 9/30/2016 | | LG000422 | | $0.00 | $0.00 | | $429.00 | | $429.00 |
| Open | SLS | FCHRG1003787 | | 11/4/2016 | SLSTE00000757 | 10.16FC | | I-US$ | |
| 10/5/2016 | | FCHRG1003787 | | $0.00 | $0.00 | | $2,209.74 | | $2,209.74 |
| Open | SLS | LC001749 | | 11/17/2016 | SLSTE00000760 | 10.16LC | | I-US$ | |
| 10/18/2016 | | LC001749 | | $0.00 | $0.00 | | $327.27 | | $327.27 |
| Open | SLS | LG000428 | | 11/30/2016 | SLSTE00000762 | 10.16LG | | I-US$ | |
| 10/31/2016 | | LG000428 | | $0.00 | $0.00 | | $175.00 | | $175.00 |
| Open | SLS | FCHRG1003805 | | 12/2/2016 | SLSTE00000763 | 11.16FC | | I-US$ | |
| 11/2/2016 | | FCHRG1003805 | | $0.00 | $0.00 | | $2,307.92 | | $2,307.92 |
| Open | SLS | LG000431 | | 12/30/2016 | SLSTE00000771 | 11.16LG | | I-US$ | |
| 11/30/2016 | | LG000431 | | $0.00 | $0.00 | | $68.00 | | $68.00 |
| Open | SLS | QA0020794 | | 1/1/2017 | SLSTE00000768 | 1ST Q 17 | | I-US$ | |
| 12/2/2016 | | QA0020794 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1003833 | | 1/4/2017 | SLSTE00000770 | 12.16FC | | I-US$ | |
| 12/5/2016 | | FCHRG1003833 | | $0.00 | $0.00 | | $2,307.92 | | $2,307.92 |
| Open | SLS | INV1012148 | | 1/27/2017 | RMSLS00001977 | 1228 | | I-US$ | |
| 12/28/2016 | | Clearance Fees 12/23&12/26 | | $0.00 | $0.00 | | $100.00 | | $0.00 |

```
System:   6/11/2018  10:41:37 AM          Fisher Island Community Associ              Page:   9
User Date: 6/11/2018                  TRANSACTION BY CUSTOMER INQUIRY REPORT          User ID: carola
                                           Receivables Management

Customer ID: 11213                   Elizabeth Mazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|---|---|---|---|---|---|---|---|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | Amount Remaining |
| Open | PMT | PMT1030535 | | | RMCSH00003715 | 1228REG | | 1-US$ |
| 12/28/2016 | | | | $0.00 | $0.00 | | ($100.00) | $0.00 |
| Open | SLS | LG000436 | | 1/29/2017 | SLSTE00000785 | 12.16LG | | 1-US$ |
| 12/30/2016 | | LG000436 | | $0.00 | $0.00 | | $302.50 | $302.50 |
| Open | SLS | FCHRG1003849 | | 2/3/2017 | SLSTE00000784 | 01.17FC | | 1-US$ |
| 1/4/2017 | | FCHRG1003849 | | $0.00 | $0.00 | | $2,307.92 | $2,307.92 |
| Open | SLS | LC001811 | | 2/16/2017 | SLSTE00000787 | 01.17LC | | 1-US$ |
| 1/17/2017 | | LC001811 | | $0.00 | $0.00 | | $336.49 | $336.49 |
| Open | SLS | INV1012224 | | 2/18/2017 | RMSLS00001993 | 0116 | | 1-US$ |
| 1/19/2017 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1030962 | | | RMCSH00003736 | 0119CASH | | 1-US$ |
| 1/19/2017 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | LG000439 | | 3/2/2017 | SLSTE00000793 | 01.17LG | | 1-US$ |
| 1/31/2017 | | LG000439 | | $0.00 | $0.00 | | $174.50 | $174.50 |
| Open | SLS | FCHRG1003869 | | 3/11/2017 | SLSTE00000794 | 02.17FC | | 1-US$ |
| 2/9/2017 | | FCHRG1003869 | | $0.00 | $0.00 | | $2,408.87 | $2,408.87 |
| Open | SLS | INV1012307 | | 3/23/2017 | RMSLS00002008 | 221 | | 1-US$ |
| 2/21/2017 | | Clearance Fees 1/29 & 2/11 | | $0.00 | $0.00 | | $200.00 | $0.00 |
| Open | PMT | PMT1031124 | | | RMCSH00003750 | 222CASH | | 1-US$ |
| 2/22/2017 | | | | $0.00 | $0.00 | | ($200.00) | $0.00 |
| Open | SLS | LG000443 | | 3/30/2017 | SLSTE00000801 | 2.17LG | | 1-US$ |
| 2/28/2017 | | LG000443 | | $0.00 | $0.00 | | $536.00 | $536.00 |
| Open | SLS | QA0021480 | | 4/1/2017 | SLSTE00000795 | 2 Q 17 | | 1-US$ |
| 3/2/2017 | | QA0021480 | | $0.00 | $0.00 | | $6,729.76 | $6,729.76 |
| Open | SLS | FCHRG1003906 | | 4/2/2017 | SLSTE00000798 | 03.17FC | | 1-US$ |
| 3/3/2017 | | FCHRG1003906 | | $0.00 | $0.00 | | $2,408.87 | $2,408.87 |
| Open | SLS | INV1012404 | | 4/22/2017 | RMSLS00002029 | 323CL | | 1-US$ |
| 3/23/2017 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1031418 | | | RMCSH00003785 | 323CASH | | 1-US$ |
| 3/23/2017 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | LG000445 | | 4/30/2017 | SLSTE00000807 | 03.17LG | | 1-US$ |
| 3/31/2017 | | LG000445 | | $0.00 | $0.00 | | $195.00 | $195.00 |
| Open | SLS | FCHRG1003927 | | 5/6/2017 | SLSTE00000806 | 04.17FC | | 1-US$ |
| 4/6/2017 | | FCHRG1003927 | | $0.00 | $0.00 | | $2,408.87 | $2,408.87 |
| Open | SLS | INV1012488 | | 5/11/2017 | RMSLS00002039 | 411 | | 1-US$ |
| 4/11/2017 | | Clearance Fee | | $0.00 | $0.00 | | $100.00 | $0.00 |
| Open | PMT | PMT1031844 | | | RMCSH00003798 | 411CASH | | 1-US$ |
| 4/11/2017 | | | | $0.00 | $0.00 | | ($100.00) | $0.00 |

View Document – Miami-Dade County OCS                                                                    1/5/26, 1:08

```
System:    6/11/2018   10:41:37 AM              Fisher Island Community Associ              Page:   10
User Date: 6/11/2018                       TRANSACTION BY CUSTOMER INQUIRY REPORT           User ID: carola
                                                    Receivables Management

Customer ID:  11213                        Elizabeth Hazan

' Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID | |
|---|---|---|---|---|---|---|---|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | Amount Remaining |
| Open | SLS | LC001880 | | 5/18/2017 | SLSTE00000810 | 2QLC | 1-US$ | |
| 4/18/2017 | | LC001880 | | $0.00 | $0.00 | | $336.49 | $336.49 |
| Open | SLS | LG000449 | | 5/30/2017 | SLSTE00000816 | 4.17LG | 1-US$ | |
| 4/30/2017 | | LG000449 | | $0.00 | $0.00 | | $39.00 | $39.00 |
| Open | SLS | FCHRG1003930 | | 6/2/2017 | SLSTE00000815 | 5.17FC | 1-US$ | |
| 5/3/2017 | | FCHRG1003930 | | $0.00 | $0.00 | | $2,408.87 | $2,408.87 |
| Open | SLS | LG000453 | | 6/30/2017 | SLSTE00000823 | 5.17LG | 1-US$ | |
| 5/31/2017 | | LG000453 | | $0.00 | $0.00 | | $29.00 | $29.00 |
| Open | SLS | QA0022167 | | 7/1/2017 | SLSTE00000817 | 3Q17 | 1-US$ | |
| 6/1/2017 | | QA0022167 | | $0.00 | $0.00 | | $6,729.76 | $6,729.76 |
| Open | SLS | FCHRG1003955 | | 7/2/2017 | SLSTE00000821 | 6.17FC | 1-US$ | |
| 6/2/2017 | | FCHRG1003955 | | $0.00 | $0.00 | | $2,509.87 | $2,509.87 |
| Open | SLS | INV1012645 | | 7/21/2017 | RMSLS00002067 | 621 | 1-US$ | |
| 6/21/2017 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | $0.00 |
| Open | PMT | PMT1032338 | | | RMCSH00003850 | 621CASH | 1-US$ | |
| 6/21/2017 | | | | $0.00 | $0.00 | | ($50.00) | $0.00 |
| Open | SLS | LG000457 | | 7/30/2017 | SLSTE00000827 | 6/17 LG | 1-US$ | |
| 6/30/2017 | | LG000457 | | $0.00 | $0.00 | | $295.50 | $295.50 |
| Open | SLS | FCHRG1003979 | | 8/6/2017 | SLSTE00000831 | 7.17FC | 1-US$ | |
| 7/7/2017 | | FCHRG1003979 | | $0.00 | $0.00 | | $2,509.82 | $2,509.82 |
| Open | SLS | LC001940 | | 8/17/2017 | SLSTE00000834 | 3Q17 LC | 1-US$ | |
| 7/18/2017 | | LC001940 | | $0.00 | $0.00 | | $336.49 | $336.49 |
| Open | SLS | LG000461 | | 8/30/2017 | SLSTE00000839 | 7.17LG | 1-US$ | |
| 7/31/2017 | | LG000461 | | $0.00 | $0.00 | | $1,348.50 | $1,348.50 |
| Open | SLS | FCHRG1004002 | | 9/3/2017 | SLSTE00000838 | 8.17FC | 1-US$ | |
| 8/4/2017 | | FCHRG1004002 | | $0.00 | $0.00 | | $2,610.77 | $2,610.77 |
| Open | SLS | QA0022855 | | 10/1/2017 | SLSTE00000840 | 4Q17 | 1-US$ | |
| 9/1/2017 | | QA0022855 | | $0.00 | $0.00 | | $6,729.76 | $6,729.76 |
| Open | SLS | FCHRG1004034 | | 10/5/2017 | SLSTE00000843 | 9..17FC | 1-US$ | |
| 9/5/2017 | | FCHRG1004034 | | $0.00 | $0.00 | | $2,610.77 | $2,610.77 |
| Open | SLS | INV1012963 | | 10/27/2017 | RMSLS00002104 | 927 | 1-US$ | |
| 9/27/2017 | | Clearance Fees | | $0.00 | $0.00 | | $150.00 | $0.00 |
| Open | PMT | PMT1033295 | | | RMCSH00003925 | 927CASH | 1-US$ | |
| 9/27/2017 | | | | $0.00 | $0.00 | | ($150.00) | $0.00 |
| Open | SLS | LG000467 | | 10/30/2017 | SLSTE00000853 | 9.17LG | 1-US$ | |
| 9/30/2017 | | LG000467 | | $0.00 | $0.00 | | $427.00 | $427.00 |
| Open | SLS | FCHRG1004048 | | 11/4/2017 | SLSTE00000852 | 10.17FC | 1-US$ | |
| 10/5/2017 | | FCHRG1004048 | | $0.00 | $0.00 | | $2,610.77 | $2,610.77 |

```
System:    6/11/2018   10:41:37 AM        Fisher Island Community Associ              Page:   11
User Date: 6/11/2018                    TRANSACTION BY CUSTOMER INQUIRY REPORT       User ID: carola
                                             Receivables Management

Customer ID:  11213                    Elizabeth Hazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LC002007 | | 11/15/2017 | SLSTE00000854 | 4QLC | | 1-US$ | |
| 10/16/2017 | | LC002007 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| Open | SLS | FCHRG1004063 | | 12/3/2017 | SLSTE00000860 | 11.17FC | | 1-US$ | |
| 11/3/2017 | | FCHRG1004063 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| Open | SLS | INV1013119 | | 12/16/2017 | RMSLS00002134 | 11.16 | | 1-US$ | |
| 11/16/2017 | | Clearance Fees | | $0.00 | $0.00 | | $100.00 | | $0.00 |
| Open | PMT | PMT1033879 | | | RMCSH00003970 | 11.16CASH | | 1-US$ | |
| 11/16/2017 | | | | $0.00 | $0.00 | | ($100.00) | | $0.00 |
| Open | SLS | LG000475 | | 12/30/2017 | SLSTE00000865 | 11.17LG | | 1-US$ | |
| 11/30/2017 | | LG000475 | | $0.00 | $0.00 | | $887.00 | | $887.00 |
| Open | SLS | QA0023545 | | 1/1/2018 | SLSTE00000861 | 1ST Q 18 | | 1-US$ | |
| 12/2/2017 | | QA0023545 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | INV1013145 | | 1/3/2018 | RMSLS00002136 | 1204 | | 1-US$ | |
| 12/4/2017 | | Clearance Fee | | $0.00 | $0.00 | | $50.00 | | $0.00 |
| Open | PMT | PMT1033937 | | | RMCSH00003978 | 1204CASH | | 1-US$ | |
| 12/4/2017 | | | | $0.00 | $0.00 | | ($50.00) | | $0.00 |
| Open | SLS | FCHRG1004094 | | 1/6/2018 | SLSTE00000864 | 12.17FC | | 1-US$ | |
| 12/7/2017 | | FCHRG1004094 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| Open | SLS | LG000481 | | 1/30/2018 | SLSTE00000875 | 12.17LG | | 1-US$ | |
| 12/31/2017 | | LG000481 | | $0.00 | $0.00 | | $498.50 | | $498.50 |
| Open | SLS | FCHRG1004118 | | 2/4/2018 | SLSTE00000871 | 01.18FC | | 1-US$ | |
| 1/5/2018 | | FCHRG1004118 | | $0.00 | $0.00 | | $2,711.72 | | $2,711.72 |
| Open | SLS | LC002083 | | 2/17/2018 | SLSTE00000874 | 0118LC | | 1-US$ | |
| 1/18/2018 | | LC002083 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| Open | SLS | FCHRG1004151 | | 3/7/2018 | SLSTE00000877 | 2.18 FC | | 1-US$ | |
| 2/5/2018 | | FCHRG1004151 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LG000492 | | 3/30/2018 | SLSTE00000886 | 1.18LG | | 1-US$ | |
| 2/28/2018 | | LG000492 | | $0.00 | $0.00 | | $4,533.00 | | $4,533.00 |
| Open | SLS | QA0024229 | | 4/1/2018 | SLSTE00000880 | 2Q18 | | 1-US$ | |
| 3/2/2018 | | QA0024229 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1004194 | | 4/4/2018 | SLSTE00000882 | 3.18FC | | 1-US$ | |
| 3/5/2018 | | FCHRG1004194 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LG000498 | | 4/30/2018 | SLSTE00000890 | 3.18LG | | 1-US$ | |
| 3/31/2018 | | LG000498 | | $0.00 | $0.00 | | $1,364.50 | | $1,364.50 |
| Open | SLS | FCHRG1004222 | | 5/5/2018 | SLSTE00000889 | 4.18FC | | 1-US$ | |
| 4/5/2018 | | FCHRG1004222 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LC002151 | | 5/17/2018 | SLSTE00000892 | 2Q18LC | | 1-US$ | |
| 4/17/2018 | | LC002151 | | $0.00 | $0.00 | | $336.49 | | $336.49 |

```
System:     6/11/2018  10:41:37 AM          Fisher Island Community Associ              Page:   12
User Date:  6/11/2018                     TRANSACTION BY CUSTOMER INQUIRY REPORT        User ID: carola
                                              Receivables Management

Customer ID:  11213                       Elizabeth Hazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|-----------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LG000504 | | 5/30/2018 | SLSTE00000898 | 4.18LG | | 2-US$ | |
| 4/30/2018 | | LG000504 | | $0.00 | $0.00 | | $625.00 | | $625.00 |
| Open | SLS | FCHRG1004234 | | 6/3/2018 | SLSTE00000900 | 5.18FC | | 2-US$ | |
| 5/4/2018 | | FCHRG1004234 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LG000508 | | 6/30/2018 | SLSTE00000906 | 5.18LG | | 2-US$ | |
| 5/31/2018 | | LG000508 | | $0.00 | $0.00 | | $50.00 | | $50.00 |
| Open | SLS | QA0024916 | | 7/1/2018 | SLSTE00000901 | 3Q18 | | 2-US$ | |
| 6/1/2018 | | QA0024916 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1004255 | | 7/6/2018 | SLSTE00000904 | 6.18FC | | 2-US$ | |
| 6/6/2018 | | FCHRG1004255 | | $0.00 | $0.00 | | $2,913.62 | | $2,913.62 |

```
Total Documents:  212                                               Totals:      $377,564.53     $366,750.02
```

View Document - Miami-Dade County OCS

1/5/26, 1:08

IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

     Plaintiff,

                             CASE NO.:  08-4519 CA 42

vs.

ELIZABETH HAZAN, ET AL.,

     Defendants.

_____/

## AMENDED AFFIDAVIT OF FEES AND COSTS BY ATTORNEY OF RECORD

    I, Michael Mayer, Esq., (Florida Bar No.: 48134), being first duly sworn under oath, do hereby state and depose the following.

1. I am over the age of 18, and have personal knowledge of the following.

2. I am an attorney within PeytonBolin, PL, the law firm of record FISHER ISLAND COMMUNITY ASSOCIATION, INC, (the "Association"), the Plaintiff in the above titled action.

3. I am engaged in the practice of law and as such have experience in actions for foreclosure of association liens.

4. In my experience, a contested case such as the present would take far more than 200 hours up to and including obtaining Final Judgment.  The Association has contracted with the undersigned at a rate of $300.00 per hour for partners and the litigation managing attorney within the firm, and a rate of $250.00 per hour for associates within the firm.  As such, the undersigned, through a conscious effort to keep attorneys' fees reasonable, only expended 115.30 hours in the above captioned matter.

5. In my experience, a reasonable hourly law clerk rate is $145.00 per hour.



https://www2.miamidadeclerk.gov/ocs/pdfHandler?qs=aG97snmYFFXH6kVFSqmOuPa0q7wjwCLRrC1q%2BwE8d3E%3D

6. In my experience, a reasonable hourly paralegal rate is $145.00 per hour.

7. In my experience, a reasonable hourly legal assistant rate is $100.00 per hour.

8. Our firm has entered an agreement with the Association for all reasonable fees and costs.

9. Individual time is attached to this affidavit as Exhibit "1."

10. Accordingly, the sum of $19,082.50 is a reasonable attorneys' fee for my services in the instant case based on the following factors:

   a. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

   b. The fee customarily charged in the locality for similar legal services;

   c. The amount involved;

   d. The experience, reputation, and ability of the lawyers performing the services.

11. I have reviewed the documents pertaining to this matter including, but not limited to, the preparation of correspondence and pleadings, and have overseen the litigation of this matter.

12. When possible, I utilized the services of paralegals and document clerks to complete this action.

13. In addition, the following costs have been incurred in the above titled action:

   a. Clerk's Re-open fee           $53.00

   b. Title Report                  $125.00

   c. Postage Cost                  $22.71

   d. Photocopy Charges             $13.00

   e. Tolls / parking               $31.25

   f. Foreclosure sale fees         $140.00

   g. Publication – Notice of Sale  $245.00

h. Expert Witness cost for (2) two
   Reasonable Attorneys' Fees Affidavits                           $110.00

    **TOTAL ATTORNEYS' COSTS:**                             **$739.96**

**FURTHER AFFIANT SAITH NOUGHT.**

BY: _____

    **MICHAEL MAYER , ESQ.**
    **FLORIDA BAR NO.: 48134**

The foregoing was acknowledged before me this 15th day of June 2018, in Broward County, Florida.

(X) who is personally known to me, or
( ) who has produced _____ as identification, and
who ( ) did ( ) did not take an oath.

_____
NOTARY PUBLIC, State of Florida

My Commission Expires:



PATRICE HATILI LAWSON
Notary Public - State of Florida
Commission # GG 106510
My Comm. Expires Jun 7, 2020
Bonded through National Notary Assn.

| Date | Timekeeper | Description | Hrs to bill | Rate label | Bill amount |
|---|---|---|---|---|---|
| 14-Jun-18 | Taveras, Ashley | Prepare Affidavit of Reasonable Attorney's Fees | 0.3 | Paralegal | $43.50 |
| 14-Jun-18 | Taveras, Ashley | Compile matter fees and costs. Prepare and redact timesheet as exhibit | 0.4 | Paralegal | $58.00 |
| 14-Jun-18 | Taveras, Ashley | Prepare Affidavit of Attorney's Fees and Costs | 0.3 | Paralegal | $43.50 |
| 11-Jun-18 | Mayer, Michael | Draft affidavit of amounts due and owing for exhibit and finalize motion for final judgment. | 1 | Partner | $250.00 |
| 11-Jun-18 | Mayer, Michael | Receive executed affidavit and updated ledger for final judgment. | 0.1 | Partner | $25.00 |
| 30-May-18 | Mayer, Michael | Draft motion for final judgment. | 1.1 | Partner | $275.00 |
| 17-May-18 | Mayer, Michael | Draft failure notice to defendant pursuant to Agreement regarding failure to pay amounts owed. Recite specific sections and cross reference Association ledger. | 0.3 | Partner | $75.00 |
| 16-May-18 | Mayer, Michael | Receive and review unit ledger for purposes of proceeding with final judgment. Review payments made. Prepare correspondence to client regarding | 0.6 | Partner | $150.00 |
| 14-May-18 | Mayer, Michael | Outline relevant provisions of amended agreement for purposes of final judgment. Prepare correspondence to client | 0.6 | Partner | $150.00 |
| 27-Mar-18 | Mayer, Michael | Review file, pleadings discovery and pending motions to determine | 2 | Partner | $500.00 |
| 12-Mar-18 | Mayer, Michael | Attend litigation conference as to course of action against counsel pursuant to settlement in bankruptcy. | 0.3 | Partner | $75.00 |
| 8-Feb-18 | Mayer, Michael | Correspondences with client | 0.2 | Partner | $50.00 |
| 19-Dec-17 | O'Connor, Melissa | Prepare correspondence to opposing counsel with deposition availability. | 0.1 | Attorney | $19.50 |
| 19-Dec-17 | O'Connor, Melissa | Review correspondence from client | 0.1 | Attorney | $19.50 |
| 11-Dec-17 | O'Connor, Melissa | Review document – Cancellation Notice on Deposition of Fisher Island Community | 0.1 | Attorney | $19.50 |
| 5-Dec-17 | O'Connor, Melissa | Updated calendar | 0.1 | Attorney | $19.50 |
| 17-Nov-17 | Taveras, Ashley | Receipt and review of Notice of Cancellation of Depos; update calendar | 0.1 | Zero Rate | $0.00 |
| 16-Nov-17 | O'Connor, Melissa | Prepare follow up correspondence to client | 0.2 | Paralegal | $29.00 |
| 13-Nov-17 | O'Connor, Melissa | Prepare follow up correspondence to opposing counsel regarding deposition. | 0.1 | Attorney | $19.50 |
| 13-Nov-17 | Taveras, Ashley | Review Judge's instructions, uploaded amended Notice to Judge via e-courtesy | 0.1 | Attorney | $19.50 |
| 13-Nov-17 | O'Connor, Melissa | Strategy conference with co-counsel | 0.2 | Attorney | $39.00 |
| 1-Nov-17 | O'Connor, Melissa | Exchange correspondence with Counsel for Hazan regarding pending motion for protective order. | 0.3 | Partner | $75.00 |
| 1-Nov-17 | O'Connor, Melissa | Prepare follow up correspondence to client regarding | 0.1 | Attorney | $19.50 |
| 29-Oct-17 | O'Connor, Melissa | Review multiple correspondence from E. Hazan regarding NICB matter and bankruptcy matter in her efforts to act pro se and avoid her settlement payments. | 0.3 | Attorney | $58.50 |
| 28-Oct-17 | O'Connor, Melissa | Review and exchange correspondence with opposing counsel regarding pending motion for protective order. | 0.2 | Attorney | $39.00 |
| 27-Oct-17 | Taveras, Ashley | review Judge's calendar | 0.1 | Zero Rate | $0.00 |
| 27-Oct-17 | Taveras, Ashley | Correspondence to opposing counsel regarding hearing request | 0.2 | Paralegal | $29.00 |
| 27-Oct-17 | Taveras, Ashley | Review docket for updates | 0.1 | Zero Rate | $0.00 |
| 26-Oct-17 | Taveras, Ashley | E-File Emergency Motion for Protective Order | 0.1 | Zero Rate | $0.00 |
| 24-Oct-17 | Taveras, Ashley | E-File Motion for Extension of Time to Respond to Discovery | 0.1 | Zero Rate | $0.00 |
| 23-Oct-17 | O'Connor, Melissa | Prepare motion for extension of time to respond to discovery. | 0.4 | Attorney | $78.00 |
| 23-Oct-17 | O'Connor, Melissa | Prepare Emergency Motion for Protective Order regarding pending notices of Deposition. | 1.1 | Attorney | $214.50 |
| 23-Oct-17 | O'Connor, Melissa | Prepare correspondence to opposing counsel seeking to meet and confer on emergency motion for protective order. | 0.1 | Attorney | $19.50 |
| 23-Oct-17 | O'Connor, Melissa | Prepare correspondence to court, Hazan and defense counsel seeking to comply with rules of professional responsibility and not communicate directly with Hazan while represented. | 0.1 | Attorney | $19.50 |
| 23-Oct-17 | O'Connor, Melissa | Review document – 2017.10.13 Notice Of Taking Deposition- Carol Allison. | 0.1 | Attorney | $19.50 |
| 17-Oct-17 | Taveras, Ashley | Review document – 2017.10.13 Notice Of Taking Deposition - Gary Snider. | 0.1 | Attorney | $19.50 |
| 17-Oct-17 | Taveras, Ashley | Diary due date for Discovery response | 0.1 | Zero Rate | $0.00 |
| 16-Oct-17 | O'Connor, Melissa | Calendar the Depo of FICA rep for now – will seek to have it cancelled | 0.1 | Zero Rate | $0.00 |
| 16-Oct-17 | O'Connor, Melissa | Review of docket and prepare correspondence to Judicial Assistant regarding alleged dismissal of case without prejudice. | 0.3 | Zero Rate | $0.00 |
| 16-Oct-17 | O'Connor, Melissa | Review correspondence from Hazan to Judicial Assistant regarding dismissal of case. | 0.1 | Attorney | $19.50 |

| Date | Timekeeper | Description | Hours | Role | Amount |
|---|---|---|---|---|---|
| 13-Oct-17 | O'Connor, Melissa | Review and exchange correspondence with pro se Hazan regarding outstanding discovery and procedural posture of case. | 0.2 | Attorney | $39.00 |
| 13-Oct-17 | O'Connor, Melissa | Strategize with bankruptcy specialist to | 0.3 | Attorney | $58.50 |
| 12-Oct-17 | O'Connor, Melissa | Review document - 2017.10.11 Defendant's Notice of 1st ROGGS on Plaintiff | 0.2 | Attorney | $39.00 |
| 12-Oct-17 | O'Connor, Melissa | Review document - 2017.10.11 Notice Of Taking Deposition - Fisher Island Community Association. | 0.1 | Attorney | $19.50 |
| 12-Oct-17 | O'Connor, Melissa | Exchange correspondence with Hazan and her counsel regarding discovery. | 0.1 | Attorney | $28.50 |
| 12-Oct-17 | O'Connor, Melissa | Prepare follow up correspondence to opposing counsel requesting direct client contact cease. | 0.1 | Attorney | $19.50 |
| 12-Oct-17 | O'Connor, Melissa | Prepare correspondence to opposing counsel regarding recent pro se filings by his client, Hazan. | 0.1 | Attorney | $19.50 |
| 12-Oct-17 | O'Connor, Melissa | Prepare correspondence to client | 0.1 | Attorney | $19.50 |
| 12-Oct-17 | O'Connor, Melissa | Determine updated litigation strategy in light of pro se filings. | 0.3 | Attorney | $58.50 |
| 12-Oct-17 | O'Connor, Melissa | Review document - 2017.10.11 Defendant's 1st RFP on Plaintiff | 0.1 | Attorney | $39.00 |
| 11-Oct-17 | O'Connor, Melissa | Review document - 2017.10.10 Notice Of Filing Proof of Claim in Bankruptcy Case and Order Denying Motion to Allow Late Filed Claim. | 0.2 | Attorney | $19.50 |
| 10-Oct-17 | Taveras, Ashley | E-filed Motion for Final Summary Judgment | 0.2 | Zero Rate | $0.00 |
| 3-Oct-17 | Taveras, Ashley | Finalized Motion for filing. | 0.2 | Zero Rate | $0.00 |
| 24-Aug-17 | Taveras, Ashley | E-File Notice of Filing Affidavits in Support of MMFJ after Breach · | 0.1 | Paralegal | $14.50 |
| 22-Aug-17 | Taveras, Ashley | Review and finalize Motion for Final Judgment after Breach of Second Stipulation of Settlement. | 0.6 | Attorney | $117.00 |
| 21-Aug-17 | Taveras, Ashley | Prepare Notice of Hearing | 0.3 | Paralegal | $43.50 |
| 21-Aug-17 | Taveras, Ashley | Set Hearing on MSJ | 0.3 | Paralegal | $43.50 |
| 16-Aug-17 | Taveras, Ashley | Correspondence to opposing counsel regarding hearing request | 0.4 | Paralegal | $58.00 |
| 14-Aug-17 | Taveras, Ashley | Review docket and Judge's calendar and instruction. | 0.2 | Paralegal | $29.00 |
| 7-Aug-17 | Taveras, Ashley | Efile notice of filing | 0.2 | Paralegal | $29.00 |
| 3-Aug-17 | Meyer, Michael | Review and finalize Notice of Filing | 0.1 | Paralegal | $14.50 |
| 3-Aug-17 | Meyer, Michael | Review and sign affidavit of fees and costs. Review billing entries for accuracy. | 0.1 | Attorney | $19.50 |
| 19-Jul-17 | Taveras, Ashley | Prepare Amended Affidavit of Reasonable Fees and Costs | 0.3 | Attorney | $58.50 |
| 19-Jul-17 | Taveras, Ashley | Review docket for updates | 0.3 | Paralegal | $43.50 |
| 19-Jul-17 | Taveras, Ashley | Prepare Amended Affidavit of Attorney's Fees and Costs | 0.2 | Paralegal | $29.00 |
| 19-Jul-17 | Taveras, Ashley | Review expenses to Determine costs | 0.5 | Paralegal | $72.50 |
| 19-Jul-17 | Taveras, Ashley | Review timesheet entries and redact the same. | 0.2 | Paralegal | $29.00 |
| 12-Jul-17 | Taveras, Ashley | Review GAP title Search | 0.5 | Paralegal | $72.50 |
| 11-Jul-17 | Taveras, Ashley | Review file to determine and assist attorney with damage calculations as of 07/11/2017 in current collection matter. | 0.2 | Paralegal | $29.00 |
| 11-Jul-17 | Taveras, Ashley | | 0.3 | Legal Assistant | $30.00 |
| 11-Jul-17 | O'Connor, Melissa | Exchange correspondence with D. Diaz | 0.2 | Attorney | $39.00 |
| 11-Jul-17 | O'Connor, Melissa | Review Q & E report for purposes of addressing client inquiry | 0.4 | Attorney | $78.00 |
| 11-Jul-17 | O'Connor, Melissa | Brief review of case and prepare progress report to client advising of | 0.5 | Attorney | $97.50 |
| 7-Apr-17 | Blaisdell, Joseph | Review all four pending matters against this unit in order to proceed with collection against owner. | 1.9 | Partner | $475.00 |
| 30-Jun-17 | Taveras, Ashley | Receipt and review of executed Affidavit from client | 0.1 | Paralegal | $14.50 |
| 17-May-17 | Taveras, Ashley | Efil review of file and exchange correspondence with | 0.2 | Attorney | $39.00 |
| 15-May-17 | Taveras, Ashley | correspondence to client regarding | 0.3 | Paralegal | $43.50 |
| 15-May-17 | Taveras, Ashley | Correspondence to client regarding | 0.2 | Paralegal | $29.00 |
| 15-May-17 | Taveras, Ashley | Review and finalize ledger; draft Third Amended Affidavit of Amounts Due | 1 | Paralegal | $145.00 |
| 13-May-17 | O'Connor, Melissa | Review Notice of Continued Hearing. | 0.1 | Attorney | $19.50 |
| 18-Apr-17 | Taveras, Ashley | Request ledger | 0.1 | Attorney | $19.50 |
| 18-Apr-17 | Taveras, Ashley | Through review of docket and pleadings filed to determine status of case. | 0.4 | (Not set) | $0.00 |
| 15-Feb-17 | Taveras, Ashley | Conference with counsel regarding | 0.2 | (Not set) | $0.00 |
| 14-Feb-17 | Taveras, Ashley | Review and analysis of court docket; obtain copies of court orders. | 0.2 | Zero Rate | $0.00 |
| 9-Feb-17 | O'Connor, Melissa | Prepare correspondence to bankruptcy counsel regarding permission from bankruptcy court to proceed. | 0.4 | Attorney | $39.00 |
| 1-Feb-17 | O'Connor, Melissa | Continued drafting amended motion for final summary judgment. | 0.4 | Attorney | $78.00 |
| 30-Jan-17 | White, Marlene | Determine litigation strategy to | 0.4 | Attorney | $78.00 |
| | O'Connor, Melissa | Draft amended motion for final summary judgment. | 1.8 | Attorney | $351.00 |

View Document – Miami-Dade County OCS

1/5/26, 1:08

| Date | Name | Description | Hours | Role | Amount |
|---|---|---|---|---|---|
| 30-Jan-17 | Brito, Marlene | Review file and court docket in preparation for Motion for Summary Judgment. | 0.4 | Attorney | $78.00 |
| 27-Jan-17 | Taveras, Ashley | Ledger request | 0.1 | Paralegal | $14.50 |
| 12-Jan-17 | O'Connor, Melissa | Determine updated litigation strategy. | 0.4 | Attorney | $78.00 |
| 3-Jan-17 | Taveras, Ashley | E-file Notice of Filing Relief from Stay | 0.1 | Paralegal | $14.50 |
| 28-Dec-16 | O'Connor, Melissa | Review and finalize Notice of Filing Relief from Stay. | 0.3 | Attorney | $58.50 |
| 27-Dec-16 | Taveras, Ashley | Pull and review of PACER bankruptcy docket | 0.1 | Paralegal | $14.50 |
| 27-Dec-16 | Taveras, Ashley | Prepare Notice of Filing Order Granting Relief from Bankruptcy Stay | 0.2 | Paralegal | $29.00 |
| 27-Dec-16 | Taveras, Ashley | Pull and review of Association Foreclosure Action Docket | 0.1 | Paralegal | $14.50 |
| 27-Dec-16 | Taveras, Ashley | Pull and review of Bank Foreclosure Action Docket | 0.1 | Paralegal | $14.50 |
| 22-Nov-16 | O'Connor, Melissa | Review of Notice of Appearance of D. Langley. | 0.1 | Attorney | $19.50 |
| 16-Nov-16 | Meyer, Michael | Strategy conference with bankruptcy counsel as to course of action moving forward in light of recent bankruptcy order allowing to proceed with final judgment. | 0.5 | Attorney | $97.50 |
| 14-Nov-16 | Meyer, Michael | Conference with bankruptcy counsel regarding upcoming adversary hearing for Hazan and suggested course of action moving forward. | 0.3 | Attorney | $58.50 |
| 1-Sep-16 | Louis, Donna | Review file and confirm status of bankruptcy with bankruptcy counsel. | 0.2 | Paralegal | $29.00 |
| | | | TOTAL 30.4 | | $5,548.00 |

View Document ~ Miami-Dade County OCS

1/5/26, 1:08

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 07/11/2016 | FICA-6913 Valencia Dr-Collections | electronically submit filing to clerk of court, Notice of Filing Bankruptcy Suggestion, efile 43782968 | Patty Browning | $100.00 | $10.00 |
| | | | | 0.10 | |
| 07/11/2016 | FICA-6913 Valencia Dr-Collections | Prepare Notice of Filing Suggestion of Bankruptcy. | Melissa O'Connor | $195.00 | $58.50 |
| | | | | 0.30 | |
| 02/16/2016 | FICA-6913 Valencia Dr-Collections | | Melissa O'Connor | $195.00 | $19.50 |
| | | | | 0.10 | |
| 02/15/2016 | FICA-6913 Valencia Dr-Collections | | Gian Ratnapala | $195.00 | $19.50 |
| | | | | 0.10 | |
| 02/11/2016 | FICA-6913 Valencia Dr-Collections | Review debtor's schedules filed on September 9, 2016. | Gian Ratnapala | $195.00 | $39.00 |
| | | | | 0.20 | |
| 02/11/2016 | FICA-6913 Valencia Dr-Collections | Review debtor's case management summary filed on September 9, 2016. | Gian Ratnapala | $195.00 | $19.50 |
| | | | | 0.10 | |
| 02/10/2016 | FICA-6913 Valencia Dr-Collections | | Gian Ratnapala | $195.00 | $78.00 |
| | | | | 0.40 | |
| 02/02/2016 | FICA-6913 Valencia Dr-Collections | Association Legal Services | Gian Ratnapala | $195.00 | $78.00 |
| | | | | 0.40 | |
| 01/15/2016 | FICA-6913 Valencia Dr-Collections | | Gian Ratnapala | $195.00 | $39.00 |
| | | | | 0.20 | |
| 11/24/2015 | FICA-6913 Valencia Dr-Collections | | Melissa O'Connor | $195.00 | $39.00 |
| | | | | 0.20 | |
| 10/27/2015 | FICA-6913 Valencia Dr-Collections | | Michael Maier | $250.00 | $100.00 |
| | | | | 0.40 | |
| 10/27/2015 | FICA-6913 Valencia Dr-Collections | Conference with co counsel regarding | Gian Ratnapala | $195.00 | $78.00 |
| | | | | 0.40 | |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | electronically submit filing to clerk of court, Notice of Cancellation , efile 33048049 | Patty Browning | $100.00 | $10.00 |
| | | | | 0.10 | |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Review and execute Notice of Cancellation of Hearing on Amended Motion for Final Judgment after Breach. | Melissa O'Connor | $195.00 | $39.00 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| | | | | | 0.20 |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Prepare and review Notice of Cancellation of Hearing on Amended Motion for Final Judgment after Breach; Coordinate finalizing of same with counsel Melissa O'Connor. | Christen Risteen | $145.00 | $29.00 |
| | | | | | 0.20 |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Judge's divisional instructions regarding hearing cancellations to ensure compliance with Judge's procedures. | Christen Risteen | $145.00 | $14.50 |
| | | | | | 0.10 |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with counsel Michael Meyer and Melissa O'Connor with regard to ████████████ ██████████████████ ████████████████████ | Christen Risteen | $145.00 | $29.00 |
| | | | | | 0.20 |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Judge's online motion calendar to confirm upcoming hearing on Association's Motion for Final Judgment after Breach. | Christen Risteen | $145.00 | $14.50 |
| | | | | | 0.10 |
| 10/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file, court docket, and matter notes in preparation for upcoming hearing on Association's Amended Motion for Final Judgment after Breach of Stipulation of Settlement. | Christen Risteen | $145.00 | $87.00 |
| | | | | | 0.60 |
| 09/21/2015 | FICA-6913 Valencia Dr-Collections | electronically submit filing to clerk of court, Notice of Hearing - Amended Motion for Final Judgment, efile 32276905 | Patty Browning | $100.00 | $10.00 |
| | | | | | 0.10 |
| 09/21/2015 | FICA-6913 Valencia Dr-Collections | Review and execute Notice of Hearing. | Melissa O'Connor | $195.00 | $19.50 |
| | | | | | 0.10 |
| 09/21/2015 | FICA-6913 Valencia Dr-Collections | Prepared Notice of Hearing for Attorney review. | Donna Louis | $145.00 | $43.50 |
| | | | | | 0.30 |
| 09/16/2015 | FICA-6913 Valencia Dr-Collections | Sent email correspondence to both to opposing parties, requesting to coordinate hearing for Amended Motion For Final Judgment after Breach. | Donna Louis | $145.00 | $58.00 |
| | | | | | 0.40 |
| 09/08/2015 | FICA-6913 Valencia Dr-Collections | ██████████████ | Melissa O'Connor | $195.00 | $39.00 |
| | | | | | 0.20 |
| 09/02/2015 | FICA-6913 Valencia Dr-Collections | retrieved Second Amendment to Stipulation Agreement from court docket and uploaded into clio for attorney review | Donna Louis | $145.00 | $29.00 |
| | | | | | 0.20 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 08/27/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and analysis of record and file of case for further handling of claim in light of pending amended motion for final judgment.<br>0.60 | Melissa O'Connor | $195.00 | $117.00 |
| 07/24/2015 | FICA-6913 Valencia Dr-Collections | ████████████████<br>0.10 | Michael Mayer | $250.00 | $25.00 |
| 07/13/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with Paralegal regarding ███████<br>0.20 | Carol Strauss | $195.00 | $39.00 |
| 07/10/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services:<br>0.50 | Tiffany Patrick | $145.00 | $72.50 |
| 06/24/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with paralegal regarding ████████████ mail to be sent to opposing counsel to coordinate hearing. Awaiting response from opposing counsel to set hearing. 0.20 | Carol Strauss | $195.00 | $39.00 |
| 06/24/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review email from judicial assistant with instructions on setting special hearing, call judicial assistant to request hearing dates in mid-September, call counsel for both defendants to attempt coordination of conference call with judicial assistant, email counsel for both defendants to request availability for conference call with judicial assistant to set hearing. 0.40 | Tiffany Patrick | $145.00 | $58.00 |
| 06/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file in preparation for correspondence with Judge, prepare and review letter to Judge requesting a special set hearing date for mid-September, send same to Judge via e-courtesy. 0.40 | Tiffany Patrick | $145.00 | $58.00 |
| 06/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review order setting motion to dismiss defendant NLG, LLC in bank foreclosure case and confer with counsel Carol Strauss to strategize coordinating hearing on Amended Motion for Final Judgment after Breach. 0.30 | Tiffany Patrick | $145.00 | $43.50 |
| 06/19/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Additional conference with paralegal to set hearing on Motion for final judgment. 0.10 | Carol Strauss | $195.00 | $19.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 06/19/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Confer with legal assistant regarding ███████████████ ███████ | Tiffany Patrick  0.20 | $145.00 | $29.00 |
| 06/19/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Amended Motion for Final Judgment after Breach in preparation for coordinating hearing, review judicial procedures for foreclosure hearings and special set hearings, confer with counsel Carol Strauss to strategize hearing coordination and determine amount of time needed. | Tiffany Patrick  0.30 | $145.00 | $43.50 |
| 06/18/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with Paralegal regarding ████████████ ██████ | Carol Strauss  0.30 | $195.00 | $58.50 |
| 06/18/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review docket for Association foreclosure and Bank foreclosure regarding findings at bank foreclosure hearing. Matter should be set for hearing on motion for final judgment. | Carol Strauss  0.50 | $195.00 | $97.50 |
| 06/18/2015 | FICA-6913 Valencia Dr-Collections | Review proposed order submitted by Valencia HOA | Gian Ratnapala  0.30 | $195.00 | $58.50 |
| 06/18/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review bank foreclosure docket and file to determine matter status, confer with counsel Carol Strauss to determine whether to hold on setting hearing on motion for final judgment after breach of settlement. | Tiffany Patrick  0.20 | $145.00 | $29.00 |
| 06/12/2015 | FICA-6913 Valencia Dr-Collections | ████████████████ | Gian Ratnapala  0.20 | $195.00 | $39.00 |
| 06/11/2015 | FICA-6913 Valencia Dr-Collections | Attend hearing on NLG's motion for final judgment and Valencia HOA's motion to determine priority | Gian Ratnapala  4.50 | $195.00 | $877.50 |
| 06/11/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Confer with counsel Carol Strauss to strategize on ██████ ███████████ | Tiffany Patrick  0.10 | $145.00 | $14.50 |
| 06/10/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ | Carol Strauss  0.10 | $195.00 | $19.50 |
| 06/10/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review status of hearing on Amended Motion for Final Judgment. Conference with co-counsel Mayer to ████████████████████ ████████████████████ ████████████████████ ████████ | Carol Strauss  0.30 | $195.00 | $58.50 |

View Document – Miami-Dade County OCS
1/5/26, 1:08

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 06/09/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review of file and request hearing be set as there is no current bankruptcy pending. | Carol Strauss | $195.00 | $19.50 |
| | | | 0.10 | | |
| 06/03/2015 | FICA-6913 Valencia Dr-Collections | Conference with co counsel and strategize legal theories ████████████████ ███████████████. | Gian Reinagola | $195.00 | $39.00 |
| | | | 0.20 | | |
| 06/03/2015 | FICA-6913 Valencia Dr-Collections | Review for bankruptcy filings ████████, ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ | Gian Reinagola | $195.00 | $117.00 |
| | | | 0.60 | | |
| 06/02/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Order from Supreme Court of New York on bankruptcy stay, conference with counsel to determine plan of action for hearing on Amended Motion for Final Judgment after Breach. | Tiffany Patrick | $145.00 | $29.00 |
| | | | 0.20 | | |
| 06/01/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review of File regarding Pending automatic Stay in Bankruptcy Court, Order from NY Court filed in Bank Foreclosure case. | Carol Strauss | $195.00 | $19.50 |
| | | | 0.10 | | |
| 05/29/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review judicial calendar to verify availability for hearing on Amended Motion for Final Judgment after Breach, review firm calendar and send follow up email to opposing counsel with new hearing dates. | Tiffany Patrick | $145.00 | $43.50 |
| | | | 0.30 | | |
| 05/27/2015 | FICA-6913 Valencia Dr-Collections | Conference with paralegal as to status of scheduling hearing on motion for final judgment. | Michael Maver | $250.00 | $50.00 |
| | | | 0.20 | | |
| 05/26/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file, Amended Motion for Final Judgment after Breach and court docket in preparation for setting hearing, review judicial procedures and judicial calendar, email opposing counsel with proposed hearing dates. | Tiffany Patrick | $145.00 | $72.50 |
| | | | 0.50 | | |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Receive and review e-service confirmation for Notice of Filing Second Amended Affidavit of Amounts Due and Owing | Danielle Schneider | $195.00 | $19.50 |
| | | | 0.10 | | |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Receive and review e-service confirmation for Amended Motion for Final Judgment | Danielle Schneider | $195.00 | $19.50 |
| | | | 0.10 | | |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review finalized Notice of Filing Second Amended Affidavit of Amounts Due and Owing and prepare same | Christen Risteen | $145.00 | $29.00 |
| | | | 0.20 | | |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| | | for filing; Submit same for filing via ePortal. 27640786 | | | |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review finalized Amended Motion for Final Judgment after Breach of Stipulation and prepare same for filing; Submit same for filing via ePortal. 27640786 0.20 | Christen Risteen | $145.00 | $29.00 |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Review and finalize notice of filing second amended affidavit of amounts due and owing 0.20 | Danielle Schneider | $195.00 | $39.00 |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Revise and review Notice of Filing Second Amended Affidavit of Amounts Due and Owing to include updated service address for defendant NLG, LLC. 0.10 | Christen Risteen | $145.00 | $14.50 |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Review, revise, and finalize amended motion for final judgment after breach of stipulation. Coordinate with paralegal (Christen Risteen) to prepare for filing. 0.40 | Danielle Schneider | $195.00 | $78.00 |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Confer with counsel Danielle Schneider to review case status and determine whether motion for final judgment after breach is ready to set for hearing. 0.10 | Tiffany Patrick | $145.00 | $14.50 |
| 05/22/2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review executed Second Amended Affidavit of Amounts Due and Owing with attached ledger supporting same; Prepare Notice of Filing Second Amended Affidavit of Amounts Due and Owing for counsel's review and coordinate finalizing of same with counsel Danielle Schneider. 0.20 | Christen Risteen | $145.00 | $29.00 |
| 05/21/2015 | FICA-6913 Valencia Dr-Collections | Receive and review email from ▓▓▓▓▓ ▓▓▓▓ ▓▓ ▓▓▓▓▓▓▓ ▓▓▓▓▓▓ Examine ledger and email ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓▓ 0.30 | Danielle Schneider | $195.00 | $58.50 |
| 05/20/2015 | FICA-6913 Valencia Dr-Collections | Prepare motion for final judgment in foreclosure after breach 1.00 | Danielle Schneider | $195.00 | $195.00 |
| 05/20/2015 | FICA-6913 Valencia Dr-Collections | Examine pleadings and court orders entered before the initial settlement agreement to determine whether ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Email counsel for NLG regarding FICA's intent to proceed. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ 0.90 | Danielle Schneider | $195.00 | $175.50 |
| 05/20/2015 | FICA-6913 Valencia Dr-Collections | Revise second amended affidavit of amounts due and owing. Email same to Carol for review and execution. 0.60 | Danielle Schneider | $195.00 | $117.00 |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 05/20/ 2015 | FICA-6913 Valencia Dr- Collections | Analyze various settlement agreements to ensure the Association retained the right to foreclose lien for unpaid assessments following the owner's non-compliance. Conference with co-counsel ~~(Mauri Peyton,~~ ~~Esq.) regarding~~ ~~0.80~~ | Danielle Schneider | $195.00 | $156.00 |
| 05/20/ 2015 | FICA-6913 Valencia Dr- Collections | Association Legal Services: ▮▮▮▮ | Mauri Peyton 0.20 | $250.00 | $50.00 |
| 05/18/ 2015 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review file in preparation to Notice of Filing; Prepare and review Notice of Filing Second Amended Affidavit of Amounts Due and Owing. 0.20 | Christen Risteen | $145.00 | $29.00 |
| 05/15/ 2015 | FICA-6913 Valencia Dr- Collections | ▮▮▮▮ 0.20 | Danielle Schneider | $195.00 | $39.00 |
| 05/15/ 2015 | FICA-6913 Valencia Dr- Collections | Conferences with co-counsel ~~(Mauri Peyton,~~ ~~Esq.) re~~ ▮▮▮ 0.20 | Danielle Schneider | $195.00 | $39.00 |
| 05/15/ 2015 | FICA-6913 Valencia Dr- Collections | ▮▮▮▮ 1.50 | Danielle Schneider | $195.00 | $292.50 |
| 05/15/ 2015 | FICA-6913 Valencia Dr- Collections | ▮▮▮▮ 0.30 | Danielle Schneider | $195.00 | $58.50 |
| 05/14/ 2015 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review court docket in preparation to gathering supporting affidavits; ▮▮▮▮ 0.20 | Christen Risteen | $145.00 | $29.00 |
| 05/14/ 2015 | FICA-6913 Valencia Dr- Collections | Coordinate with paralegal (Tiffany Patrick) to schedule hearing on motion for final judgment after breach 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 05/14/ 2015 | FICA-6913 Valencia Dr- Collections | Coordinate with paralegal (Christen Risteen) to prepare updated affidavits in support of final judgment motion 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 05/14/ 2015 | FICA-6913 Valencia Dr- Collections | Conference with co-counsel (Mauri Peyton, Esq.) re ▮▮▮▮ 0.20 | Danielle Schneider | $195.00 | $39.00 |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 05/14/ 2015 | FICA-6913 Valencia Dr-Collections | Conference with co-counsel in moving forward with motion to enforce final judgment. 0.20 | Michael Mayer | $250.00 | $50.00 |
| 05/11/ 2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone conference with Gary ▮▮▮▮▮ 0.20 | Mauri Peyton | $250.00 | $50.00 |
| 05/11/ 2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮ 0.40 | Mauri Peyton | $250.00 | $100.00 |
| 05/08/ 2015 | FICA-6913 Valencia Dr-Collections | Review dockets, pleadings, and motions in NLG and Chase mortgage foreclosure cases. Create outline of case history and collections strategy. Conference with co-counsel (Mauri Peyton, Esq.) to coordinate further actions. 0.80 | Danielle Schneider | $195.00 | $156.00 |
| 04/28/ 2015 | FICA-6913 Valencia Dr-Collections | Review case status and update progress report 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 01/16/ 2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review NLG foreclosure status 0.10 | Mauri Peyton | $250.00 | $25.00 |
| 01/14/ 2015 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone conference with Opposing Counsel regarding NLG Foreclosure 0.20 | Mauri Peyton | $250.00 | $50.00 |
| 10/20/ 2014 | FICA-6913 Valencia Dr-Collections | Review Proposed Order and Motion to Withdraw. Coordinate with bank foreclosure department to ensure further monitoring of case progress. 0.20 | Shantal Woodard | $195.00 | $39.00 |
| 09/10/ 2014 | FICA-6913 Valencia Dr-Collections | Review Motion to Withdraw and Notice of Hearing on Motion to Withdraw. Coordinate with bank foreclosure department to ensure further monitoring of case progress. 0.20 | Shantal Woodard | $195.00 | $39.00 |
| 08/13/ 2014 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮ 0.30 | Joseph Giannell | $250.00 | $75.00 |
| 02/11/ 2014 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with partner regarding case status; awaiting pending bank foreclosure resolution 0.20 | Michael Mayer | $195.00 | $39.00 |
| 11/05/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft update notice of suspension letter to Ms. Hazan's attorney. 1.20 | Joseph Giannell | $195.00 | $234.00 |
| 10/02/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services ▮▮▮▮ 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 10/02/ 2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Notice of Appearance 0.10 | Christen Risteen | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 10/02/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Notice of Appearance.<br>0.10 | Nate Handley | $75.00 | $7.50 |
| 10/02/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Defendant's Notice of Appearance.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/25/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████<br>0.50 | Joseph Giannell | $195.00 | $97.50 |
| 09/24/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: update matter efile confirmation 5626379 PLAINTIFFS MOTION FOR EXTENSION OF TIME TO RESPOND TO DISCOVERY<br>0.10 | Patty Browning | $75.00 | $7.50 |
| 09/20/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: update matter efile confirmation PLAINTIFFS MOTION FOR EXTENSION OF TIME TO RESPOND TO DISCOVERY<br>0.10 | Patty Browning | $75.00 | $7.50 |
| 09/19/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: prepare for submission to court, service list, scan and save - Plaintiffs Motion for Extension of Time, efile 5626379<br>0.30 | Patty Browning | $75.00 | $22.50 |
| 09/19/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and finalize motion for extension of time to respond to discovery<br>0.20 | Danielle Schneider | $195.00 | $39.00 |
| 09/19/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare and review Motion for Extension of Time to Respond to Plaintiff's Discovery<br>0.20 | Christian Risteen | $75.00 | $15.00 |
| 09/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Update firm calendar regarding cancellation of upcoming deposition.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/05/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review e-mail from e-filing portal accepting Notice of Cancellation for filing.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: E-serve Notice of Cancellation to service list.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Prepare Notice of Cancellation for e-filing submission.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review executed order on defendant's motion to withdraw as counsel.<br>0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Add expiration of Defendant's stay pursuant to Order on Motion to Withdraw to Firm Calendar<br>0.20 | Christian Risteen | $75.00 | $15.00 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review entered Order on Motion to Withdraw 0.10 | Christen Risteen | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████████ 0.20 | Nate Handley | $75.00 | $15.00 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review entered Order on Motion to Withdraw. 0.10 | Nate Handley | $75.00 | $7.50 |
| 09/03/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft Notice of Cancellation and update firm calendar. 0.30 | Angela Pecoraro | $75.00 | $22.50 |
| 08/30/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review email from OC re agreement to cancel breach hearing and depo 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 08/30/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Email OC re agreement to cancel hearing and deposition 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 08/30/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Call to OC re hearing 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 08/30/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Call to OC re hearing (left message) 0.10 | Danielle Schneider | $195.00 | $19.50 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare and review proposed Order on Motion to Withdraw and Motion for Continuance or to Reschedule Hearing 0.20 | Christen Risteen | $75.00 | $15.00 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Judge's calendar 0.10 | Christen Risteen | $75.00 | $7.50 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review court docket 0.10 | Christen Risteen | $75.00 | $7.50 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Notice of Hearing on Motion to Withdraw and Motion for Continuance 0.10 | Christen Risteen | $75.00 | $7.50 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Motion for Continuance or to Reschedule Hearing 0.10 | Christen Risteen | $75.00 | $7.50 |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Motion to Withdraw 0.10 | Christen Risteen | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Notice of Taking Deposition Duces Tecum and confirm date is on firm calendar | Christen Risteen | $75.00 | $7.50 |
| | | | 0.10 | | |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Request for Production and confirm deadline to respond on firm calendar | Christen Risteen | $75.00 | $15.00 |
| | | | 0.20 | | |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Notice of Service of First Set of Interrogatories and confirm deadline to respond on firm calendar | Christen Risteen | $75.00 | $15.00 |
| | | | 0.20 | | |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review letter from OC enclosing Mtn to Withdraw, Mtn for Continuance, Notice of Taking Deposition, discovery requests, and Notice of Hearing on Mtn to Withdraw and Mtn for Continuance | Christen Risteen | $75.00 | $7.50 |
| | | | 0.10 | | |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file regarding continuance hearing. | Joseph Giannell | $195.00 | $78.00 |
| | | | 0.40 | | |
| 08/29/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review and organize file for upcoming hearing | Christen Risteen | $75.00 | $30.00 |
| | | | 0.40 | | |
| 08/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review letter to counsel from Opposing Counsel, Motion to Withdraw, Notice of Taking Deposition, Notice of Service of Interrogatories, Motion for Continuance, Request for Production, and Notice of Hearing on Motion to Withdraw. | Nate Handley | $75.00 | $60.00 |
| | | | 0.80 | | |
| 08/09/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review e-mail from e-filing portal accepting Notice of Hearing for filing. | Angela Pecoraro | $75.00 | $7.50 |
| | | | 0.10 | | |
| 08/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: E-serve Notice of Hearing to service list. | Angela Pecoraro | $75.00 | $7.50 |
| | | | 0.10 | | |
| 08/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Prepare Notice of Hearing for e-filing submission. | Angela Pecoraro | $75.00 | $7.50 |
| | | | 0.10 | | |
| 08/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Submit Notice of Hearing and Motion to judge via e-courtesy. | Sophie Gankin | $75.00 | $15.00 |
| | | | 0.20 | | |
| 08/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review docket; Review Judge's divisional instructions for hearing availability; Review e-courtesy for hearing date availability; Prepare and review Notice of Hearing and add same to firm calendar. | Sophie Gankin | $75.00 | $45.00 |
| | | | 0.60 | | |
| 08/07/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Follow-up e-mail to OC regarding their intention to withdraw and coordinating hearing. | Sophie Gankin | $75.00 | $15.00 |
| | | | 0.20 | | |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 07/11/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Confer with counsel regarding setting hearing based on OC's intention to withdraw; Review docket. 0.20 | Sophie Genkin | $75.00 | $15.00 |
| 07/10/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Send follow up e-mail to OC regarding coordinating hearing. 0.10 | Sophie Genkin | $75.00 | $7.50 |
| 07/08/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review docket; Review file; E-mail OC regarding coordinating hearing. 0.30 | Sophie Genkin | $75.00 | $22.50 |
| 07/08/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review e-mail regarding status of matter; Add matter to hearings to set list. 0.20 | Sophie Genkin | $75.00 | $15.00 |
| 07/03/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review case status & update status report. 0.20 | Nate Handley | $75.00 | $15.00 |
| 06/26/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: prepare for submission to court, service by email, service list, scan and save - Notice of Filing Amended Affidavit of Amount Due and Owing 0.40 | Patty Browning | $75.00 | $30.00 |
| 06/26/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review executed Amended Affidavit of Amounts Due and Owing and ledger 0.20 | Christen Risteen | $75.00 | $15.00 |
| 06/25/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: ██████████████████ 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/25/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Revise and review Amended Affidavit of Amounts Due and Owing 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/25/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: ██████████████████ 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: ██████████████████ 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Revise and review Amended Affidavit of Amounts Due and Owing 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review ledger 0.40 | Christen Risteen | $75.00 | $30.00 |
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Revise and review Notice of Filing Amended Affidavit of Amounts Due and Owing 0.10 | Christen Risteen | $75.00 | $7.50 |
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review court docket 0.10 | Christen Risteen | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 06/21/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services ██████████████ 0.10 | Christen Risteen | $75.00 | $7.50 |
| 05/16/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review Notice of Appearance. 0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 05/16/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Receive and Review Notice of Appearance and Email correspondence with Opposing Counsel 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 05/03/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review file status 0.10 | Christen Risteen | $75.00 | $7.50 |
| 04/16/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Attend hearing on motion to withdraw as counsel (Hazan's attorney did not appear) 2.30 | Danielle Schneider | $195.00 | $448.50 |
| 04/16/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review file in preparation for hearing on motion to withdraw as Defendant's counsel 0.50 | Danielle Schneider | $195.00 | $97.50 |
| 04/09/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Receive and Review proposed agreed order from Opposing Counsel on Motion to Withdraw and ██████████ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 04/02/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review Re-Notice of Hearing on Defendant's Motion to Withdraw 0.10 | Christen Risteen | $75.00 | $7.50 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review Re-Notice of Hearing on Defendant's Motion to Withdraw and add to firm calendar. 0.20 | Angela Pecoraro | $75.00 | $15.00 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Association Legal Services: Review and finalize Notice of Filing Amended Affidavit. 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Update Comprehensive Status Report 0.10 | Christen Risteen | $75.00 | $7.50 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Update Affidavit Spreadsheet 0.10 | Christen Risteen | $75.00 | $7.50 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Prepare and review Notice of Filing Amended Affidavit of Amounts Due and Owing 0.10 | Christen Risteen | $75.00 | $7.50 |
| 04/01/ 2013 | FICA-6913 Valencia Dr- Collections | Legal Services: Review original executed Amended Affidavit of Amounts Due and Owing and ledger 0.20 | Christen Risteen | $75.00 | $15.00 |

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 03/28/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: ███████ 0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/28/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare and review Amended Affidavit of Amounts Due and Owing 0.20 | Christen Risteen | $75.00 | $15.00 |
| 03/28/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review ledger 0.30 | Christen Risteen | $75.00 | $22.50 |
| 03/27/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and respond to correspondence with opposing counsel regarding hearing. 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/27/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Request copy of ledger 0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/26/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Update status report. 0.10 | Nate Handley | $75.00 | $7.50 |
| 03/26/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Motion to Withdraw and Notice of Hearing on same. 0.20 | Nate Handley | $75.00 | $15.00 |
| 03/26/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Attend hearing on breach of stipulation. 2.50 | Joseph Giannell | $195.00 | $487.50 |
| 03/25/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file and pleadings to prepare for hearing. 0.50 | Joseph Giannell | $195.00 | $97.50 |
| 03/25/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Revise and review proposed Final Judgment after Breach of Stipulation 0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/22/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Email correspondence with Opposing Counsel 0.10 | Maggi Peyton | $195.00 | $19.50 |
| 03/22/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and respond to correspondence with bank's counsel regarding hearing. 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone call with bank's counsel regarding next week's hearing. 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft correspondence to bank's counsel regarding next week's hearing. 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Revise and review proposed Final Judgment after Breach 0.10 | Christen Risteen | $75.00 | $7.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Organize and review hearing folder<br>0.20 | Christen Risteen | $75.00 | $15.00 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Email Office Manager regarding Pre-Foreclosure Sale fee<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare and review proposed Final Judgment after Breach and Fact Information Sheet<br>0.50 | Christen Risteen | $75.00 | $37.50 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review Judge's calendar<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/21/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Review court docket<br>0.10 | Christen Risteen | $75.00 | $7.50 |
| 03/20/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file and pleadings to prepare for upcoming hearing.<br>0.50 | Joseph Giannell | $195.00 | $97.50 |
| 03/14/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone call with opposing counsel regarding proposed agreement.<br>0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/14/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and respond to correspondence from opposing counsel regarding settlement agreement.<br>0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/14/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and revise proposed settlement agreement.<br>0.90 | Joseph Giannell | $195.00 | $175.50 |
| 03/12/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Email correspondence with Opposing Counsel regarding counter offer<br>0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/12/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮▮▮▮▮<br>0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/12/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮▮▮▮▮<br>0.30 | Joseph Giannell | $195.00 | $58.50 |
| 03/12/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services ▮▮▮<br>0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/11/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮▮▮▮<br>0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/11/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮▮▮▮▮<br>0.10 | Mauri Peyton | $195.00 | $19.50 |

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 03/11/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Email correspondence with Opposing Counsel regarding offer 0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/11/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file and Email correspondence with Opposing Counsel regarding offer 0.40 | Mauri Peyton | $195.00 | $78.00 |
| 03/11/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: PREPARE FOR SUBMISSION TO COURT, VERIFY HEARING, SCAN AND SAVE - NOTICE HEARING 0.30 | Patty Browning | $75.00 | $22.50 |
| 03/08/2013 | FICA-6913 Valencia Dr-Collections | Legal Services: Revise and review Notice of Hearing 0.10 | Christen Rialsen | $75.00 | $7.50 |
| 03/07/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Calendar hearing on Motion for Final Summary Judgment on firm calendar. 0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 03/07/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: No response from OC regarding coordinating hearing on Motion for Summary Judgment. Draft Notice of Hearing on same. 0.40 | Angela Pecoraro | $75.00 | $30.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Email correspondence with Opposing Counsel ▮▮▮ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮ 0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮ 0.40 | Mauri Peyton | $195.00 | $78.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: E-mail to OC to try and coordinate hearing on our Motion for Final Summary Judgment. 0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Judge's foreclosure calendar instructions. 0.10 | Angela Pecoraro | $75.00 | $7.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ▮▮▮ 0.40 | Mauri Peyton | $195.00 | $78.00 |

View Document – Miami-Dade County OCS                                                      1/5/26, 1:08

| Date | Matter | Description | User | Rate | Total |
|------|--------|-------------|------|------|-------|
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ 0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Hazan bank foreclosure file to assist with response 0.30 | Mauri Peyton | $195.00 | $58.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ 0.10 | Mauri Peyton | $195.00 | $19.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Conference with Joe regarding ████████ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ 0.30 | Mauri Peyton | $195.00 | $58.50 |
| 03/06/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ 0.20 | Mauri Peyton | $195.00 | $39.00 |
| 03/05/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review Hazan emails and correspondence to assist with response 0.40 | Mauri Peyton | $195.00 | $78.00 |
| 02/01/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and respond to correspondence with bank's attorney regarding potential settlement. 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 01/30/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Phone call to JA regarding setting hearing unilaterally due to noncooperation of OC (no answer). 0.10 | Sophie Genkin | $75.00 | $7.50 |
| 01/28/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ████████ 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 01/28/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services ████████ 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 01/28/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and revise agreement with 2nd mortgage company regarding settlement. 1.20 | Joseph Giannell | $195.00 | $234.00 |
| 01/28/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft and review agreement for indemnification and assignment of bid. 3.00 | Glen Retnacapa | $195.00 | $585.00 |
| 01/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review and respond to correspondence with bank's attorney. 0.20 | Joseph Giannell | $195.00 | $39.00 |
| 01/08/2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone call with bank's counsel regarding possible settlement. 0.20 | Joseph Giannell | $195.00 | $39.00 |

Case 1:26-cv-20060-LFL   Document 1   Entered on FLSD Docket 01/06/2026   Page 155 of 212
View Document – Miami-Dade County OCS

1/5/26, 1:08

| Date | Matter | Description | User | Rate | Total |
|---|---|---|---|---|---|
| 01/08/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft settlement proposal to bank's counsel. 0.50 | Joseph Giannell | $195.00 | $97.50 |
| 01/04/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Research involuntary bankruptcy based on conversation with bank. 1.60 | Joseph Giannell | $195.00 | $312.00 |
| 01/04/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone call with bank's counsel regarding possible bankruptcy. 0.40 | Joseph Giannell | $195.00 | $78.00 |
| 01/03/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review e-mail from OC regarding setting hearing. 0.10 | Sophie Genkin | $75.00 | $7.50 |
| 01/02/ 2013 | FICA-6913 Valencia Dr-Collections | Association Legal Services: ███████ ███████ 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 12/19/ 2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Phone call to JA to set hearing; Conference call with JA and OC to set hearing; OC has not received motion, send OC copy of Motion via e-mail. 0.20 | Sophie Genkin | $75.00 | $15.00 |
| 12/19/ 2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review e-mail regarding scheduling hearing; Prepare and review letter to judge requesting 15 minute special set hearing; submit letter via e-courtesy. 0.20 | Sophie Genkin | $75.00 | $15.00 |
| 12/12/ 2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Draft correspondence to mortgage holder's counsel regarding our Final Judgment. 0.30 | Joseph Giannell | $195.00 | $58.50 |
| 12/12/ 2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Review file based on negotiations with mortgage holder's counsel. 0.60 | Joseph Giannell | $195.00 | $117.00 |
| 12/12/ 2012 | FICA-6913 Valencia Dr-Collections | Association Legal Services: Telephone call with mortgage holder's counsel regarding his upcoming trial. 0.40 | Joseph Giannell | $195.00 | $78.00 |
| 12/03/ 2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare for Submission to Court, Scan and Save - Motion for Final Judgment After Breach of Stipulation with Assessment of Attorneys Fees and Costs 0.20 | Patty Browning | $75.00 | $15.00 |
| 12/03/ 2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare for Submission to Court, Scan and Save - Notice of Filing Affidavit of Reasonable Attorneys Fees 0.20 | Patty Browning | $75.00 | $15.00 |
| 12/03/ 2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare for Submission to Court, Scan and Save - Notice of Filing Affidavit of Fees an Costs by Attorney of Record 0.20 | Patty Browning | $75.00 | $15.00 |
| 12/03/ 2012 | FICA-6913 Valencia Dr-Collections | Legal Services: Prepare for Submission to Court, Scan and Save - Notice of Filing Affidavit of Amounts Due and Owing 0.20 | Patty Browning | $75.00 | $15.00 |

View Document - Miami-Dade County OCS

**IN THE CIRCUIT COURT
IN AND FOR MIAMI DADE COUNTY, FLORIDA**

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a Florida not-for-profit
corporation,

      Plaintiff,

vs.
                              CASE NO.: 2023-026767-CA-01

ELIZABETH HAZAN A/K/A LIZA HAZAN,

      Defendants.

_____

*[handwritten: ELIZABETH HAZAN'S MOTION TO DISMISS WITH PREJUDICE]*

Defendant, ELIZABETH HAZAN, ("Owner"), PRO SE, on behalf of herself, respectfully
moves this Court for entry of an order dismissing this action, *[handwritten: WITH PREJUDICE]* and states as follows:

### BRIEF RELEVANT BACKGROUND TO THIS MOTION

1.     Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit
Florida corporation, (hereinafter referred to as "Association"), filed the instant action on
November 20, 2023, against the Owner seeking collection of alleged outstanding assessments
owed.

2.     On or about May 11, 2010, Owner and Association entered into a first Stipulation
Agreement resolving this dispute.

3.     On the same day, Judge Israel Reyes entered an Order on Stipulation Agreement
(hereinafter referred to as "Non-Final Order"), a copy of which is attached hereto as **Exhibit "A"**.[1]

4.     In the Non-Final Order, this Court approved the first Stipulation Agreement,
retained jurisdiction to enforce the stipulation, but <u>only</u> dismissed Owner's counterclaim against
the Association with prejudice. Therefore, the case was still pending at that time.

_____

[1] The exhibits A to E are the same exhibits as the ones attached to Hazan's previous Motion to
Dismiss in case 08-4519 CA 42. See attached **Exhibit "F"**.

5.      Further, after the settlement agreement was entered, and the non-final order issued above, which did not dispose of all the claims, an order setting trial was entered.

6.      See Order setting trial on April 4, 2011.  See docket entry attached as Exhibit B.[2]

7.      On May 5, 2011, Judge Eugene J. Fierro entered an Order on the Court's Motion for Non-Jury Trial dismissing the entire case without any reservation of jurisdiction (hereinafter referred to as "Final Order"), a copy of which is attached hereto as Exhibit "C".

8.      Unlike the Non-Final Order, the Final Order (entered after the case was set for trial) dismissed the entire case without prejudice. Exhibit "C".

9.      Also, unlike the Non-Final Order, the Final Order failed to reserve jurisdiction to enforce the terms of the Settlement Agreement. Exhibit "C".

10.     More importantly, the settlement entered into during the pendency of the previous case was replaced and superseded by two new settlement agreements, both of which were entered into AFTER THE FINAL dismissal of the previous case.   An Amended Stipulation Agreement was entered into on or about June 30, 2011. SEE Plaintiff's own amended motion for Final Judgment filed June 15, 2018, attached as Exhibit D.   The Second Amended Stipulation Agreement was entered into on or about December 20, 2011.    SEE Plaintiff's own amended motion for Final Judgment filed June 15, 2018, attached as Exhibit D.

11.     In short, Plaintiff now seeks to enforce in this new case a settlement that did not exist when the Court dismissed the previous case without prejudice, and notwithstanding that the Final order does not reference a settlement agreement, or reserve jurisdiction to enforce one.

12.     For several reasons, this Court does not have jurisdiction to do so.

_____

[2] Our office was retained today, and the order is not available on line to print.  A copy of it will be obtained from the clerk's office.

## THE ORDER PURPORTING TO ENFORCE THE SETTLEMENT AGREEMENT IS NULLIFIED BY THE FINAL DISMISAL

13.  **First and foremost, it bears repeating that the order that ratifies a settlement agreement, ratifies a DIFFERENT settlement agreement.**

14.  The final settlement agreement was entered into AFTER the final dismissal.

15.  Regardless, even if the first order could somehow be construed to adopt a settlement agreement that had not yet been entered into, upon entry of the Final Order, the Non-Final Order merged into the final order and was nullified.

16.  Even if for the sake of argument only it was an oversight of the final order, it does not matter.

17.  The original dismissal order was interlocutory, because it unambiguously did **not** dispose of the Plaintiffs claims, only the Defendant's counterclaims. **Exhibit A.**

18.  Indeed, the matter was thereafter set for trial by the Court, and dismissed without any reservation or reference to the settlement agreement. **Exhibits B and C.**

19.  "This was a matter which should have been brought up at the final hearing. Because the final judgment makes no reference to this matter, the wife cannot now seek to enforce compliance with the temporary order." Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991)

20.  Similarly, "The general rule of procedure is that all provisional or interlocutory proceedings in a cause are merged in, and disposed of, by the final decree therein. Interlocutory or temporary injunctions cease upon a decree dismissing the cause. A receivership created by interlocutory order would terminate under the same conditions....... **The dismissal of the cause clearly terminates the operation of such an order so far as future payments are concerned.**" Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991).

21.     Similarly, "From the four corners of the final judgment, there is no requirement that plaintiff pay anything to any of the defendants. We therefore hold that the final judgment did not require plaintiff to refund $89,226.92 of its fee to the Manors defendants. To the extent that the interlocutory order granting summary judgment was inconsistent with the final judgment, the interlocutory order did not survive the final judgment." Hecht Consulting Corp. v. Manors of Inverrary XI Ass'n, Inc., 125 So. 3d 267, 268 (Fla. 4th DCA 2013).

22.     The Third District agrees. It is true that the first order did, at that time, constitute the law of the case. However, that order has now merged into the Swiss partial final judgment. Consequently, the Court's Order in *Kramer I,* is of no force in the present action. Otto's Heirs v. Kramer, 797 So. 2d 594, 596 (Fla. 3d DCA 2001) citing Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991).

23.     Further, the Third district has held that **"[t]he law is well settled that unilateral mistakes of law such as this and misunderstanding of possible results of judicial decrees and judgments are not grounds for relief [under rule 1.540(b)].** Handel v. Nevel, 147 So. 3d 649, 652–53 (Fla. 3d DCA 2014) citing Skinner v. Skinner, 579 So.2d 358, 359 (Fla. 4th DCA 1991).

24.     Simply put, even if the Final dismissal order was an error, it does not matter.  At that point, the case is over.

25.     In Baratta v. Valley Oak Homeowners' Ass'n at the Vineyards, Inc., 891 So. 2d 1063, 1065 (Fla. 2d DCA 2004), the owner sued an association for an injunction, won a temporary injunction, but then the case was dismissed for lack of prosecution.  The appellate court awarded prevailing party attorneys fees to the Association, even though it lost the temporary injunction. The appellate court stated in footnote 2 "We are not unsympathetic to Baratta's contention that he should be deemed the prevailing party because he succeeded in getting the relief he requested, a

temporary injunction. However, Baratta still had a claim for permanent injunction pending in the court. Although he won the battle at the temporary injunction hearing, he lost the war when his case was involuntarily dismissed after a year of no record activity and his temporary injunction was dissolved. After his initial victory at the temporary injunction hearing, Baratta should have filed a motion for default judgment when Valley Oak failed to file an answer. Because Baratta instead opted to do nothing, Valley Oak was able to file its motion to dismiss for lack of prosecution."

26.     Similarly here, the Association's decision not to seek a final order incorporating the original settlement agreement resulted in a Final order of dismissal that was entered by this Honorable Court. **Exhibit C.**

### NO RESERVATION OF JURISDICTION OR MENTION OF THE SETTLEMENT AGREEMENT IN THE FINAL ORDER OF THE SETTLEMENT SO THE SETTLEMENT CANNOT BE ENFORCED HEREIN

27.     The Final dismissal did NOT retain jurisdiction to enforce the settlement agreement or mention or incorporate it.

28.     Indeed, the relevant settlement agreement was entered into after it was entered and on **December 2011, long after this case was dismissed.**

29.     It is well settled, that if the Parties just announce to the Court that they have settled, but the settlement is NOT incorporated into the final judgment, or at least contain a reservation of jurisdiction to enforce,  a separate suit must be filed.

30.     Unlike the situation in Broadband, no detailed written stipulation was filed or reviewed by the court as the predicate for the 1984 dismissal of this action. Rather, the parties simply stipulated that they had settled the matter and that the court could dismiss the action with prejudice.  Buonopane v. Ricci, 603 So. 2d 713, 714 (Fla. 4th DCA 1992).

31.     Similarly, "We hold that these circumstances are insufficient to invoke the continuing jurisdiction of the court after a dismissal with prejudice. In essence, the parties settled a tort action by entering into a voluntary contractual arrangement. Like parties entering into other contracts, the parties here are free to assert their contractual rights in the event of a breach. **However, since the parties did not choose to submit their agreement to the court to serve as a basis for a subsequent judgment or order, they have waived their right to have the tort action serve as a vehicle for enforcement of the agreement.** Although we may appear to some degree to be putting form over substance, **we emphasize that we are not free to vest courts with jurisdiction out of the blue.**" <u>Buonopane v. Ricci</u>, 603 So. 2d 713, 714 (Fla. 4th DCA 1992) (emphasis added).

32.     The Florida Supreme Court has similarly held, "On some occasions ... settlement is reached, and dismissal is later achieved by the parties without an order of court pursuant to Florida Rule of Civil Procedure 1.420. When this is the route taken and the parties have neither presented the settlement agreement to the judge nor obtained an order of dismissal predicated upon the same, **a party will not be able to obtain enforcement of the settlement agreement by simply filing a motion in the now-dismissed case if one of the other parties to the agreement objects. By voluntarily dismissing their suit, the litigants have removed their dispute from the judge's consideration.... In this instance, the parties would ordinarily have to pursue a new breach of contract action to enforce the settlement agreement.**" <u>Paulucci v. Gen. Dynamics Corp.</u>, 842 So. 2d 797, 802–03 (Fla. 2003)

33.     Simply put, the settlement agreement at issue here POST DATES the final dismissal, and clearly was not incorporated into the final judgment, nor does the final judgment reserve to enforce its terms. Therefore, the Court is without jurisdiction to enforce it.

### THE COURTS INTERLOCUTOTY ORDER ENFORCING THE AGREEMENT DID NOT SURVIVE, THE NEW SETTLEMENT CANNOT BE ENFORCED HEREIN

34.      "When a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement.... However, **the extent of the court's continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of that agreement**. Thus, if a party is claiming a breach of the agreement and is seeking general damages **not specified in the agreement**, the appropriate action would be to file a separate lawsuit." Olen Properties Corp. v. Wren, 109 So. 3d 263, 265 (Fla. 4th DCA 2013)(emphasis added).

35.      Obviously, Plaintiff is seeking damages in excess of the original agreement, as it is attempting to rely on a settlement agreement that post dates the Final order of dismissal.

36.      Similarly, "By enforcing a contract, **it is assumed that the contract has continuing validity and a party is ordered to comply with its terms**......Here, the landlord sought damages for a breach of the lease and settlement agreements. Damages substituted for performance of the lease agreements. The settlement agreement did not include payment of these damages as one of its terms. Thus, pursuant to Paulucci, this claim should have been brought as an independent suit" Boca Petroco, Inc. v. Petroleum Realty I, LLC, 993 So. 2d 1092, 1095 (Fla. 4th DCA 2008).

37.      Here, the settlement agreement that was incorporated into the non-final order was amended and superseded by two separate agreements thereafter. The law is clear that enforcement of a settlement agreement that has not even been entered into on the date of the Final Judgment is beyond the jurisdiction of the trial court.

### THE JUDGMENT OR DISMISSAL ORDER CANNOT BE AMENDED

38.     As the Court failed to retain jurisdiction to enforce the terms of the Settlement

Agreement in the Final Order, **and certainly did not retain jurisdiction to enforce future**

**settlements entered into after the final order of dismissal,** and all post judgment periods have

elapsed, this Court lacks jurisdiction to entertain any motions in this matter. "In a foreclosure case,

after entry of a final judgment and expiration of time to file a motion for rehearing or for a new

trial, the trial court loses jurisdiction of the case ... unless jurisdiction was reserved to address that

matter or the issue is allowed to be considered post-judgment by statute or under a provision of

the Florida Rules of Civil Procedure." Cent. Mortg. Co. v. Callahan, 155 So. 3d 373, 375 (Fla. 3d

DCA 2014) See also Ross v. Damas, 31 So.3d 201, 203 (Fla. 3rd DCA 2010) (appointment of

guardian in foreclosure action post judgment was improper where jurisdiction was not reserved to

do so), PLCA Condo. Ass'n v. AmTrust-NP SFR Venture, LLC, 182 So. 3d 668, 669 (Fla. 4th

DCA 2015).

39.     It should also be noted that Defendant filed Chapter 11 bankruptcy on 1/11/2016

and the plan was confirmed on June 12, 2018. See attached **Exhibit E.**

40.     To be sure, undersigned asserts that this Court has no jurisdiction because the order

of dismissal (**Exhibit C**) is final.  The bankruptcy, wiped out some or all of Plaintiff's claims.

41.     Similarly, there are other state law defenses including but not limited to Chapter

712 of the Florida statutes, which now exist but did not previously exist at the time of the

settlement.

42.     On February 27, 2019, Defendant Hazan moved to dismiss the previous case 08-

4519 CA 42. See attached **Exhibit F.**

43.     On June 21, 2019, Plaintiff filed its response to Defendant' Motion to Dismiss in

case 08-4519-CA 42. See attached **Exhibit G.**

**THE ORDER DATED JULY 1, 2019, ENTERED BY JUDGE JACQUELINE HOGAN SCOLA DISMISSING THE PREVIOUS CASE 08-4519 CA 42 WITH PREJUDICE BARS THIS INSTANT CASE.**

44.    On July 1, 2019, Judge Jacqueline Hogan Scola dismissed the case 08-4519-CA 42 with prejudice. See attached **Exhibit H.**

**THIS NEW CASE IS BARRED UNDER THE STATUTE OF LIMITATIONS**

45.    Under Florida Statute 95.11 (2012), most legal or equitable actions based upon a breach of contract, obligation, or a liability founded upon a *written* contract must be brought within 5 years. Breach of contract claims benefit from a relatively long statute of limitations. In Florida, a plaintiff has five years to assert a claim for breach of a written contract. Fla. Stat. § 95.11 (providing a five-year statute of limitations for written contracts). The statute of limitations begins to run when the contract is breached. *State Farm Mut. Auto. Ins. Co. v. Lee*, 678 So. 2d 818 (Fla. 1996) ("A cause of action on a contract accrues and the statute of limitations begins to run from the time of the breach of contract"). This is somewhat unique when contrasted against other claims under Florida law, where statutes of limitation generally begin running when the plaintiff knew or should have known the claim accrued. *See, e.g., Wood v. Eli Lilly & Co.*, 701 So. 2d 344, 347 (Fla. 1997) (The "statute of limitations for DES negligence actions begins to run on the date the plaintiff knew or should have known of his or her injury"); Fla. Stat § 95.031 ("An action founded upon fraud… must be begun… with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered…"). Florida's statute of limitation law seemingly creates a bright line rule for business litigation claims founded on a breach of contract. **Five years after a contract is breached, the plaintiff is time-barred from asserting a claim on that contract.** *State Farm Mut. Auto. Ins. Co.*, 678 So. 2d 818. This is true even if damages do not result or become ascertained until some point in the future because the action is

founded on the breach of duty and not the consequent injuries. *Med. Jet, S.A. v. Signature Flight Support-Palm Beach, Inc.*, 941 So. 2d 576 (Fla. 4th DCA 2006) ("Florida has followed this general rule that a cause of action for breach of contract accrues at the time of the breach, 'not from the time when consequential damages result or become ascertained.'"). *Fradley v. Dade Cnty.*, 187 So. 2d 48 (Fla. 3d DCA 1966) (holding that the limitations period begins running from the date of the breach because the "action is founded on the breach of duty and not the consequent injuries").

**RES JUDICATA**

46.    the Supreme Court has stated, **"Once the litigation is terminated and the time for appeal has run, that action is concluded for all time**. There is one exception to this absolute finality, and this is Rule 1.540, which gives the court jurisdiction to relieve a party from the act of finality in a narrow range of circumstances." Although Fla. R. Civ. P. 1.540 provides a procedural mechanism for undoing a judgment, the requirements of this rule are best addressed in a separate article.

47.    If the final judgment or order of the lower court is challenged, the appellate court's standard of review provides a certain degree of finality to the work of the trial court. Broadly speaking, the trial court's factual findings are accorded greater deference than its rulings on questions of law. Beyond this, it is often said that the judgment of the trial court "becomes" final when the time expires to file an appeal or when the appellate process is concluded. However, this statement of "finality" is generally made as a guide to ascertaining the *date* of finality, which, in turn, determines the timeliness of subsequent litigation (for example, whether the applicable statute of limitations has run). To determine the extent to which a final judgment precludes subsequent litigation, one must look to the judicial doctrines of the law of the case, res judicata, and collateral estoppel.

## THE LAW OF THE CASE

48.     The first judicial doctrine of finality to consider is that of the law of the case. The outcome of a direct appeal may be that the case is remanded to the trial court in whole or in part. In the litigation that follows within the *same* case, the law of the case will require that those "questions of law *actually decided* on appeal must govern the case in the same [appellate] court and the trial court, through all subsequent stages of the proceedings." Under this doctrine, the trial court, on remand, will be "bound to follow prior rulings of the appellate court *as long as the facts on which such decision [is] based continue to be the facts of the case.* " In fact, the appellate court, too, upon a subsequent appeal, will be bound by its prior rulings on those issues actually raised and on which the facts have remained the same, except that the appellate court need not adhere to a prior, incorrect ruling where to do so would constitute a "manifest injustice."

49.     Several features of this doctrine require emphasis. First, unlike res judicata, the doctrine is limited to litigation within *the same* case. It arises when an appellate court reaches the merits of some aspect of the case but remands the cause to the trial court for further consideration; in these circumstances, questions settled by the appellate court become the law of the case both on remand and in any subsequent appeal.

50.     Second, the doctrine is limited to those issues "actually decided on appeal." Notably, a per curiam affirmance can establish the law of the case as to those issues raised and decided in the prior appeal because the appellate court is understood to have examined and considered those issues presented. The Florida Supreme Court, however, has appropriately limited this principle. As the court explained in *Florida Department of Transportation v. Juliano*, 801 So. 2d 101, 108 (Fla. 2001), when a prior appellate court gives "no explanation for its decision, a subsequent appellate court is not bound by the law of the case unless a determination concerning

View Document – Miami-Dade County OCS

the propriety of the trial court's order is necessarily inconsistent with every possible correct basis for the earlier rulings of the appellate court." Thus, taking *Juliano* as an example, a brief opinion affirming the denial of summary judgment may do little to establish the law of the case because there might have been multiple issues that precluded the entry of summary judgment.

51.     Furthermore, the Florida Supreme Court has confirmed that "actually decided" means those issues "'*actually presented and considered* on a former appeal.'" This can include those issues that were "implicitly addressed or necessarily considered" in the appellate court's prior decision. Whether a panel of judges, in deciding an appeal, implicitly or necessarily considered certain issues may become a matter of some debate on remand in the trial court and in any subsequent appeal. For example, should a party raise an unpreserved evidentiary issue on appeal, the appellate court might reverse and remand for a new trial on other grounds. In these circumstances, it would be difficult to infer anything from the appellate court's silence regarding the evidentiary issue, as the court may have decided either that the issue did not present a fundamental error or that it was unnecessary to address the unpreserved issue in light of the reversal.

52.     Another feature of the law of the case doctrine is that it is more flexible in its application than res judicata and collateral estoppel. A trial court is only bound to adhere to the law of the case if the facts on which the appellate court's decision was based continue to be the facts of the case. The appellate court will likewise be bound by its prior decision only to the extent that the facts have remained the same. Finally, the doctrine includes a manifest injustice exception. As the Supreme Court explained in *Beverly Beach Properties, Inc. v. Nelson*, 68 So. 2d 604, 608 (Fla. 1953), "We may change 'the law of the case' at any time before we lose jurisdiction of a cause and will never hesitate to do so if we become convinced, as we are in this instance, that our

original pronouncement of the law was erroneous and such ruling resulted in manifest injustice."

## RES JUDICATA CLAIM PRECLUSION

53.   Like the law of the case doctrine, the doctrine of res judicata enforces finality by discouraging relitigation of issues previously decided. Unlike the law of the case doctrine, res judicata, also called "claim preclusion," applies only once a *final* judgment or order on the merits has been entered in a previous lawsuit. Res judicata simply refers to a "thing," or issue, having been "definitively settled by judicial decision." The *extent* to which a judgment is binding in other courts, forums, or jurisdictions is beyond the scope of this article. However, a general outline is offered to explain those situations in which the doctrine of res judicata applies.

54.   Several conditions must be met before a party can invoke res judicata. The Florida Supreme Court has articulated the doctrine as follows:

55.   A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

56.   Thus, res judicata bars not only those claims that were raised, but also any claims that could have been raised in the prior action. Decisional law has emphasized each element of this definition, requiring, as an initial matter, 1) a judgment, 2 ) on the merits, 3) in a former suit. Beyond these preliminary requirements, application of res judicata requires that certain similarities exist between the previous action and the new one. These similarities, often called the "four identities," are "1. Identity in the thing sued for. 2. Identity of the cause of action. . . 3. [Identity] of persons and of parties to the action. 4. Identity of the quality in the persons for or against whom the claim is made. . . . " If these conditions are present, any point raised and decided

in the former suit "cannot again be drawn in question in any future action between the same parties." As a consequence, any future suit on the same claim, or any claim that could have been litigated in that action, is barred.

57.      Res judicata enforces finality by preventing the parties to a judgment from returning to court on the same cause of action or on any matter that could have been raised between the same parties. Once a judgment becomes final, and assuming it is not set aside, that judgment is deemed conclusive as to those matters that could have been litigated, thereby preventing either party from effectively undoing the judgment through relitigation.

58.      The Florida Supreme Court has distinguished the doctrine of res judicata from the law of the case doctrine as follows: "Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved. Under these circumstances, the doctrine of the law of the case applies." Hence, unlike the law of the case doctrine, res judicata does not depend on appellate review for its application. "Ordinarily, a determination that has become final in a prior case will be given preclusive effect even if it has not been subjected to appellate review." On the other hand, when a judgment has yet to be entered and the parties remain in litigation within the same suit, the law of the case doctrine — rather than res judicata — would apply to preclude relitigation of those issues previously decided on appeal.

59.      Another feature of res judicata worth noting is that its application depends on the facts in the prior case. A change in the facts may give rise to a distinct claim — one that could not have been litigated during the prior action — in which case collateral estoppel rather than res judicata may apply. The courts have explained that "[r]es judicata extends only to the facts and conditions as they existed at the time the prior court rendered the prior judgment." However, if the

new claim is one that could have been raised based on the facts as they existed in the prior case, then res judicata will function to bar the claim.

60.   Lastly, although res judicata "has a more binding effect" than the law of the case, courts will not invoke the doctrine "where it will work an injustice." Thus, like the law of the case doctrine and collateral estoppel, res judicata will not be applied where it would defeat the ends of justice.

## COLLATERAL ESTOPPEL - ISSUE PRECLUSION

61.   Another doctrine of finality to consider, one which is related to res judicata, is that of collateral estoppel, also referred to as "issue preclusion." "'[C]ollateral estoppel prevents identical parties from relitigating identical issues that have been determined in a prior litigation.'" In *Holt v. Brown's Repair Service, Inc.*, 780 So. 2d 180, 182 (Fla. 2d DCA 2001), the Second District Court of Appeal explained collateral estoppel as follows:

62.   [F]or the doctrine of collateral estoppel to apply, an identical issue must be presented in a prior proceeding; the issue must have been a critical and necessary part of the prior determination; there must have been a full and fair opportunity to litigate that issue; the parties in the two proceedings must be identical; and the issues must have been actually litigated.

63.   Moreover, for collateral estoppel to apply, the prior matter must have been "fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction." The common element shared by collateral estoppel and res judicata is the entry of a final judgment or order. Obtaining appellate review is not a prerequisite to applying either doctrine. What is necessary for either doctrine to apply is the existence of a final judgment or order, and the entry of a final judgment distinguishes both res judicata and collateral estoppel from the doctrine of the law of the case.

64.     Unlike res judicata, collateral estoppel will apply even if the two causes of action are different. In distinguishing collateral estoppel from res judicata, this difference is worth emphasizing. Because collateral estoppel applies in a subsequent cause of action, one must consider that the subsequent claim is *distinct* from the first action, otherwise res judicata would apply to bar the claim as a whole. Assuming res judicata does not apply, collateral estoppel functions to bar, not the claim as a whole, but those issues that were litigated in the first action. The Supreme Court has explained this important distinction:

65.     [U]nder res adjudicata a final decree of judgment bars a subsequent *suit* between the same parties based upon the same cause of action[,]. . . while the principle of estoppel by judgment is applicable where two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit *issues* . . . common to both causes of action and which were actually adjudicated in the prior litigation.

66.     One scholar has proposed that the term "issue preclusion" be used instead of collateral estoppel, and that the term "claim preclusion" be used in place of res judicata. In practice, this is a helpful distinction, as it emphasizes the impact of each doctrine. Although the courts have observed that res judicata also functions to bar issues, as a practical matter there seems to be little point in stating that an "issue" is barred when in fact the claim as a whole is barred.

67.     To distinguish collateral estoppel from res judicata, consider the following example: In *M.C.G. v. Hillsborough County School Board*, 927 So. 2d 224, 225 (Fla. 2d DCA 2006), two parents brought a claim against the Hillsborough County School Board alleging that their autistic child, who was in a full-time home education program, was entitled to speech therapy services for the 2004-05 school year. The administrative law judge had previously denied a similar claim brought by the parents involving the 2003-04 school year. The Second District Court of

Appeal recognized that the second claim was a distinct cause of action from the original claim because it involved a different time period. Thus, although res judicata did not apply to bar the second claim, which was a distinct cause of action, collateral estoppel applied to estop the parties from relitigating an issue that had been decided against them.

### CONCLUSION

68.     This case ended when the Court dismissed it without reserving jurisdiction to enforce any settlement agreement, and without reference to any settlement agreement. **Exhibit C.** and Judge Hogan Scola dismissed the case 08-4519 CA 42 with prejudice. It is also entirely without merit (and indeed, subject to 57.105 sanctions, and a motion regarding same is going to be sent to Plaintiff's counsel) for Plaintiff's counsel to now attempt to enforce a settlement agreement that was entered into **months after the dismissal, and which replaced and superseded the settlement agreement entered into during the previous action** in case 08-4519 CA 42. Similarly, because the final order did not reserve jurisdiction to enforce or mention any settlement agreement, no settlement agreement can be enforced herein. However, it is frivolous for Plaintiff to argue that a settlement agreement entered into months after the dismissal can somehow be enforced in this action. and Judge Hogan Scola dismissed the case 08-4519 CA 42 with prejudice. Plaintiff never appealed the Order of Dismissal with prejudice dated July 1, 2019.

WHEREFORE, Defendant, ELIZABETH HAZAN, respectfully requests that this Court grant its Motion to Dismiss with prejudice, and award any and all other such further relief that this Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via e-service to Nataly Gutierrez, Esq. Nataly@peytonbolin.com, Litigation@peytonbolin.com, and via US Mail to PeytonBolin, PL 3343 West Commercial Boulevard Suite 100 Fort Lauderdale, FL 33309 on this 1st day of June, 2024.

**LIZA HAZAN A/K/A ELIZABETH HAZAN,**
**6913 Valencia Drive, Miami Fl 33109**
Primary Email: lizahazan77@gmail.com
Secondary Email: elizabethhazan07@gmail.com

By: _____
LIZA HAZAN A/K/A ELIZABETH HAZAN

Filing # 85626372 E-Filed 02/27/2019 10:25:50 PM

**EXHIBIT F**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,
       Plaintiff,
v.

CASE NO.:  08-4519 CA 42

ELIZABETH HAZAN, ET AL.,
       Defendants.
_____/

## MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendant, ELIZABETH HAZAN, ("Owner") through undersigned counsel, respectfully moves this Court for entry of an order dismissing this action, and states as follows:

### BRIEF RELEVANT BACKGROUND TO THIS MOTION

1.    Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation, ("Association"), filed the instant action on January 29, 2008 against the Owner seeking collection of alleged outstanding assessments owed.

2.    On or about May 11, 2010, Owner and Association entered into a first Stipulation Agreement resolving this dispute.

3.    On the same day, Judge Israel Reyes entered an Order on Stipulation Agreement (hereinafter referred to as "Non-Final Order"), a copy of which is attached hereto as **Exhibit "A"**.

4.    In the Non-Final Order, this Court approved the first Stipulation Agreement, retained jurisdiction to enforce the stipulation, but <u>only</u> dismissed Owner's counterclaim against the Association with prejudice.  Therefore, the case was still pending at that time.

5.    **Further, after the settlement agreement was entered, and the non-final order issued above, which did not dispose of all the claims, an order setting trial was entered.**

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 2 OF 10

6.      **See Order setting trial on April 4, 2011.**  See docket entry attached as **Exhibit B**.[1]

7.      On May 5, 2011, Judge Eugene J. Fierro entered an Order on the Court's Motion for Non-Jury Trial **dismissing the entire case without any reservation of jurisdiction** (hereinafter referred to as "Final Order"), a copy of which is attached hereto as **Exhibit "C"**.

8.      Unlike the Non-Final Order, the Final Order **(entered after the case was set for trial)** dismissed the entire case without prejudice. **Exhibit "C"**.

9.      Also, unlike the Non-Final Order, the Final Order **failed** to reserve jurisdiction to enforce the terms of the Settlement Agreement. **Exhibit "C"**.

10.     **More importantly, the settlement entered into during the pendency of this case was replaced by two new settlement agreements, both of which were entered into AFTER THE FINAL dismissal.** An Amended Stipulation Agreement was entered into on or about June 30, 2011. SEE Plaintiff's own amended motion for Final Judgment filed June 15, 2018, attached as **Exhibit D**.  The Second Amended Stipulation Agreement was entered into on or about December 20, 2011.   SEE Plaintiff's own amended motion for Final Judgment filed June 15, 2018, attached as **Exhibit D**.

11.     **In short, Plaintiff now seeks to enforce in this case a settlement that did not exist when this Court dismissed the case without prejudice, and notwithstanding that the Final order does not reference a settlement agreement, or reserve jurisdiction to enforce one.**

12.     For several reasons, this Court does not have jurisdiction to do so.

_____

[1] Our office was retained today, and the order is not available on line to print.  A copy of it will be obtained from the clerk's office.

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 3 OF 10

## THE ORDER PURPORTING TO ENFORCE THE SETTLEMENT AGREEMENT IS NULLIFIED BY THE FINAL DISMISAL

13. **First and foremost, it bears repeating that the order that ratifies a settlement agreement, ratifies a DIFFERENT settlement agreement.**

14. The final settlement agreement was entered into AFTER the final dismissal.

15. Regardless, even if the first order could somehow be construed to adopt a settlement agreement that had not yet been entered into, upon entry of the Final Order, the Non-Final Order merged into the final order and was nullified.

16. Even if for the sake of argument only it was an oversight of the final order, it does not matter.

17. The original dismissal order was interlocutory, because it unambiguously did **not dispose of the Plaintiffs claims, only the Defendant's counterclaims. Exhibit A.**

18. Indeed, the matter was thereafter set for trial by this Court, and dismissed without any reservation or reference to the settlement agreement. **Exhibits B and C.**

19. "This was a matter which should have been brought up at the final hearing. Because the final judgment makes no reference to this matter, the wife cannot now seek to enforce compliance with the temporary order." Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991)

20. Similarly, "The general rule of procedure is that all provisional or interlocutory proceedings in a cause are merged in, and disposed of, by the final decree therein. Interlocutory or temporary injunctions cease upon a decree dismissing the cause. A receivership created by interlocutory order would terminate under the same conditions.......**The dismissal of the**

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 4 OF 10

cause clearly terminates the operation of such an order so far as future payments are concerned." Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991).

21.     Similarly, "From the four corners of the final judgment, there is no requirement that plaintiff pay anything to any of the defendants. We therefore hold that the final judgment did not require plaintiff to refund $89,226.92 of its fee to the Manors defendants. To the extent that the interlocutory order granting summary judgment was inconsistent with the final judgment, the interlocutory order did not survive the final judgment." Hecht Consulting Corp. v. Manors of Inverrary XI Ass'n, Inc., 125 So. 3d 267, 268 (Fla. 4th DCA 2013).

22.     The Third District agrees. It is true that the first order did, at that time, constitute the law of the case. However, that order has now merged into the Swiss partial final judgment. Consequently, the Court's Order in *Kramer I*, is of no force in the present action. Otto's Heirs v. Kramer, 797 So. 2d 594, 596 (Fla. 3d DCA 2001) citing Skinner v. Skinner, 579 So. 2d 358, 359 (Fla. 4th DCA 1991).

23.     Further, the Third district has held that "[t]he law is well settled that unilateral mistakes of law such as this and misunderstanding of possible results of judicial decrees and judgments are not grounds for relief [under rule 1.540(b) ]. Handel v. Nevel, 147 So. 3d 649, 652–53 (Fla. 3d DCA 2014) citing Skinner v. Skinner, 579 So.2d 358, 359 (Fla. 4th DCA 1991).

24.     Simply put, even if the Final dismissal order was an error, it does not matter.  At that point, the case is over.

25.     In Baratta v. Valley Oak Homeowners' Ass'n at the Vineyards, Inc., 891 So. 2d 1063, 1065 (Fla. 2d DCA 2004), the owner sued an association for an injunction, won a temporary

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 5 OF 10

injunction, but then the case was dismissed for lack of prosecution. The appellate court awarded prevailing party attorneys fees to the Association, even though it lost the temporary injunction. The appellate court stated in footnote 2 "We are not unsympathetic to Baratta's contention that he should be deemed the prevailing party because he succeeded in getting the relief he requested, a temporary injunction. However, Baratta still had a claim for permanent injunction pending in the court. Although he won the battle at the temporary injunction hearing, he lost the war when his case was involuntarily dismissed after a year of no record activity and his temporary injunction was dissolved. After his initial victory at the temporary injunction hearing, Baratta should have filed a motion for default judgment when Valley Oak failed to file an answer. Because Baratta instead opted to do nothing, Valley Oak was able to file its motion to dismiss for lack of prosecution."

26.    Similarly here, the Association's decision not to seek a final order incorporating the original settlement agreement resulted in a Final order of dismissal that was entered by this Honorable Court. **Exhibit C.**

### NO RESERVATION OF JURISDICTION OR MENTION OF THE SETTLEMENT AGREEMENT IN THE FINAL ORDER OF THE SETTLEMENT SO THE SETTELEMENT CANNOT BE ENFORCED HEREIN

27.    The Final dismissal did NOT retain jurisdiction to enforce the settlement agreement or mention or incorporate it.

28.    Indeed, the relevant settlement agreement was entered into after it was entered and on **December 2011, long after this case was dismissed.**

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 6 OF 10

29.     It is well settled, that if the Parties just announce to the Court that they have settled,
but the settlement is NOT incorporated into the final judgment, or at least contain a reservation of
jurisdiction to enforce, a separate suit must be filed.

30.     Unlike the situation in Broadband, no detailed written stipulation was filed or
reviewed by the court as the predicate for the 1984 dismissal of this action. Rather, the parties
simply stipulated that they had settled the matter and that the court could dismiss the action with
prejudice. Buonopane v. Ricci, 603 So. 2d 713, 714 (Fla. 4th DCA 1992).

31.     Similarly, "We hold that these circumstances are insufficient to invoke the
continuing jurisdiction of the court after a dismissal with prejudice. In essence, the parties settled
a tort action by entering into a voluntary contractual arrangement. Like parties entering into other
contracts, the parties here are free to assert their contractual rights in the event of a breach.
**However, since the parties did not choose to submit their agreement to the court to serve as
a basis for a subsequent judgment or order, they have waived their right to have the tort
action serve as a vehicle for enforcement of the agreement.** Although we may appear to some
degree to be putting form over substance, **we emphasize that we are not free to vest courts with
jurisdiction out of the blue.**" Buonopane v. Ricci, 603 So. 2d 713, 714 (Fla. 4th DCA 1992)
(emphasis added).

32.     The Florida Supreme Court has similarly held, "On some occasions ... settlement
is reached, and dismissal is later achieved by the parties without an order of court pursuant to
Florida Rule of Civil Procedure 1.420. When this is the route taken and the parties have neither
presented the settlement agreement to the judge nor obtained an order of dismissal predicated upon

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 7 OF 10

the same, a party will not be able to obtain enforcement of the settlement agreement by simply

filing a motion in the now-dismissed case if one of the other parties to the agreement objects.

By voluntarily dismissing their suit, the litigants have removed their dispute from the judge's

consideration.... In this instance, the parties would ordinarily have to pursue a new breach

of contract action to enforce the settlement agreement." Paulucci v. Gen. Dynamics Corp., 842

So. 2d 797, 802–03 (Fla. 2003)

33.     Simply put, the settlement agreement at issue here POST DATES the final

dismissal, and clearly was not incorporated into the final judgment, nor does the final judgment

reserve to enforce its terms.  Therefore, the Court is without jurisdiction to enforce it.

**EVEN ASSUMING ARGUENDO THE COURTS INTERLOCUTOTY ORDER
ENFORCING THE AGREEMENT SURVIVES, AND IT DOES NOT, THE NEW
SETTLEMENT CANNOT BE ENFORCED HEREIN**

34.     "When a court incorporates a settlement agreement into a final judgment or

approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court

has the jurisdiction to enforce the terms of the settlement agreement.... However, **the extent of the**

**court's   continuing jurisdiction to enforce the   terms   of   the settlement agreement is**

**circumscribed by the terms of that agreement.** Thus, if a party is claiming a breach of

the agreement and is seeking general damages **not specified in the agreement**, the appropriate

action would be to file a separate lawsuit." Olen Properties Corp. v. Wren, 109 So. 3d 263, 265

(Fla. 4th DCA 2013)(emphasis added).

35.     Obviously, Plaintiff is seeking damages in excess of the original agreement, as it is

attempting to rely on a settlement agreement that post dates the Final order of dismissal.

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 8 OF 10

36.     Similarly, "By enforcing a contract, **it is assumed that the contract has continuing validity and a party is ordered to comply with its terms**......Here, the landlord sought damages for a breach of the lease and settlement agreements. Damages substituted for performance of the lease agreements. The settlement agreement did not include payment of these damages as one of its terms. Thus, pursuant to <u>Paulucci</u>, this claim should have been brought as an independent suit" <u>Boca Petroco, Inc. v. Petroleum Realty I, LLC</u>, 993 So. 2d 1092, 1095 (Fla. 4th DCA 2008).

37.     Here, the settlement agreement that was incorporated into the non-final order was amended by two separate agreements thereafter. The law is clear that enforcement of a settlement agreement that has not even been entered into on the date of the Final Judgment is beyond the jurisdiction of the trial court.

## THE JUDGMENT OR DISMISSAL ORDER CANNOT BE AMENDED

38.     As this Court failed to retain jurisdiction to enforce the terms of the Settlement Agreement in the Final Order, **and certainly did not retain jurisdiction to enforce future settlements entered into after the final order of dismissal,** and all post judgment periods have elapsed, this Court lacks jurisdiction to entertain any motions in this matter. "In a foreclosure case, after entry of a final judgment and expiration of time to file a motion for rehearing or for a new trial, the trial court loses jurisdiction of the case ... unless jurisdiction was reserved to address that matter or the issue is allowed to be considered post-judgment by statute or under a provision of the Florida Rules of Civil Procedure." <u>Cent. Mortg. Co. v. Callahan</u>, 155 So. 3d 373, 375 (Fla. 3d DCA 2014) <u>See also Ross v. Damas</u>, 31 So.3d 201, 203 (Fla. 3rd DCA 2010) (appointment of

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 9 OF 10

guardian in foreclosure action post judgment was improper where jurisdiction was not reserved to

do so), PLCA Condo. Ass'n v. AmTrust-NP SFR Venture, LLC, 182 So. 3d 668, 669 (Fla. 4th

DCA 2015).

## ADDITIONAL ARGUMENT IN THE ALTERNATIVE AND IN OPPOSITION TO THE MOTION FOR FINAL JUDGMENT

39.     It should also be noted that Defendant filed Chapter 11 bankruptcy on 1/11/2016

and the plan was confirmed on June 12, 2018. See attached **Exhibit E.**

40.     In addition, **a discharge was recently entered on December 6, 2018. Exhibit F.**

41.     To be sure, undersigned asserts that this Court has no jurisdiction because the order

of dismissal (**Exhibit C**) is final.  However, in the alternative, Defendant will be filing a request

to amend the Answer and Affirmative Defenses and assert defenses based on the bankruptcy,

which wipes out most of Plaintiff's claims.

42.     Similarly, there are other state law defenses including but not limited to Chapter

712 of the Florida statutes, which now exist but did not previously exist at the time of the

settlement.

## CONCLUSION

43.     This case ended when the Court dismissed it without reserving jurisdiction to

enforce any settlement agreement, and without reference to any settlement agreement. **Exhibit C.**

It is also entirely without merit (and indeed, subject to 57.105 sanctions, and a motion regarding

same is going to be sent to Plaintiff's counsel) for Plaintiff's counsel to now attempt to enforce a

settlement agreement that was entered into **months after the dismissal, and which replaced the**

**settlement agreement entered into during this action.**   Similarly, because the final order did

FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation
v. ELIZABETH HAZAN, ET AL.
CASE NO.: 08-4519 CA 42
MOTION TO DISMISS FOR LACK OF JURISDICTION
PAGE 10 OF 10

not reserve jurisdiction to enforce or mention any settlement agreement, no settlement agreement

can be enforced herein.  However, it is frivolous for Plaintiff to argue that a settlement agreement

entered into months after the dismissal can somehow be enforced in this action.

    WHEREFORE, Defendant, ELIZABETH HAZAN, respectfully requests that this Court

grant its Motion to Dismiss for Lack of Jurisdiction, and award any and all other such further relief

that this Court deems just and proper.

### CERTIFICATE OF SERVICE

    I CERTIFY that a copy of the foregoing was served this 27th day of February, 2019 upon:

**Via email only:**
Michael Mayer, Esq.
Attorney for the Plaintiff
michael@peytonbolin.com
foreclosure@peytonbolin.com

John Paul Arcia, Esq.
Co-counsel for the Defendant
service@arcialaw.com

        **SHIR LAW GROUP, P.A.**
        2295 N.W. Corporate Blvd., Suite 140
        Boca Raton, FL 33431
        Phone: 561.999.5999
        Fax: 561.893.0999
        Primary Email: SZoberg@shirlawgroup.com
        Secondary Email: office@shirlawgroup.com

    By:
        STUART J ZOBERG, ESQ.
        FLA. BAR NO. 611891

Miami-Dade Official Records - Print Document                                    Page 1 of 2

8075825

MIAMI-

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, et. al,

      Defendants.
_____/

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR

DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 08-4519 CA 15

### ORDER ON STIPULATION AGREEMENT

    THIS CAUSE having come on to be heard before me, the undersigned Judge, upon the

parties' confidential Stipulation Agreement; and the Court after being advised of the Stipulation

Agreement executed by the Plaintiff/Counter-Defendant, FISHER ISLAND COMMUNITY

ASSOCIATION, INC. ("ASSOCIATION") and the Defendant/Counter-Plaintiff ELIZABETH

HAZAN ("HAZAN"), and being otherwise fully advised in the premises, it is:

    ORDERED AND ADJUDGED as follows:

    1.   The Stipulation Agreement is approved.

    2.   HAZAN'S counterclaim against the ASSOCIATION is dismissed with prejudice.

This Court retains jurisdiction over this matter in accordance with the Stipulation

    IT IS FURTHER ORDERED AND ADJUDGED that the movant shall, using the

method(s) mandated by the Florida Rules of Civil Procedure, serve all parties/counsel of record

Bk 27286 Pg 1188 CFN 20100327766 05/17/2010 09:52:12 Pg 1 of 2 Mia-Dade Cty, FL

*Exhibit
"A"*

https://www2.miami-dadeclerk.com/Public-Records/PrintDocument.aspx?OS=YaoUfOzxr...   2/27/2019

STIPULATION AGREEMENT
CASE NO. 06-4519 CA 15

with a true and correct copy of this Order IMMEDIATELY upon receipt and file proof of service

with the Clerk.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, this   11   day of

MAY, 2010.

Signed and Dated

MAY 1 1 2010

Judge Israel Reyes

ISRAEL REYES
CIRCUIT COURT JUDGE

Signed and stamped original Order sent to court file by Judge Reyes' staff
Electronic copy furnished to the below listed recipient(s) by facsimile.
NICHOLAS D. SIEGFRIED, Esq. (305.443.3292)

MICHAEL W. SIMON, Esq. (561.447.0018)
TIFFANI LEE, Esq. (305.789.7799)
NLG, LLC (305.422.0539)

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 § PHONE (305) 442-3334 § FAX (305) 443-3292

Bk 27286 Pg 1189 CFN 20100327766 05/17/2010 09:52:12 Pg 2 of 2 Mia-Dade Cty, FL

OCS Search                                                                    Page 1 of 12

lerk's Home (http://www.miami-dadeclerk.com/home.asp)
nline Services (http://www.miami-dadeclerk.com/online_services.asp)
bout Us (http://www.miami-dadeclerk.com/about.asp)
ontact Us (http://www.miami-dadeclerk.com/contact.asp)
y Account (https://www2.miami-dadeclerk.com/PremierServices/login.aspx)



## Miami-Dade County Civil, Family and Probate Courts Online System

◀◀ Back to Search

### FISHER ISLAND COMMUNITY ASSN INC VS HAZAN, ELIZABETH

Local Case Number: 2008-004519-CA-01

Filing Date: 01/29/2008

State Case Number: 132008CA004519000001

Case Type: z DO NOT USE - Legacy Mortgage Foreclosure

Consolidated Case No.: N/A

Judicial Section: CA34

Case Status: CLOSED

---

👥 **Parties**                                    Number of Parties: 3  ➕

---

🔨 **Hearing Details**                            Number of Hearing: 2  ➕

---

🔊 **Dockets**                                    Dockets Retrieved: 143  ➖

*Exhibit*
*12*                                              2/27/2019

https://www2.miami-dadeclerk.com/ocs/Search.aspx

OCS Search                                                                                    Page 2 of 12

Export to ▾

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 02/28/2019 | | Special Sets | Hearing | **MOTION TO VACATE AND MOTION FOR PROTECTIVE ORDER** |
| | 34 | 02/20/2019 | | Response to Motion | Event | **TO VACATE ORDER** |
| | 33 | 01/24/2019 | | Notice of Hrg Special Appt | Event | **FEBRUARY 28, 2019** |
| | 32 | 01/22/2019 | | Notice of Cancellation of Hearing | Event | |
| | 31 | 10/26/2018 | | Notice of Hrg Special Appt | Event | **1/29/2019** |
| | 30 | 10/05/2018 | | Notice of Filing: | Event | **AFFIDAVIT OF JOHN PAUL ARCIA** |
| | 29 | 10/01/2018 | | Motion: | Event | **TO VACATE ORDER OF SEPTEMBER 25, 2018** |
| | 28 | 09/25/2018 | | Order Granting Protective Order | Event | **& GRANTING OBJECTIONS TO DEF'S NOTICES OF TAKING DEPOSITIONS OF CONTROLLER OSCAR DIAZ, CEO GARY SNIDER & CAROL ALLISON** |
| | | 09/25/2018 | | Mortgage Foreclosure | Hearing | |
| | 27 | 09/13/2018 | | Cancellation Notice | Event | |
| | 26 | 09/13/2018 | | Email Notice: | Event | **EMAIL ADDRESS:** |
| | 25 | 09/13/2018 | | Notice of Appearance | Event | |
| | 24 | 08/23/2018 | | Notice of Hearing- | Event | **09/25/2018** |
| | 23 | 07/24/2018 | | Response: | Event | **TO REQUEST FOR PRODUCTION** |

OCS Search

Page 3 of 12

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 22 | 07/24/2018 | | Notice of Answer to Interrogatories | Event | |
| | 21 | 07/24/2018 | | Motion for Protective Order | Event | |
| | 18 | 06/25/2018 | | Notice of Taking Deposition | Event | |
| | 17 | 06/25/2018 | | Notice of Taking Deposition | Event | |
| | 16 | 06/25/2018 | | Notice of Taking Deposition | Event | |
| | 20 | 06/24/2018 | | Notice of Unavailability/absence | Event | |
| | 19 | 06/22/2018 | | Notice of Appearance | Event | |
| | 15 | 06/15/2018 | | Motion for Summary Judgment | Event | |
| | 14 | 11/17/2017 | | Cancellation Notice | Event | |
| | 13 | 10/24/2017 | | Motion for Protective Order | Event | |
| | 12 | 10/24/2017 | | Motion for Extension of Time | Event | *Parties: Fisher Island Community Assn Inc; O'Connor Melissa A* |
| | 11 | 10/13/2017 | | Notice of Taking Deposition | Event | |
| | 10 | 10/13/2017 | | Notice of Taking Deposition | Event | |
| | 9 | 10/11/2017 | | Request for Production | Event | |
| | 8 | 10/11/2017 | | Notice of Taking Deposition | Event | |
| | 7 | 10/11/2017 | | Notice of Interrogatory | Event | |

https://www2.miami-dadeclerk.com/ocs/Search.aspx

2/27/2019

OCS Search                                                                 Page 4 of 12

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | 6 | 10/10/2017 | | Notice of Filing: | Event | **PROOF OF CLAIM #18 & ORDER DENYING MTN TO ALLOW LATE FILED** |
| | 5 | 10/10/2017 | | Motion for Summary Judgment | Event | |
| | 4 | 08/24/2017 | | Notice of Filing: | Event | **FFIDAVITS** |
| | 3 | 08/07/2017 | | Notice of Filing: | Event | **AFFIDAVITS** |
| | 2 | 01/03/2017 | | Notice of Filing: | Event | |
| | 1 | 11/23/2016 | | Notice of Appearance | Event | *Parties: David W Langley; Hazan Elizabeth* |
| | | 07/11/2016 | 30147:2115 | Suggestion of Bankruptcy | Event | **16-10389-AJC** *Parties: Hazan Elizabeth* |
| | | 10/09/2015 | | Cancellation Notice | Event | **10/14/2015** |
| | | 09/24/2015 | | Receipt: | Event | **RECEIPT#:3580005 AMT PAID:$50.00 NAME:O'CONNOR, MELISSA A 1450 BRICKELL AVE FL 23 MIAMI FL 33131 ALLOCATION CODE QUANTITY UNIT AMOUNT 3117-REOPEN CASE FEE 1 $50.00 $50.00 TENDER TYPE:E-FILING ACH TENDER AMT:$50.00 RECEIPT DATE:09/** |
| | | 09/21/2015 | | Notice of Hearing- | Event | **10/14/2015** |
| | | 05/22/2015 | | Affidavit of Amount Due and Owning | Event | |

https://www2.miami-dadeclerk.com/ocs/Search.aspx                          2/27/2019

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 05/22/2015 | | Notice Of Filing Affidavits Of Amounts Due & Owing | Event | |
| | | 05/22/2015 | | Motion for Final Judgment | Event | |
| | | 03/24/2015 | | Text | Event | **REASSIGNED TO SECTION 34 PER ADM. ORDER 15-08** |
| | | 10/02/2013 | | Notice of Appearance | Event | **ATTORNEY:00347345** *Parties: Hazan Elizabeth* |
| | | 09/19/2013 | | Motion for Extension of Time | Event | |
| | | 09/03/2013 | | Cancellation Notice | Event | **09/17/2013 09:00 AM** |
| | | 09/03/2013 | | Order: | Event | **GRANTING MOTION TO WITHDRAW** |
| | | 08/20/2013 | | Notice of Hearing- | Event | **MOTIONS 09/03/2013 09:00 AM** |
| | | 08/20/2013 | | Notice of Taking Deposition | Event | |
| | | 08/20/2013 | | Motion to Withdraw | Event | |
| | | 08/20/2013 | | Notice of Interrogatory | Event | |
| | | 08/20/2013 | | Request for Production | Event | |
| | | 08/20/2013 | | Motion for Continuance | Event | |
| | | 08/08/2013 | | Notice of Hearing- | Event | **MOTIONS 08/17/2013 09:00 AM** |
| | | 07/01/2013 | | Notice of Filing: | Event | **AMENDED AFFIDAVIT** |
| | | 07/01/2013 | | Affidavit of: | Event | **AMOUNTS DUE** |

OCS Search

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 05/16/2013 | | Notice of Appearance | Event | **ATTORNEY:00224464** *Parties: Hazan Elizabeth* |
| | | 04/19/2013 | | Order: | Event | **GRANTING MOTION TO WITHDRAW AS COUNSEL FOR DEFT** |
| | | 04/04/2013 | | Notice of Hearing- | Event | **MOTIONS 04/16/2013 09:00 AM** |
| | | 04/02/2013 | | Notice of Hearing- | Event | **MOTIONS 04/16/2013 09:00 AM** |
| | | 04/02/2013 | | Motion to Withdraw | Event | |
| | | 03/28/2013 | | Motion to Withdraw | Event | |
| | | 03/28/2013 | | Notice of Hearing- | Event | **MOTIONS 04/03/2013 09:00 AM** |
| | | 03/14/2013 | | Notice of Hearing- | Event | **MOTIONS 03/26/2013 09:00 AM** |
| | | 12/06/2012 | | Motion for Final Judgment | Event | |
| | | 12/06/2012 | | Affidavit of Reasonable Attorney's Fees | Event | |
| | | 12/06/2012 | | Notice Of Filing Affidavit Of Reasonable Attorney Fees | Event | |
| | | 12/06/2012 | | Affidavit for Atty Fee and Costs | Event | |
| | | 12/06/2012 | | Notice of Filing: | Event | **AFFO OF FEES & COSTS BY ATTORNEY OF RECORD** |
| | | 12/06/2012 | | Affidavit of Amount Due and Owning | Event | |

https://www2.miami-dadeclerk.com/ocs/Search.aspx

2/27/2019

OCS Search

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 12/06/2012 | | Notice Of Filing Affidavits Of Amounts Due & Owing | Event | |
| | 11/20/2012 | | Order for Substitution of Counsel | Event | *Parties: Fisher Island Community Assn Inc* |
| | 11/19/2012 | | Notice: | Event | **OF SERVING ORDER FOR SUBISTITUTION OF COUNSEL** |
| | 11/08/2012 | | Motion: | Event | **FOR SUBSTITUTION OF COUNSEL** |
| | 07/27/2011 | | Reassignment Pursuant to Administrative Order | Event | **SECTION:42 FM:50** |
| | 07/27/2011 | | Text | Event | **REASGND FROM SEC 50 PER ADMINISTRATIVE MEMO CIV 11-A** |
| | 05/05/2011 | | Order of Dismissal | Judgment | **B: 27681 P: 1514** |
| | 05/05/2011 | 27681:1514 | Order of Dismissal | Event | **B: 27681 P: 1514** *Parties: Hazan Elizabeth; N L G (llc)* |
| | 04/04/2011 | | Order Setting Non-Jury Trial | Event | **N/J TRIALS 05/05/2011 10:10 AM** |
| | 07/02/2010 | | Returned Mail | Event | **CHRISTOPHER M DAVID** |
| | 06/19/2010 | | Text | Event | **REASGND FROM SEC 15 PER A.O. #10-06** |
| | 05/13/2010 | | Text | Event | **CERTIFICATE OF SERVICE OF PROVINDING EXECUTED ORDER ETC.** |

https://www2.miami-dadeclerk.com/ocs/Search.aspx

2/27/2019

OCS Search

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|--------|------|-----------|--------------|------------|----------|
| | 05/13/2010 | 27286:1188 | Court Order (Recordable) | Event | B: 27286 P: 1188 ON STIPULATION AGREEMENT |
| | 04/23/2010 | | Motion for Continuance | Event | |
| | 04/23/2010 | | Notice of Hearing- | Event | MOTIONS 04/27/2010 09:00 AM |
| | 04/23/2010 | | Memorandum of Law | Event | |
| | 04/19/2010 | | Affidavit of: | Event | OF DEFTS IN OPPOSTION TO MSJU |
| | 04/19/2010 | | Notice: | Event | OF SERVING AND FILING AFFO ETC.. |
| | 04/16/2010 | | Request for Admissions | Event | |
| | 04/16/2010 | | Notice of Interrogatory | Event | |
| | 04/16/2010 | | Request for Production | Event | |
| | 04/08/2010 | | Text | Event | 2ND-AMENDED AFFIDAVIT OF INDEBTEDNESS |
| | 04/08/2010 | | Notice of Filing: | Event | 2ND-AMENDED AFFIDAVIT OF INDEBTEDNESS |
| | 04/01/2010 | | Notice of Hearing- | Event | MOTIONS 04/28/2010 10:00 AM |
| | 06/18/2009 | | Response to Request for Production | Event | |
| | 05/15/2009 | | Reply to Affirmative Defenses | Event | |
| | 05/15/2009 | | Request for Production | Event | |

OCS Search

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 05/01/2009 | | Notice of Appearance | Event | **ATTORNEY:88888888** *Parties: Fisher Island Community Assn Inc* |
| | 05/01/2009 | | Motion to Dismiss | Event | |
| | 05/01/2009 | | Answer and Affirmative Defense | Event | **ATTORNEY:88888888** *Parties: Fisher Island Community Assn Inc* |
| | 03/31/2009 | | Motion for Extension of Time | Event | |
| | 03/10/2009 | | Order: | Event | **GRANTING MTN FOR LEAVE TO FILE COUNTERCLAIM** |
| | 02/27/2009 | | Notice of Hearing- | Event | **MOTIONS 03/11/2009 09:00 AM** |
| | 02/23/2009 | | Request: | Event | **FOR PHYSICAL EXAMINATION** |
| | 02/23/2009 | | Notice of Hearing- | Event | **MOTIONS 03/04/2009 09:00 AM** |
| | 02/13/2009 | | Motion: | Event | **TO ENFORCE SETTLEMENT AGREEMENT** |
| | 02/12/2009 | | Notice of Hearing- | Event | **MOTIONS 02/18/2009 09:00 AM** |
| | 02/12/2009 | | Notice of Filing: | Event | |
| | 02/06/2009 | | Motion for Summary Judgment | Event | |
| | 01/16/2009 | | Affidavit of Indebtedness | Event | |
| | 01/16/2009 | | Notice of Filing: | Event | **AMENDED AFFIDAVIT OF INDEBTEDNESS** |
| | 01/16/2009 | | Notice of Hearing- | Event | **MOTIONS 02/10/2009 09:00 AM** |

https://www2.miami-dadeclerk.com/ocs/Search.aspx

2/27/2019

OCS Search                                                                  Page 10 of 12

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|
| | 12/29/2008 | | Cancellation Notice | Event | 12/30/2008 09:30 AM |
| | 12/17/2008 | | Notice of Hearing- | Event | MOTIONS 12/30/2008 09:00 AM |
| | 11/20/2008 | | Text | Event | AMENDED AFFIDAVIT OF INDEBTEDNESS |
| | 11/20/2008 | | Notice of Filing: | Event | AMENDED AFFIDAVIT |
| | 11/20/2008 | | Affidavit of: | Event | OF INDEBTEDNESS |
| | 11/20/2008 | | Notice of Filing: | Event | AFFIDAVIT |
| | 10/22/2008 | | Order: | Event | ON MTN FOR SUMMARY JUDGMENT |
| | 10/21/2008 | | Affidavit of: | Event | OF DEFTS IN OPPOSITION TO PLTFS MSJU |
| | 10/21/2008 | | Notice of Filing: | Event | AFFIDAVIT OF DEFTS IN OPPOSITION TO PLTFS MSJU |
| 🔲 | 09/24/2008 | 26587:0484 | Recorded Document | Event | B: 26587 P: 0484 NOT OF DROPPING JOHN DOE |
| | 09/24/2008 | | Affidavit as to Attorney Fees | Event | |
| | 09/24/2008 | | Affidavit as to Costs | Event | |
| | 09/24/2008 | | Affidavit of Indebtedness | Event | |
| | 09/24/2008 | | Notice of Filing: | Event | AFFIDAVITS |
| | 09/24/2008 | | Motion for Summary Judgment | Event | FORECLOSURE |
| | 04/30/2008 | | Notice of Default Not Entered | Event | E Parties: N L G (llc) |

OCS Search                                                          Page 11 of 12

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|--------|------|-----------|--------------|------------|----------|
| | 04/11/2008 | | Answer | Event | **ATTORNEY:00776394** *Parties: Hazan Elizabeth* |
| | 04/07/2008 | | Answer | Event | **ATTORNEY:00985163** *Parties: N L G (llc)* |
| | 04/07/2008 | | Notice of Appearance | Event | **ATTORNEY:00985163** *Parties: N L G (llc)* |
| | 04/03/2008 | | Motion for Default | Event | |
| | 03/26/2008 | | Service Returned | Event | **BADGE # 965 P 03/18/2008** *Parties: Hazan Elizabeth* |
| | 03/26/2008 | | Text | Event | **SERVICE RTD ON UNKNOWN SPOUSE/HAZAN 3/18/08** |
| | 03/21/2008 | | Summons Returned - No Service | Event | *Parties: Hazan Elizabeth* |
| | 03/21/2008 | | Text | Event | **SUMMS RTD,NON SVRD UNWKN SPOUSE ELIZABETH HAZAN** |
| | 03/20/2008 | | Text | Event | **SUMMS RTD , SVRD JOHN DOE 3/19/08** |
| | 02/21/2008 | | Summons Returned - No Service | Event | *Parties: N L G (llc)* |
| B | 01/31/2008 | 26190:2182 | Lis Pendens | Event | **B: 26190 P: 2182** |
| | 01/29/2008 | | Summons Issued | Event | *Parties: Hazan Elizabeth; N L G (llc)* |
| | 01/29/2008 | | Complaint | Event | |
| | 01/29/2008 | | Civil Cover | Event | |

https://www2.miami-dadeclerk.com/ocs/Search.aspx                    2/27/2019

OCS Search

◄◄ Back to Search

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services (https://www2.miami-dadeclerk.com/Developers). To review the complete Miami-Dade County Disclaimer, follow this link: http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

Email (https://miamidadecounty.co1.qualtrics.com/SE/?SID=SV_bDvccbiqJBvQ2LH)

Login (/PremierServices/login.aspx?ReturnUrl=https://www2.miami-dadeclerk.com/ocs/Search.aspx)

Clerk's Home (http://www.miami-dadeclerk.com/home.asp)

Privacy Statement (http://www.miamidade.gov/info/privacy_and_security.asp)

Disclaimer (http://www.miamidade.gov/info/disclaimer.asp) (http://www.miamidade.gov)

Contact Us (http://www.miami-dadeclerk.com/contact.asp)

About Us (http://www.miami-dadeclerk.com/about.asp)

2015 Clerk of the Courts. All Rights reserved.

https://www2.miami-dadeclerk.com/ocs/Search.aspx

2/27/2019

View Document - Miami-Dade County OCS
1/5/26, 1:08

Miami-Dade Official Records - Print Document                              Page 1 of 1

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 08-4519 CA 1

Fisher Island Community
Association Inc
                                    Plaintiff(s),

vs.

Elizabeth Hazan
                                    Defendant(s).

ORDER
GRANTING/DENYING
PLAINTIFF'S/DEFENDANT'S

FILED FOR RECORD
2011 MAY -5 PM 3:45

THIS CAUSE having come on to be heard on   May 3, 2011
on Plaintiff's/Defendant's Motion

Emils Motion for Non-Jury Trial

and the Court having heard arguments of counsel, and being otherwise advised in the premises, it is hereupon

ORDERED AND ADJUDGED that said Motion be, and the same is hereby

The cases finally dismissed without prejudice.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida this  5

day of   May             2011

CIRCUIT COURT JUDGE                 Eugene J. Fierro
                                    Circuit Judge

Copies furnished to: Counsel of Record
117_01-994  2011

Bk 27681 Pg 1514 CFN 20110300582 05/09/2011 14:33:29 Pg 1 of 1 Mia-Dade Cty, FL

Exhibit
"C"

https://www2.miami-dadeclerk.com/Public-Records/PrintDocument.aspx?QS=YaoUfOzxr...   2/27/2019

Filing # 73659639 E-Filed 06/15/2018 04:47:22 PM

### IN THE CIRCUIT COURT OF THE 11ᵀᴴ JUDICIAL CIRCUIT
### IN AND FOR MIAMI DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

       Plaintiff,                         CASE NO.:   08-4519 CA 42

vs.

ELIZABETH HAZAN, ET AL.,

       Defendants.

_____/

### AMENDED MOTION FOR FINAL JUDGMENT AFTER BREACH OF STIPULATION WITH ASSESSMENT OF ATTORNEYS' FEES AND COSTS

The Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., (hereinafter "Association"), by and through the undersigned counsel, moves this Honorable Court for the entry of Final Judgment in Foreclosure after Breach of Stipulation, and in support thereof states as follows:

1. On or about March 18, 2008, Association served its complaint upon Defendant, ELIZABETH HAZAN (hereinafter "Defendant Owner").

2. On or about May 11, 2010, Defendant Owner entered into a Stipulation Agreement with Association.

3. On or about June 30, 2011, Defendant Owner entered into an Amended Stipulation Agreement with Association.

4. On or about December 20, 2011, Defendant Owner entered into a Second Amended Stipulation Agreement with Association. *A true and correct copy of the Second Amended Stipulation is attached hereto as "Exhibit A."*

Page 1 of 3<br>
Amended Motion for Entry of Final Judgment after Breach of Stipulation<br>
Case No.: 08-4519 CA 42

*Exhibit
"D"*

5. Defendant Owner has breached said Second Amended Stipulation by failing to remit her monthly payments under the Agreement.

6. On May 17, 2018, Association duly notified Defendant Owner of her breach by providing a Failure Notice via e-mail, giving Defendant Owner 10 days from the date of such Failure Notice to cure the default. *A true and correct copy of the Failure Notice is attached hereto as "Exhibit B."*

7. Association is entitled to proceed to Final Judgment if Defendant Owner has defaulted in the terms of the Second Amended Stipulation. See *Second Amended Stipulation ¶5.*

8. Association now seeks an entry of Final Judgment in Foreclosure after Breach of Stipulation.

9. Defendant Owner owes Association for past due assessments, late fees, fines and violations, and prejudgment interest.

10. Attached to this motion as *Composite Exhibit "C"* is an affidavit of amounts due and owing by the Defendant.

11. Association is also entitled to all attorneys' fees and costs incurred due to Defendant Owner's breach of the Second Amended Stipulation.

12. Accordingly, attached to this motion as *Exhibit "D" and "E"* is an Amended Affidavit of Attorneys' Fees and Costs by Attorney of Record and Amended Affidavit of Reasonable Attorneys' Fees and Costs.

WHEREFORE, Association requests that this Court grant Final Judgment in favor of Association, and against Defendant Owner after breach of Stipulation for past due assessments, late fees, fines and violations, interest, and attorneys' fees and costs; find that the interests of the Defendant Owner and all persons claiming under or against the Defendant Owner shall be foreclosed; and award such other and further relief as this Honorable Court deems just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing Motion was furnished by e-mail to David Langley, Esq. at dave@flalawyer.com and Mark D. Cohen, Esq., at mdcohenpa@yahoo.com, and Christopher David, Esq., at cdavid@fuerstlaw.com on this 15th day of June, 2018.

Michael Mayer, Esq.
michael@peytonbolin.com
Foreclosure@peytonbolin.com
FBN: 48134
Attorney for Plaintiff

PeytonBolin, PL
3343 West Commercial Boulevard
Suite 100
Fort Lauderdale, Florida 33309
Telephone: (954) 316-1339
Facsimile: (954) 727-5776

Page 3 of 3
Amended Motion for Entry of Final Judgment after Breach of Stipulation
Case No.: 08-4519 CA 42

6075925

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 08-4519 CA 15

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida corporation,

       Plaintiff,

vs.

ELIZABETH HAZAN, et. al,

       Defendants.

_____/

## SECOND AMENDMENT TO STIPULATION AGREEMENT

Plaintiff, FISHER ISLAND COMMUNITY ASSOCIATION, INC., a non-profit Florida corporation, (hereinafter the "ASSOCIATION"), by and through its undersigned counsel, and Defendant ELIZABETH HAZAN ("OWNER") hereby amend the Stipulation Agreement dated May 6, 2010 and the Amendment to Stipulation Agreement dated June 30, 2011 as follows:

### RECITALS

A.    The ASSOCIATION and OWNER entered into that certain Stipulation Agreement dated May 6, 2010 and attached hereto as Exhibit "1"("Stipulation Agreement"). Unless expressly amended herein, the Stipulation Agreement remains in full force and effect and its terms and conditions are incorporated herein.

B.    The ASSOCIATION and OWNER entered into that certain Amendment to Stipulation Agreement dated June 30, 2011 and attached hereto as Exhibit "2"("Amended Stipulation Agreement").

C.    The ASSOCIATION and OWNER have agreed to modify the payment schedule for the remaining balance due to the Association

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 ● PHONE (305) 442-3334 ● FAX (305) 443-3292



EXHIBIT
A

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 08-4519 CA 15

D.   As a result of the modification to the payment schedule, the terms and conditions of the Amended Stipulation Agreement are no longer applicable and are completely replaced by this Second Amendment to the Stipulation Agreement.

NOW THEREFORE, in consideration of the mutual promises exchanged herein and other valuable consideration, the receipt and sufficiency of the same being hereby acknowledged, it is hereby agreed that:

1.   Recitals. The above recitals are true and correct and are incorporated herein.

2.   The parties have agreed to amend paragraph 2 of the Stipulation Agreement in its entirety as follows:

a.   Payment Schedule for Assessments Due Through the Second Quarter of 2011:

i.   The parties agree that as of the Second Quarter of 2011, the balance due to the ASSOCIATION is $53,533.02[1] which shall be paid as follows:    January 1, 2012  ← S.H

1.   Commencing December 1, 2011, OWNER shall make     E.H  ← 25  24 payments of $2,110 and a final payment in the amount of $8,494.62 in accordance with the schedule attached hereto as Exhibit "3" on the dates specified therein.

b.   Payment Schedule for Third Quarter and Fourth Quarter of 2011 Assessments:

1.   The Third Quarter and Fourth Quarter of 2011 Assessment in the total amount of $11,445.00 shall be

---

[1] This amount represents the current amount due to ASSOCIATION of $49,357.89 for assessments, late fees and finance charges as of the Second Quarter of 2011 and the amount of $4,175.13 for attorney's fees and costs as of the Second Quarter of 2011.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A. ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 802, CORAL GABLES, FLORIDA 33134 ‡ PHONE (305) 442-3334 ‡ FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-4519 CA 15

paid on or before December 27, 2011.

c. **Early Payment on or before January 1, 2012.**

    i. The parties agree that so long as OWNER does not breach this Second Amendment to Stipulation Agreement, the amount due and owing by OWNER to the ASSOCIATION will be $51,423.02 as of January 1, 2012.

    ii. The parties agree that OWNER shall be entitled to a $10,000.00 discount in the total amount owed so long as the following conditions precedent are satisfied:

        1. OWNER does not breach the Stipulation Agreement or this Second Amendment to Stipulation Agreement; and

        2. Payment of the balance due to the ASSOCIATION as of December 31, 2011, pursuant to this Second Amendment to Stipulation Agreement, is paid to the ASSOCIATION on or before December 31, 2011.

    iii. Accordingly, and as long as the conditions precedent are satisfied, OWNER'S final payment under the Stipulation Agreement, as amended by this Second Amendment to Stipulation Agreement, will be for the total amount of $41,423.02.

    iv. Should OWNER not pay $41,423.02 by January 1, 2012, then the Stipulation Agreement and Second Amendment to Stipulation Agreement shall continue in full force and effect.

d. **Early Payment After January 1, 2012.** At any time within the term of this Second Amendment to Stipulation Agreement, in the event of a

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 ┆ PHONE (305) 442-3334 ┆ FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-43-19 CA 15

sale of the property or a foreclosure by any lender on the property or ASSOCIATION'S breach of this Stipulation or OWNER'S breach or at OWNER'S election, OWNER may prepay, without penalty, the balance due in the amount of $53,633.02, less any payments already made, plus any additional assessments assessed but not yet paid together with any finance charges or late fees incurred on the unpaid assessed assessments at the time of default by OWNER, as well as any reasonable attorney's fees and costs incurred by the ASSOCIATION as a result of OWNER'S breach, if applicable, and this action shall be dismissed and the lien shall be satisfied of record by the ASSOCIATION. In the event of OWNER'S Breach and failure to pay ASSOCIATION, the ASSOCIATION shall only be entitled to judgment for this amount.

e. THE PAYMENTS SET FORTH IN THIS PARAGRAPH ARE TO BE MADE WHEN DUE. TIME IS OF THE ESSENCE.

f. NOTICES:   Except as to the Failure Notice identified in paragraph 5 below, all notices, requests, or instructions hereunder shall be in writing and delivered personally, sent by facsimile transmission, overnight or certified mail, postage pre-paid as follows:

    i.   If to the OWNER, notice to the Property address with a copy to:

        c/o Michael W. Simon, Esquire
        Simon, Sigalos & Spyredes, P.A.
        3839 NW Boca Raton Blvd., Suite 100
        Boca Raton, Florida 33431
        Phone number: (561) 447-0017
        Facsimile number (561) 447-0018

    ii.   If to the Association

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 603, CORAL GABLES, FLORIDA 33134 ♦ PHONE (305) 442-3334 ♦ FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 08-45 H CA 15

NICHOLAS D. SIEGFRIED, Esq.
201 Alhambra Cir. #1102
Coral Gables, FL 33134
Phone number: 305-442-0877
Facsimile number: 305-448-8727

3.    The parties have agreed to amend paragraph 3 of the Stipulation Agreement in its entirety as follows:

    a.  It is further understood that Exhibit "3" only includes the amount due to the Association through the Second Quarter of 2011.

4.    The parties have agreed to amend paragraph 4 of the Stipulation Agreement in its entirety as follows:

    a.  Future Assessments.  By accepting the terms of this Second Amended Stipulation, including the Payment Schedule attached hereto, OWNER acknowledges that she remains liable for all future regular assessment payments for the Property commencing January 1, 2012 as well as any special assessments coming due on the Property after execution of this Second Amended Stipulation on the timeframe specified by the ASSOCIATION pursuant to its governing documents.  OWNER acknowledges that the ASSOCIATION has not waived OWNER'S obligation to timely pay any future assessments not accounted for in this Second Amended Stipulation.

5.    The parties have agreed to amend paragraph 7 of the Stipulation Agreement in its entirety as follows:

    a.  IF OWNER SHOULD FAIL TO COMPLY WITH THE PAYMENT SCHEDULE SET FORTH IN PARAGRAPH 2 OF THIS SECOND AMENDMENT TO STIPULATION AGREEMENT OR SHOULD FAIL

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 § PHONE (305) 442-3334 § FAX (305) 448-8728

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 09-4519 CA-15

TO TIMELY PAY ALL FUTURE ASSESSMENTS AS SET FORTH IN PARAGRAPH 4 OF THIS SECOND AMENDMENT TO STIPULATION AGREEMENT, the ASSOCIATION or the ASSOCIATION'S counsel shall notify OWNER that such payment has not been received, in writing ("Failure Notice"). Notice to the OWNER under this paragraph shall be made by e-mail transmission to OWNER'S counsel, Michael W Simon, Esq., at msimon@3slaw.com and to OWNER at elizabethhazan1@aol.com. Upon the transmission of the Failure Notice under this paragraph, OWNER shall have ten (10) days from the date of such Failure Notice to cure the default. The Association shall only be obligated to transmit a Failure Notice two (2) times under this Second Amendment to Stipulation Agreement. In the event that OWNER fails to pay the amounts within the 10 day notice to cure, the ASSOCIATION shall immediately schedule a hearing in order to proceed to Final Judgment as to its Complaint, and for interest, late fees, if applicable, attorney's fees and costs (which will include additional attorney's fees and costs incurred due to OWNER breach of the Stipulation Agreement, by application to the Court with notice and hearing, upon a sworn Affidavit stating the balance due to the Association. At the time of Final Judgment, the ASSOCIATION shall be entitled to the balance due in the amount of $53,533.02, less any payments already made, plus any additional assessments assessed but not yet paid together with any finance charges or late fees incurred on the unpaid assessed assessments at the time of default by OWNER, as well as any reasonable attorney's fees and costs incurred

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 s PHONE (305) 443-3334 s FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 08-45199 CA 19

by the ASSOCIATION as a result of OWNER'S breach, if applicable. OWNER reserves her rights to defend the election of remedies pursued by ASSOCIATION at the time of the ASSOCIATION'S application with the court on its Complaint. OWNER further agrees that should a default occur, any payments made will be applied first to assessments, then to any interest accrued, then to any administrative late fee, then to any costs and reasonable attorney's fees incurred in collection, and then to the delinquent assessment. Should OWNER'S mortgage lender foreclose on the property during the term of this Second Amendment to Stipulation Agreement, then, upon payment by the Lender, the ASSOCIATION shall credit OWNER with a minimum of the Lender's statutory obligation, if applicable, to pay assessments to offset any balance due to ASSOCIATION by OWNER. In the event of foreclosure by OWNER'S mortgage lender, OWNER shall be deemed in breach of this Second Amendment to Stipulation Agreement and ASSOCIATION may proceed with its rights as set forth in this Paragraph.

6.    No later than December 27, 2011, OWNER shall make payment to ASSOCIATION in the amount of $1,012.50 representing the amount of attorney's fees incurred by the ASSOCIATION in the preparation of this Second Amendment to Stipulation Agreement.

7.    All of the other terms, covenants, conditions and provisions of the Stipulation Agreement specifically including payment due dates, except as are herein specifically amended, shall remain in full force and effect and are hereby adopted and reaffirmed by the parties hereto.

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 § PHONE (305) 442-3334 § FAX (305) 443-3292

SECOND AMENDMENT TO STIPULATION AGREEMENT
CASE NO. 08-4518 CA 15

8.      This Second Amendment to Stipulation Agreement is not enforceable unless executed by all parties. A facsimile copy shall be considered an original for purposes of enforcement of this Second Amendment.

DATED this 30 day of November, 2011.

SIEGFRIED, RIVERA, LERNER
DE LA TORRE, & SOBEL, P.A.
Attorneys for Plaintiff
201 Alhambra Circle, Suite 1102
Coral Gables, FL 33134
(305) 442.3334
(305) 443.3292

By:
NICHOLAS D. SIEGFRIED, ESQ.
Florida Bar No. 27020

SIMON & SIGALOS, LLP.
Attorneys for Elizabeth Hazan
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, Florida 33431
(561) 447.0017
(561) 447.0018

By:
MICHAEL W. SIMON, ESQ.
Florida Bar No. 776394

FISHER      ISLAND      COMMUNITY
ASSOCIATION, INC.

By:
Title: CEO
Print Name: GARY SNIPES

By:
Elizabeth    Hazan,           Defendant

H:\LIBRARY\CASE\0658\67302R2L0716\005\00

SIEGFRIED, RIVERA, LERNER, DE LA TORRE & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, SUITE 803, CORAL GABLES, FLORIDA 33134 § PHONE (305) 442-3334 § FAX (305) 443-3292



View Document – Miami-Dade County OCS

1/5/26, 1:08

 PEYTONBOLIN
REAL ESTATE & ASSOCIATION ATTORNEYS

Michael Mayer <michael@peytonbolin.com>

---

### Fisher Island v. Hazan, Case No.: 08-4519 CA 42, Failure Notice
1 message

---

Michael Mayer <michael@peytonbolin.com>                           Thu, May 17, 2018 at 2:33 PM
To: msimon@3slaw.com, elizabethhazan1@aol.com
Bcc: Joseph Giannell <joseph@peytonbolin.com>, 190@peytonbolin.com

Good afternoon,

Pursuant to paragraph 5 of the Second Amendment to Stipulation Agreement, this correspondence shall serve as the Association's Notice to you that the Defendant has failed to comply with the payment terms of the Second Amendment to Stipulation Agreement. Specifically, the Association has not received any payments under the terms of the Second Amendment to Stipulation Agreement.

If the Association does not receive payment for all amounts owed under the Agreement within 10 days, it will proceed with scheduling a hearing for its Final Judgment. Thank you.



**Michael Mayer, Esq., Litigation Managing Attorney**
PeytonBolin, PL
954.316.1339 | ext 4007 | michael@peytonbolin.com |
www.peytonbolin.com



PeytonBolin, PL may be collecting information pertaining to the collection of a debt. Any information collected for this purpose will be used solely for that purpose. This e-mail contains information from PeytonBolin, PL that may be confidential, privileged, and exempt from disclosure under applicable law. The information is intended only for use by the person or entity to which it is addressed. If you are not the intended recipient of this message, you are hereby notified that any review, dissemination, distribution or copying of this message and any attachments thereto, is strictly prohibited. If you have received this message in error, please notify us immediately by telephone at (877) 739-8662.



IN THE CIRCUIT COURT
IN AND FOR MIAMI DADE COUNTY, FLORIDA

FISHER ISLAND COMMUNITY
ASSOCIATION, INC., a non-profit
Florida Corporation.

      Plaintiff,

                               CASE NO.: 08-4519-CA (15)

vs.

ELIZABETH HAZAN, et. al,
      Defendants.
_____/

## AFFIDAVIT OF AMOUNTS DUE AND OWING

    I, Oscar Diaz, being first duly sworn under oath, do hereby state and depose the following:

1. I am over the age of 18 and I have personal knowledge and am competent to testify to the following.

2. I am the Financial Controller of Fisher Island Community Association ("Association").

3. As the Financial Controller of the Association, I have personal knowledge of the amounts owed to the Association by the Defendant.

4. As of the date of this Affidavit, the Defendant has not complied with the Second Amendment to Stipulation Agreement as found in Exhibit "A" to the Association's Amended Motion for Final Judgment after Breach of Stipulation with Assessment of Attorneys' Fees and Costs.

5. Specifically, and as can be seen on the attached Exhibit "1", the Association's ledger, the Defendant has not paid the amounts owing and due under the Second Amendment to Stipulation Agreement.

6. The attached Exhibit "1" is the Association's ledger that contains an accurate accounting of all amounts owed to the Association, including any payments previously received from the Defendant.